44.48. On Thursday, May 21, 2020, a female process server ("Process Server No. 3") drove up to the Burgess' Princeton residence ~~in Princeton~~ and spoke with Plaintiff Michelle Burgess outside the front of her home. The incident was recorded by the Burgess residence security system.

45.49. Process Server No. 3 handed ~~her~~ Plaintiff Michelle Burgess a copy of a deposition subpoena addressed to ~~Philip~~ Burgess, returnable June 5, 2020, captioned in the **Galloway Action**, and signed by ~~Defendant~~ Bennett of Defendant Consumer Litigation Associates, LLC.

46.50. At all times relevant to this Complaint, Process Servers Nos. 1, 2 and 3: (i) were employed by ~~the~~ Defendants acting in concert and for their mutual benefit; (ii) were acting as the duly authorized agents of ~~the~~ Defendants; and, upon information and belief, (iii) were acting on the instructions of one or more of ~~the~~ Defendants.

51. Thereafter, Bennett, Consumer Litigation Associates, P.C., Kelly, and Kelly Guzzo, PLC, continued their campaign of harassment and intimidation against MicroBilt, Burgess, as well as PAF, PAIF, Primus and LJP and now are trying to intentionally harm their respective businesses by filing another false and frivolous class action civil RICO complaint against them in the EDVA. *See Steven Mann et al. v. Princeton Alternative Funding, LLC et al.*, Case No. 3:20-cv-00820-REP (the "EDVA Class Complaint"). A copy of the Class Complaint is attached hereto as Exhibit A.

52. For reasons that will be discussed in detail below, the EDVA Class Complaint has no legal or evidentiary support whatsoever. Rather, Bennett, Consumer Litigation Associates, P.C., Kelly, and Kelly Guzzo, PLC, filed the EDVA Class Complaint in bad faith purely to extort Burgess into cooperating with them or to suffer the damaging consequences of defending a civil

11

RICO lawsuit, to continue to tortiously interfere with the business of MicroBilt, and to cause MicroBilt and its associates damages and legal fees, all of this because Burgess, MicroBilt's founder and consultant, and other MicroBilt principals have refused to cooperate with these Defendants in their various aforementioned litigations against Matt Martorello.

53. Bennett, Consumer Litigation Associates, P.C., Kelly, and Kelly Guzzo, PLC, also filed the EDVA Class Complaint as an exhibit in a highly transparent attempt to manufacture purported personal jurisdiction over Burgess in the **Virginia Williams Action** where the Court had ordered the claims against Burgess be dismissed for lack of personal jurisdiction and Bennett, Consumer Litigation Associates, P.C., Kelly, and Kelly Guzzo, PLC, were then attempting to convince the Court that there was personal jurisdiction because, in part, of the allegations falsely asserted against Burgess in the EDVA Class Complaint.

54. The purported class plaintiffs in the EDVA Class Complaint allege that the case arises from the making and collection of unlawful loans from online lending entities purportedly owned and operated by the Big Valley Band of Pomo Indians of the Big Valley Rancheria, a federally-recognized Native American tribe ("Big Valley"). EDVA Class Complaint ¶ 1. The purported class plaintiffs allege that the loans imposed triple-digit interest rates, exponentially higher than the interest rate caps permitted by state laws, such as those in Virginia, Pennsylvania and Georgia. *Id.* Seeking to ostensibly avoid state usury laws, the purported class plaintiffs allege that the class defendants established a tribal lending business model. *Id.* ¶ 2.

55. Under this model, the purported class plaintiffs allege that non-tribal payday lenders originate their loan products through a company "owned" by a Native American tribe and organized under its laws. *Id.* The tribal company then allegedly serves as a conduit for the loans, facilitating a claim that the loans are subject to tribal law, not the protections afforded by state

usury and licensing laws. *Id.* In exchange for the use of its name on the loan, the purported class plaintiffs allege that the tribal company often receives a portion of the revenue but does not meaningfully participate in the day-to-day operations of the business. *Id.*

56. The purported class plaintiffs further allege that the class defendants in the EDVA Class Complaint made, collected and/or received interest from high-interest loans originated in the names of FreedomCashLenders, Tremont Lending, Layma d/b/a Little Lake Lending, and Credit Cube (collectively, "Tribal Lenders"), four entities formed under tribal law to serve allegedly as the fronts to disguise the non-tribal payday lenders' role and to ostensibly shield the scheme by exploiting the doctrine of sovereign immunity. *Id.* ¶ 3.

57. The purported class plaintiffs allege that the non-tribal defendants (defined as PAF, Burgess, Primus, MicroBilt and LJP) provided the capital used to make the loans and, in return, received the vast majority of the profits of the illegal lending enterprise. *Id.* ¶ 3. The purported class plaintiffs further allege that, by virtue of their investment and critical role in the illegal lending enterprise, these non-tribal defendants have been permitted to participate, and have participated, in key decisions, strategies and objectives of the lending businesses, ensuring protection and maximize return on their investments. *Id.* ¶ 3.

58. The purported class plaintiffs allege that the Tribal Lenders were not licensed in Virginia, Georgia, or Pennsylvania (or any other state) and, thus, they and all participants in the enterprise are prohibited from making and collecting on any loans to citizens in excess of their respective state's interest-rate cap. *Id.* ¶ 45.

59. The purported class plaintiffs further allege that the class defendants are an association in fact enterprise who are associated together for the common purpose of making, collecting and profiting off the illegal loans. *Id.* ¶ 104.

60. The purported class plaintiffs next allege that PAF, PAIF, Burgess, Primus, Wojciechowski, MicroBilt, and LJP knowingly arranged and provided the lending capital used to make the usurious loans to consumers. *Id.* ¶ 113. The purported class plaintiffs allege that, although Big Valley held itself out as the actual lender of these internet loans, a substantial amount of the money came from PAIF, which is a pooled investment fund created to raise and provide the capital to fund the illegal loans and, in return, the vehicle upon which profits are returned to PAF and its investors, including Burgess, Primus, and companies owned directly or indirectly by them. *Id.* ¶ 114.

61. In addition, the EDVA Class Complaint alleges, upon information and belief, that PAIF and Big Valley have entered into a loan and security agreement in order to protect PAIF's capital by: (1) granting it a security interest in the loans; and (2) imposing certain business PAIF's capital by: (1) granting it a security interest in the loans; and (2) imposing certain business restrictions on Big Valley and its entities. *Id.* ¶ 115.

62. The purported class plaintiffs allege that Burgess is one of the primary individuals who participates in raising the capital to be provided to the lenders and who negotiates the terms of the loan and security agreements with the lenders. *Id.* ¶ 119. The purported class plaintiffs further allege that Wojciechowski owns some of the shares in PAIF and is its chief financial officer and, thus, is the executive responsible for managing the financial actions of PAIF, including its decisions regarding when to deploy more capital to the illegal lenders. *Id.* ¶ 120.

63. The purported class plaintiffs allege that PAF, PAIF, Burgess, Primus, Wojciechowski, MicroBilt, and LJP, through their alleged ownership in PAIF, by acquiring and maintaining interests in, and control of, the enterprise, as well as their conduct in aiding, abetting,

facilitating, funding and unlawful collection of, the illegal loans, have violated RICO and state usury laws. *Id.* ¶¶ 122.

64. Defendants in the EDVA Class Complaint have served the Plaintiffs' counsel in that action (Bennett, Kelly and their law firms, who are Defendants in this action) with a Rule 11 "safe harbor" letter, a copy of which is attached hereto as Exhibit B. Defendants also served Plaintiffs' counsel with a draft motion for Rule 11 sanctions, a copy of which is attached hereto as Exhibit C.

65. Defendants, without factual or legal basis caused the purported class plaintiffs to file the impermissible and unfounded EDVA Class Complaint despite Defendants' knowledge that:

- The claims asserted against PAF and PAIF are impermissible as such claims were discharged upon confirmation of PAF/PAIF's confirmed Bankruptcy Reorganization Plan;

- Specifically, PAF and PAIF (together, the "Debtors") each filed bankruptcy cases on March 9, 2018, in the United States Bankruptcy Court for the District of New Jersey, Chief Judge Kaplan, presiding. See Bankr. D.N.J. 18-14603 & 18-14600 (the "PAF/PAIF Bankruptcy"). Because of the underlying disputes between Debtors and one of their investors, and over the objection of the Debtors, the Bankruptcy Court removed the Debtors from possession and appointed a Chapter 11 Trustee (the "Trustee") by Order dated November 1, 2018. See Bankr. D.N.J. Dkt. 389. Thereafter, the Trustee exclusively operated PAF/PAIF from November 13, 2018 (see Bankr. D.N.J. Dkt. 408), through until March 13, 2020. See Bankr. D.N.J. Dkt. 1131 ¶ 23 & 1141. On March 13, 2020, the Bankruptcy Court resolved the PAF/PAIF Bankruptcy through a confirmed plan of reorganization for the Bankruptcy (the "Plan");

- Directly contrary to the allegations in the EDVA Class Complaint, the Chapter 11 Trustee had sole and exclusive operational authority over PAF/PAIF during the time period from November 19, 2018, through until March 13, 2020. The fact that the Trustee had operational authority over PAF/PAIF, and was exclusively responsible for the collections of amounts due from Big Valley Financial (the actual borrower) during that time period, conclusively refutes all allegations of RICO-based collusion between PAF/PAIF and any lenders purportedly associated with Big Valley or Big Valley Financial made by plaintiffs' counsel in the EDVA Class Complaint;

15

- The claims asserted against Burgess, Wojciechowski, MicroBilt and LJP for their alleged improper use of PAF/PAIF funds are derivative claims owned by PAF/PAIF and PAF/PAIF's confirmed Bankruptcy Reorganization Plan has both released and exculpated these class defendants for such derivative claims;

- The contractual relationship between PAF/PAIF and Big Valley Financial, an affiliate of Big Valley, included a "Funds Use" covenant that required the loan proceeds to be used only for consumer loans between Big Valley Financial and consumers and that prohibited Big Valley Financial from lending any such loan proceeds to other tribal lenders;

- The draw request records, as required by the loan agreement, provided by Big Valley Financial to PAIF confirm that none of the Class Complaint's Plaintiffs received any of the loan proceeds and the entirety of such loan proceeds was used to originate consumer loans through Big Valley Financial and none was used by Big Valley Financial to fund other tribal lenders;

- No class defendant loaned or otherwise transferred funds to or through any of the tribal lenders identified in the EDVA Class Complaint;

- PAF/PAIF **never** made any direct loans to any individual consumers, including the class plaintiffs.

- The records reflect that the PAIF loan to Big Valley Financial included only an interest rate of at most twenty-four (24%) and there is no evidence that any other payments were made—and none were made—from Big Valley Financial or any other tribal lender to PAIF as asserted in the EDVA Class Complaint because Big Valley Financial never loaned or otherwise made funds available to any tribal lender identified in the Class Complaint; and

- The allegations that Wojciechowski held direct ownership in PAIF or that Burgess owns indirectly a majority of the "shares in PAF and PAIF are incorrect.
  47.

### Count One

**(Malicious Abuse of Legal Process)**
(Burgess, Michelle Burgess, Alexandria Burgess and the Minor Children)

48.66.     Plaintiffs repeat and re-allege the allegations contained in preceding paragraphs 1 through 46 as if fully set forth herein.

49.67.     Defendants' further acts after issuing legal process against Plaintiffs

16

demonstrate a purpose ulterior to the one for which such process was designed.

50.68. Such purpose was to coerce or oppress either through intentional malicious abuse of process or the issuance of process without reason or probable cause.

51.69. As a result of Defendants' conduct, Plaintiffs have been injured and damaged.

52.70. As a result of Defendants' conduct, Defendants are liable to Plaintiffs for their injuries and damages.

### Count Two

**(Harassment - Invasion of Privacy Interests)**
(Burgess, Michell Burgess, Alexandria Burgess and the Minor Children)

53.71. Plaintiffs repeat and re-allege the allegations contained in preceding paragraphs 1 through 51 as if fully set forth herein.

54.72. Defendants, acting through their duly authorized agents, intentionally intruded upon Plaintiffs' seclusion or private concerns.

55.73. The intentional intrusion by Defendants through their agents, would be highly offensive to the reasonable person.

56.74. As a result of Defendants' conduct, through their agents, Plaintiffs have been injured and damaged.

57.75. By invading Plaintiffs' privacy, Defendants are liable for harm caused to Plaintiffs, including harm to Plaintiffs' interest in privacy, mental anguish, and special damages.

### Count Three

**(Intentional Infliction of Emotional Distress)**
(Burgess, Michell Burgess, Alexandria Burgess and the Minor Children)

58.76.   Plaintiffs repeat and re-allege the allegations contained in preceding paragraphs 1 through 56 as if fully set forth herein.

59.77.   Defendants' conduct, through their own conduct and the conduct of their duly authorized agents, was intentional and intended to produce emotional distress, or reckless in deliberate disregard of the high degree of probability that emotional distress would result.

60.78.   Defendants' conduct, through themselves and their agents, directed toward Plaintiffs was extreme and outrageous.

61.79.   Defendants' misconduct, through their agents, proximately caused Plaintiffs' emotional distress so severe that no reasonable person could be expected to endure it.

62.80.   As a result, Defendants are liable to Plaintiffs for their injuries and damages.

### Count Four
### (Business Injured by Another's False Description)
(MicroBilt, Burgess, PAF, PAIF, Primus and LJP against
Defendants Bennett, Consumer Litigation Associates, P.C., Kelly, and Kelly Guzzo, PLC)

81.   Plaintiffs repeat and re-allege the allegations contained in preceding paragraphs as if fully set forth herein.

82.   Defendants' acts of publishing disparaging assertions concerning Plaintiffs' businesses were undertaken with the intent to hinder those businesses.

83.   As a result of Defendants' conduct, Plaintiffs have been damaged by the injurious falsehoods.

84.   As a result, Defendants are liable to Plaintiffs for their damages.

### Count Five
### (Intentional Interference with Prospective Economic Advantage)
(MicroBilt, Burgess, PAF, PAIF, Primus and LJP against
Defendants Bennett, Consumer Litigation Associates, P.C., Kelly, and Kelly Guzzo, PLC)

85. Plaintiffs repeat and re-allege the allegations contained in preceding paragraphs as if fully set forth herein.

86. Defendants' conduct was intentional and without justification or excuse.

87. Defendants' conduct has interfered and continues to interfere with Plaintiffs' pursuit of prospective economics business relationships where there is a reasonable expectation of economic advantage.

88. There is a reasonable probability that the interference caused the loss of prospective gain.

89. As a result, Defendants are liable to Plaintiffs for the damages caused by Defendants' interference.

### Count Six
### (Civil Conspiracy to Commit Tort)
(MicroBilt, Burgess, PAF, PAIF, Primus, and LJP against
Defendants Bennett, Consumer Litigation Associates, P.C., Kelly, and Kelly Guzzo, PLC)

90. Plaintiffs repeat and re-allege the allegations contained in preceding paragraphs as if fully set forth herein.

91. Bennett and Consumer Litigation Associates, P.C., on one hand, and Kelly and Kelly Guzzo, PLC, on the other hand, entered into an agreement or confederation with a common design to perpetrate a tort, to wit, to extort Plaintiffs, or some of them, to cooperate with Defendants against Matt Martorello and/or others, or to suffer economic harm to their businesses, including, but not limited to, being named as defendants in a false and impermissible civil RICO

action.

92. In doing so, Defendants had an unlawful purpose to be achieved by supposedly lawful means.

93. Defendants undertook overt acts, including causing the false and impermissible EDVA Class Complaint to be filed in furtherance of the conspiracy.

94. As a result, Plaintiffs, or some of them, have been damaged.

95. Each Defendant member of the conspiracy is equally and vicariously liable to Plaintiffs for damages proximately caused by a tortious overt act of one or more of the conspirators in furtherance of the conspiracy.

## Count Seven
### (Aiding the Commission of Tort)
(MicroBilt, Burgess, PAF, PAIF, Primus, and LJP against
Defendants Bennett, Consumer Litigation Associates, P.C., Kelly, and Kelly Guzzo, PLC)

96. Plaintiffs repeat and re-allege the allegations contained in preceding paragraphs as if fully set forth herein.

97. Defendants, or some of them, pursued a common plan or design to commit a tort upon Plaintiffs, or some of them, by active participation, aid, encouragement or ratification of the wrong.

98. Defendants' conduct in doing so was for their benefit.

99. Plaintiffs have been damaged.

100. Each Defendant is jointly and severally liable to Plaintiffs for damages they suffered as a result of the tort.

**WHEREFORE** Plaintiffs demands judgment against the Defendants jointly and severally on the grounds and with the specificity as to Plaintiffs and Defendants in each Count:

(a) For compensatory, consequential, treble and punitive damages;

(b) Declaring that Defendants through their own actions and through their agents, have intentionally harassed, intimidated and inflicted emotional distress upon Plaintiffs and invaded their privacy;

(c) Enjoining Defendants and their agents from continuing to intentionally harass, intimidate and inflict emotional distress upon Plaintiffs and invade their privacy;

(d) For legal fees and costs in this action; and

(e) For such other and further relief as the Court may deem just.

        **KROVATIN NAU LLC**
        60 Park Place, Suite 1100
        Newark, New Jersey 07102
        (973) 424-9777
        *Attorneys for Plaintiffs*

          s/ Gerald Krovatin
        gkrovatin@krovatin.com

Dated: November 19, 2020

## JURY DEMAND

Plaintiffs demand a trial by jury as to all issues so triable.

**KROVATIN NAU LLC**
60 Park Place, Suite 1100
Newark, New Jersey 07102
(973) 424-9777
*Attorneys for Plaintiffs*

  s/ Gerald Krovatin
gkrovatin@krovatin.com

Dated: November 19, 2020

## L.Civ.R.11.2 CERTIFICATION

I hereby certify that the matter involved here, as far as I know, is not the subject of any other action pending in any court, nor is it the subject of a pending arbitration or administrative proceeding except for the two related actions:

(1)  *Lula Williams, et al. v. Philip Burgess,* Docket No. 3:20-cv-5781-FLW-DEA;

(2)  *Philip Burgess v. Renee Galloway, et al.,* Docket No. 3:20-cv-06744-FLW-DEA. (This miscellaneous action was recently filed for a protective order and to quash subpoenas in the aforementioned **Virginia Williams Action** and the **Glover Action**); and

(3)  *Steven Mann, et al. v. Princeton Alternative Funding, LLC, et al.,* Case No. 3:20-cv-00820-REP (EDVA).

**KROVATIN NAU LLC**
60 Park Place, Suite 1100
Newark, New Jersey 07102
(973) 424-9777

*Attorneys for Plaintiffs*
  s/ Gerald Krovatin
gkrovatin@krovatin.com

Dated: November 19, 2020

22