EXHIBIT B

**DURRETTE, ARKEMA, GERSON & GILL** ᴘᴄ
*ATTORNEYS AT LAW*

Wyatt B. Durrette, Jr.
wdurrette@dagglaw.com
Direct: 804-775-6809
Mobile: 804-690-4430

November 11, 2020

**VIA FEDERAL EXPRESS AND EMAIL ONLY**

Kristi C. Kelly, Esquire
Andrew J. Guzzo, Esquire
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, Virginia  22030
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com

Leonard A. Bennett, Esquire
Craig C. Marchiando, Esquire
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia  23601
Email: lenbennett@clalegal.com
Email: craig@clalegal.com

<blockquote>
Re:   *Mann, et al., v. Princeton Alternative Funding, LLC, et al.*
Civil Action No. 3:20-cv-820-REP
USDC-Eastern District of Virginia-Richmond Division
</blockquote>

Dear Counsel:

We represent the following defendants in the above-entitled litigation (the "Litigation"): (i) **Princeton Alternative Funding, LLC** ("PAF"), (ii) **Princeton Alternative Income Fund, L.P.** ("PAIF"), (iii) **Philip N. Burgess, Jr.** ("Burgess"), (iv) **Walter Wojciechowski** ("WW"), (v) **MicroBilt Financial Services Corporation** ("MicroBilt"), (vi) **Alonzo Primus** ("Primus") and (vii) **LJP Consulting, LLC** ("LJP") (collectively, "Clients").

Enclosed, please find a Motion for Sanctions pursuant to Federal Rule of Civil Procedure 11 concerning the propriety of the class action complaint (the "Class Complaint") that you have filed in the Litigation.  For the reasons set forth in greater detail in the Motion for Sanctions, we ask that you voluntarily dismiss the Class Complaint within the next 21 days and cease all efforts to further prosecute the Litigation.  If you fail to do so and continue with the Class Complaint, our Clients have authorized us to seek sanctions in the amount of all legal fees associated with these Rule 11 efforts as well as any other fees or costs for having to defend this frivolous matter.  Accordingly, in order to avoid such consequences, we urge you to withdraw the Class Complaint within the 21-day safe harbor provided by Rule 11(c)(2).

**DURRETTE, ARKEMA, GERSON & GILL** ..

ATTORNEYS AT LAW

Kristi C. Kelly, Esquire
Andrew J. Guzzo, Esquire
Leonard A. Bennett, Esquire
Craig C. Marchiando, Esquire
Re: Mann, et al., v. Princeton, etc, et al.
November 11, 2020
Page 2


        In addition, because you have used the Class Complaint in an offensive manner in
*Williams, et al., v. Microbilt Corp.*, Case No. 3:19-cv-00085-REP (USDC Eastern Virginia-
Richmond Division) at ECF Dkt. 170 (Exh. 2), we are further requesting that, in addition to
withdrawing the Class Complaint, you further notify Judge Payne that the purpose for which you
utilized the Class Complaint is no longer valid and that the Court should not consider the Class
Complaint for the jurisdictional purposes for which it was attached as an exhibit.

        Be guided accordingly.

                                        Very truly yours,

                                        Wyatt B. Durrette, Jr.

WBDJr/rww
Enclosure.

cc:      Maurice R. Mitts, Esquire
         Gerard M. McCabe, Esquire

EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

STEVEN MANN *et al.,*

    Plaintiffs,                           Case No. 3:20-cv-00820-REP

v.

PRINCETON ALTERNATIVE FUNDING,
LLC *et al.,*

    Defendants.

## DEFENDANTS' MOTION FOR SANCTIONS AGAINST PLAINTIFFS' COUNSEL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11

Defendants Princeton Alternative Funding, LLC ("PAF"), Princeton Alternative Income Fund, L.P. ("PAIF"), Philip Burgess ("Burgess"), Walter Wojciechowski ("Wojciechowski"), MicroBilt Financial Services Corp. ("MicroBilt"), Alonzo Primus ("Primus") and LJP Consulting, LLC ("LJP") (collectively, "Defendants"), respectfully submit this Motion For Sanctions Against Plaintiffs' Counsel Pursuant To Federal Rule Of Civil Procedure 11(this "Motion").

A reasonable, responsible pre-filing inquiry would have revealed to Plaintiffs' counsel that there was no evidentiary support for the claims asserted by Plaintiffs against Defendants in the class action RICO complaint (ECF Doc. 1) (the "Class Complaint") for the following reasons:

- The Draw Request Records provided by Big Valley Financial to PAIF confirm that none of the Class Complaint's Plaintiffs received any of the loan proceeds and the entirety of such loan proceeds was used to originate consumer loans through Big Valley Financial and none was used by Big Valley Financial to fund other tribal lenders, of which Plaintiffs' counsel was aware;

- No Defendant loaned or otherwise transferred funds to or through any of the tribal lenders identified in the Class Complaint;

1

- The contractual relationship between PAF/PAIF and Big Valley Financial, an affiliate of Big Valley Band of Pomo Indians of the Big Valley Rancheria, included a "Funds Use" covenant that required the loan proceeds to be used only for consumer loans between Big Valley Financial and consumers and that would have prohibited Big Valley Financial lending any such loan proceeds to other tribal lenders;

- The records reflect that the loan to Big Valley Financial included only an interest rate of at most twenty-four (24%) and there is no evidence that any other payments were made—and none were made--from Big Valley Financial or any other tribal lender to PAIF as asserted in the Class Complaint because Big Valley Financial never loaned or otherwise made funds available to any tribal lender identified in the Class Complaint; and

- The allegations that Wojciechowski held direct ownership in PAIF or that Burgess owns indirectly a majority of the "shares" in PAF and PAIF are incorrect.

The facts and legal arguments on which this Motion is based in support of the preceding reasons, and the lack of good cause and proper due diligence and investigation as required by Rule 11, are more fully discussed and delineated in the Memorandum of Law filed herewith.

As a result of the filing of the Class Complaint, Defendants have incurred substantial legal expenses in preparing this Motion and otherwise defending against this frivolous matter. In particular, pursuant to the Rule 11, this Motion and the accompanying Memorandum and exhibits were served on Plaintiffs' counsel on November 11, 2020, more than 21 days ago. *See* **Exhibit A** (attached to the accompanying Memorandum). However, to date, Plaintiffs have failed to withdraw the Class Complaint.

Thus, for the reasons more fully set forth in the Memorandum being filed herewith, and the exhibits attached thereto, Defendants respectfully request that this Court grant this Motion and award Defendants sanctions against Plaintiffs' counsel in the amount of the attorneys' fees incurred by Defendants in preparing, investigating and filing this Motion and otherwise defending against this action, and such other amount deemed by the Court necessary to deter such conduct in

the future, where Defendants have delineated the factual falsities with respect to the allegations asserted in the Class Complaint (ECF Doc. 1) filed in this matter.[1]

Respectfully submitted,

_____

Wyatt B. Durrette, Jr. (VSB No. 04719)
1111 East Main Street, 16th Floor
Bank of America Center
Richmond, VA 23219
804-775-6809 - Phone
804-775-6911- Fax
wdurrette@dagglaw.com

*To Be Admitted Pro Hac Vice*
*In this Litigation:*

Maurice R. Mitts (Pa. Bar No. 50297)
Gerard M. McCabe (Pa. Bar No. 66564)
MITTS LAW, LLC
1822 Spruce Street
Philadelphia, PA 19103
215.866.0110 (p)
215.866.0111 (f)
mmitts@mittslaw.com
gmccabe@mittslaw.com

*Attorneys for Princeton Alternative Funding, LLC,*
*Princeton Alternative Income Fund, L.P., Philip*
*Burgess, Walter Wojciechowski, MicroBilt Financial*
*Services Corp., Alonzo Primus and LJP Consulting,*
*LLC*

Dated: December ___, 2020

---

[1] Upon the Court's direction, undersigned counsel will submit detailed invoices itemizing all fees and costs incurred in prosecuting this Rule 11 Motion and otherwise defending against the false claims asserted in the Class Complaint.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

STEVEN MANN *et al.*,

    Plaintiffs,                           Case No. 3:20-cv-00820-REP

v.

PRINCETON ALTERNATIVE FUNDING,
LLC *et al.*,

    Defendants.

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SANCTIONS AGAINST PLAINTIFFS'**
**COUNSEL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11**

Defendants Princeton Alternative Funding, LLC ("PAF"), Princeton Alternative Income Fund, L.P. ("PAIF"), Philip Burgess ("Burgess"), Walter Wojciechowski ("Wojciechowski"), MicroBilt Financial Services Corp. ("MicroBilt"), Alonzo Primus ("Primus") and LJP Consulting, LLC ("LJP") (collectively, "Defendants"),[2] respectfully submit the following Memorandum (this "Memorandum") in support of Defendants' Motion For Sanctions Against Plaintiffs' Counsel Pursuant To Federal Rule Of Civil Procedure 11 (the "Motion"). For the reasons set forth herein, Defendants respectfully request that the Court grant the Motion and award Defendants sanctions againt Plaintiffs' counsel in the amount of the attorneys' fees incurred by Defendants in preparing, investigating and filing this Motion and otherwise defending against this action where Defendants have delineated the factual falsities with respect to the allegations asserted by Plantiffs Steven Mann, Lashell Epperson, Judith Harrison, and Kevin Williams (collectively, "Plaintiffs") in the class action complaint (ECF Doc. 1) ("Class Complaint" or "CAC") filed by Plaintiffs' cousnel against Defendants in this matter. Defendants will submit detailed invoices itemizing all of the

---

[2] All of the defendants named in the Class Complaint will be referenced herein as "Class Defendants."

fees and costs incurred in prosecuting this Motion and otherwise defending against the allegations asserted in the Class Complaint.

## A. Allegations Asserted In Class Complaint

Plaintiffs, on behalf of themselves and all individuals similarly situated, allege violations against Defendants of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, in the Class Complaint and further assert a class claim for violations of state usury laws and unjust enrichment. CAC ¶ 6.

With regard to certain Defendants, the Class Complaint describes them as follows:

i.   PAF is a fund management company and general partner of PAIF and is a self-described "debt fund that provides credit facilities" to "consumer-facing finance companies in the alternative lending marketplace." *Id*. Plaintiffs further allege that PAF "provides capital (often tens of millions of dollars) to finance companies, including to illegal lenders like FreedomCashLenders, Tremont Lending, Little Lake Lending, and Credit Cube." *Id.* ¶ 13.

ii.  PAIF is an investment fund created by PAF and, upon information and belief, is a pooled investment fund created to raise and provide the capital to fund the illegal loans and, in return, the vehicle upon which profits are returned to PAIF and its investors. *Id.* ¶ 14.

iii. Burgess is a natural person and indirectly owns the majority of the shares in PAF and PAIF, and, as allegedly supported by sworn testimony, has held an ownership interest in PAIF for "over 25 years" and he has "been in the business-to-business lending industry for about 35 years." *Id.* ¶¶ 15, 118. Plaintiffs further allege that (a) Burgess is one of the primary individuals who participates in raising the capital to be provided to the lenders and who negotiates the terms of the loan and security agreements with the lenders (*id.* ¶ 15), and (b) through software and data available to Burgess as a result of his ownership of a consumer reporting agency, Burgess also monitors the loans to the consumers and ensures the timely servicing and collection of the loans. *Id.*

iv.  Wojciechowski is a natural person who owns some of the shares in PAIF, and, in addition, is the chief financial officer of PAIF and, thus, he is the executive responsible for managing the financial actions of PAIF, including its decision when to deploy more capital to the illegal lenders. *Id.* ¶ 17.

> v.  Microbilt is a company owned by Burgess and his family—either
>     directly or indirectly. Microbilt is a holding company, which owns about
>     53% of PAIF. *Id.* ¶ 18.
>
> vi. Primus, as a majority shareholder in LJP, is a natural person and
>     indirectly owns or has owned shares of PAIF. Plaintiffs, citing the United
>     States Trustee for the United States Bankruptcy Court for New Jersey,
>     allege that Primus assisted Burgess with the creation of PAIF and was its
>     Chief Credit Officer. *Id.* ¶ 16.
>
> vii. LJP is a company partially owned by Primus (either directly or
>     indirectly), is alleged to be one of two managing members of PAIF. *Id.*
>     ¶ 19.

Specifically, with regard to the underlying allegations, Plaintiffs allege that the case arises

from the making and collection of unlawful loans from online lending entities purportedly owned

and operated by the Big Valley Band of Pomo Indians of the Big Valley Rancheria, a federally-

recognized Native American tribe ("Big Valley"). CAC ¶ 1.[3] Plaintiffs allege that the loans imposed

triple-digit interest rates, exponentially higher than the interest rate caps permitted by state laws, such

as those in Virginia, Pennsylvania and Georgia. *Id.* ¶ 1. Seeking to ostensibly avoid state usury laws,

Plaintiffs allege that the class defendants established a tribal lending business model. *Id.* ¶ 2.

Under this model, Plaintiffs allege that non-tribal payday lenders originate their loan

products through a company "owned" by a Native American tribe and organized under its laws. *Id.*

¶ 2. The tribal company then serves as a conduit for the loans, facilitating a claim that the loans are

subject to tribal law, not the protections afforded by state usury and licensing laws. *Id.* In exchange

for the use of its name on the loan, the tribal company often receives a portion of the revenue but

does not meaningfully participate in the day-to-day operations of the business. *Id.*

Plaintiffs allege that the Class Defendants made, collected and/or received interest from high-

interest loans originated in the names of FreedomCashLenders, Tremont Lending, Layma d/b/a Little

Lake Lending, and Credit Cube (collectively, "Tribal Lenders"), four entities formed under tribal law

---

[3] PAIF had a loan agreement with Big Valley Financial ("Big Valley Financial") which was an affiliate of Big Valley.
The Class Complaint makes no reference to Big Valley Financial.

to serve as the fronts to disguise the non-tribal payday lenders' role and to ostensibly shield the scheme by exploiting the doctrine of sovereign immunity. *Id.* ¶ 3.

Plaintiffs allege that the non-tribal defendants (defined as PAF, Burgess, Primus, MicroBilt, Wojciechowski and LJP)[4] provided the capital used to make the loans and, in return, received the vast majority of the profits of the illegal lending enterprise. *Id.* Plaintiffs further allege that, by virtue of their investment and critical role in the illegal lending enterprise, these non-tribal defendants have been permitted to participate, and have participated, in key decisions, strategies and objectives of the lending businesses, ensuring protection and maximize return on their investments. *Id.*

Plaintiffs allege that the Tribal Lenders were not licensed in Virginia, Georgia, or Pennsylvania (or any other state) and, thus, they and all participants in the enterprise are prohibited from making and collecting on any loans to citizens in excess of their respective state's interest-rate cap. *Id.* ¶ 45. Plaintiffs further allege that the class defendants are an association in fact enterprise who are associated together for the common purpose of making, collecting and profiting off the illegal loans. *Id.* ¶ 104.

Plaintiffs next allege that PAF, PAIF, Burgess, Primus, Wojciechowski, MicroBilt, and LJP knowingly arranged and provided the lending capital used to make the usurious loans to consumers. *Id.* ¶ 113. Plaintiffs allege that, although Big Valley held itself out as the actual lender of these internet loans, a substantial amount of the money came from PAIF, which is a pooled investment fund created to raise and provide the capital to fund the illegal loans and, in return, the vehicle upon which profits are returned to PAF and its investors, including Burgess, Primus, and companies owned directly or indirectly by them. *Id.* ¶ 114. In addition, upon information and belief, PAIF and the Tribe have entered into a loan and security agreement in order to protect

---

[4] The Class Complaint curiously failed to include PAIF in this list of non-tribal defendants.

PAIF's capital by: (1) granting it a security interest in the loans; and (2) imposing certain business restrictions on the Tribe and its entities. *Id.* ¶ 115.

Plaintiffs allege that Burgess is one of the primary individuals who participates in raising the capital to be provided to the lenders and who negotiates the terms of the loan and security agreements with the lenders. *Id.* ¶ 119. Plaintiffs further allege that Wojciechowski owns some of the shares in PAIF and is its chief financial officer and, thus, is the executive responsible for managing the financial actions of PAIF, including its decisions regarding when to deploy more capital to the illegal lenders. *Id.* ¶ 120.

Plaintiffs allege that PAF, PAIF, Burgess, Primus, Wojciechowski, MicroBilt, and LJP, through their ownership in PAIF, by acquiring and maintaining interests in, and control of, the enterprise, as well as their conduct in aiding, abetting, facilitating, funding and unlawful collection of, the illegal loans, have violated RICO and state usury laws. *Id.* ¶¶ 122, 133.

**B. <u>Legal Standard Supporting Grant of Rule 11 Sanctions</u>**

Federal Rule of Civil Procedure 11 provides, in part, that in presenting any document to the court, a party certifies that, to the best of his or her knowledge, information, and belief, (i) the document is not being filed for an improper purpose; (ii) the claims are warranted by existing law; and (iii) the factual contentions have evidentiary support. FED. R. CIV. P. 11(b). If, after notice and a reasonable opportunity to respond, the Court determines that Rule 11(b) has been violated, the Court has discretion to impose sanctions on the attorneys, law firms and/or parties responsible for the violation. FED. R. CIV. P. 11(c)(1).

Under Rule 11(b), a party who presents a pleading, written motion, or other paper with the court certifies that to the best of his or her knowledge, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions contained in such pleading have evidentiary support. A party who files a pleading for an improper purpose, such as harassing or

punishing the opposing party, violates Rule 11(b)(1), and may therefore be sanctioned. In determining whether a filing has been made for an improper purpose under Rule 11, a court must judge the attorney's conduct under an objective standard of reasonableness. *See Stevens v. Lawyers Mut. Liab. Ins. Co. of N. Carolina,* 789 F.2d 1056, 1060 (4th Cir.1986) (applying objective standard); *Fahrenz v. Meadow Farm P'ship,* 850 F.2d 207, 210 (4th Cir.1988) (same). Courts may infer from "solid evidence of a pleading's frivolousness" that a pleading was filed for an improper purpose. *See Townsend v. Holman Consulting Corp.,* 929 F.2d 1358, 1365-66 (9th Cir. 1990) (*en banc*) (district court inferred that plaintiff vindictively named defendant from fact that allegations of complaint were frivolous and fact that defendant had been law firm that opposed plaintiff in earlier state court action).

Rule 11 sanctions are to be limited to what suffices to deter the offender from repeat conduct and those similarly situated from engaging in comparable conduct. Fed. R. Civ. P. 11(c)(4). In determining whether to impose sanctions, the court may consider the following factors, among others: (i) whether the improper conduct was willful, or negligent; (ii) whether it was part of a pattern of activity, or an isolated event; (iii) whether it infected the entire pleading, or only one particular count or defense; (iv) whether the person has engaged in similar conduct in other litigation; (v) whether it was intended to injure; and (vi) what effect it had on the litigation process in time or expense. Fed. R. Civ. P. 11, advisory committee notes of 1993. *See also In re Kunstler,* 914 F.2d 505, 523 (4th Cir. 1990) (Fourth Circuit identifying four factors courts should consider when imposing Rule 11 sanctions: "(1) the reasonableness of the opposing party's attorney's fees; (2) the minimum to deter; (3) the ability to pay; and (4) factors relating to the severity of the Rule 11 violation." *Cf. Jones v. Int'l Riding Helmets, Ltd.,* 49 F.3d 692, 694–95 (11th Cir. 1995) (awarding sanctions where complaint was not well-grounded in fact at the time it was filed); *Med. Emergency Serv. Assocs. v. Foulke,* 844 F.2d 391 (7th Cir. 1988) (Rule 11 sanctions appropriate

where a brief review of the relevant employment contracts would have revealed the correct employment status of certain defendants).

### C. Various Allegations Asserted In The Class Complaint Are Demonstrably False And A Reasonable Pre-Filing Inquiry Would Have Revealed As Much To Plaintiffs' Counsel.

#### 1. Safe Harbor Letter To Plaintiffs' Counsel

On November 11, 2020, undersigned counsel, on behalf of Defendants, sent a safe harbor letter pursuant to Rule 11(c)(2) (the "Safe Harbor Letter") to Plaintiffs' counsel attaching a draft of the Motion for Sanctions and this Memorandum that detailed the verifiable factual falsities contained within the Class Complaint that necessitate Plaintiffs' voluntary dismissal of such Class Complaint. *See* **Exhibit A** (attaching the Safe Harbor Letter).

#### 2. The Class Complaint Contains Factual Falsities That Require Plaintiffs' Voluntary Dismissal Of Class Complaint.

Despite the verifiable factual falsities contained in the Class Complaint, Plaintiffs' counsel has failed to withdraw the Class Complaint and, therefore, it can only be presumed that they intend to continue to prosecute the Class Complaint. Moreover, given that the allegations asserted in the Class Complaint are so flagrantly without legal or factual foundation, an improper purpose must be inferred from Plaintiffs' counsel's refusal to voluntarily withdraw the Class Complaint. In fact, as an example of such improper purpose, Plaintiffs' counsel attempted to utilize the Class Complaint to unduly influence the Court's pending jurisdictional decision in *Williams et al. v. Microbilt Corp.*, Case No. 3:19-cv-00085-REP (U.S.D.C. Virginia) (Richmond Division) at ECF Dkt. 170 (Exh. 2).

As set forth in greater detail below, and as supported by the various publicly available documents cited to herein and attached hereto as exhibits, the legal bars to the Class Complaint's claims and the underlying verifiable factual falsities demonstrate Plaintiffs' counsel's lack of investigative diligence as specifically required by Rule 11. If Plaintiffs' counsel had conducted

even a basic investigation of those bankruptcy documents publicly available in a proceeding known to Plaintiffs' counsel, Plaintiffs' counsel would have learned of the facts regarding the arms-length relationship between PAIF and Big Valley Financial that refute any possible collusion between such entities as wrongly asserted in the Class Complaint. For example, the loan agreement between PAIF and Big Valley Financial confirms that the funds loaned were indeed loans and not the "capitalization" of an illicit or RICO-predicated enterprise and the stated interest rate for such loan to Big Valley Financial refutes the "revenue sharing" allegations in the Class Complaint. As if those facts were not enough, the funds use limitation and documentation provided by Big Valley Financial expressly prohibits the alleged illicit loan activities asserted in the Class Complaint. To establish the type of RICO-predicated collusion painted in the Class Complaint, Plaintiffs' counsel would need to have within their knowledge and control facts that demonstrated that PAIF actually ignored its very own loan documents with Big Valley Financial and/or otherwise loaned directly to the Tribal Lenders. And there are no such facts of any materiality, made especially apparent given that, during a large portion of the class time period and during the term of PAIF's loan to Big Valley Financial, PAIF and PAF were in bankruptcy being managed by a court-appointed Trustee.

### a.  PAF/PAIF's New Jersey Bankruptcy

In the Class Complaint, Plaintiffs falsely allege that Burgess and other individuals and corporate defendants, including PAIF, used Big Valley in a "rent-a-tribe" arrangement to originate payday loans. Plaintiffs' counsel cannot possibly have facts to support these nonexistent "facts." PAF and PAIF are entities that previously filed for bankruptcy and the facts of record from PAF/PAIF's bankruptcy case categorically contradict Plaintiffs' allegations in that regard and this is an easily provable fact.[5]

---

[5] Paragraph 16 of the Class Complaint confirms that Plaintiffs' counsel was well aware of PAF/PAIF's bankruptcy.

Specifically, PAF and PAIF (together, the "Debtors") each filed bankruptcy cases on March 9, 2018, in the United States Bankruptcy Court for the District of New Jersey, Chief Judge Kaplan, presiding. *See* Bankr. D.N.J. 18-14603 & 18-14600 (the "PAF/PAIF Bankruptcy"). Because of the underlying disputes between Debtors and one of their investors, and over the objection of the Debtors, the Bankruptcy Court removed the Debtors from possession and appointed a Chapter 11 Trustee (the "Trustee") by Order dated November 1, 2018. *See* Bankr. D.N.J. Dkt. 389. Thereafter, the Trustee exclusively operated PAF/PAIF from November 13, 2018 (*see* Bankr. D.N.J. Dkt. 408), through until March 13, 2020. *See* Bankr. D.N.J. Dkt. 1131 ¶ 23 & 1141. On March 13, 2020, the Bankruptcy Court resolved the PAF/PAIF Bankruptcy through a confirmed plan of reorganization for the Bankruptcy (the "Plan"). *See* **Exhibit E** (attaching a copy of the Plan) and **Exhibit F** (attaching a copy of Bankruptcy Court order confirming the Plan).

Directly contrary to the allegations in the Class Complaint, the Chapter 11 Trustee had sole and exclusive operational authority over PAF/PAIF during the time period from November 19, 2018, through until March 31, 2020. The fact that the Trustee had operational authority over PAF/PAIF, and was exclusively responsible for the collections of amounts due from Big Valley Financial during that time period, conclusively refutes all allegations of RICO-based collusion between PAF/PAIF and any lenders purportedly associated with Big Valley made by Plaintiffs' counsel in the Class Complaint.

For example, the Class Complaint asserts that Plaintiff Williams made his online loan on May 22, 2019 (*see* Class Complaint at ¶ 86) and Plaintiff Mann allegedly originated his loan on April 10, 2019. *Id.* at ¶ 93. With regard to both of these consumer loans, they originated at a time when the Trustee was in control of PAF/PAIF, a fact well known to Plaintiffs' counsel, and a fact that precludes any claims against Defendants.

During the PAF/PAIF Bankruptcy, the Trustee confirmed that PAIF was organized in 2015 to make loans to consumer lending companies. *See* Fourth Amended Disclosure Statement For Trustee's Fourth Amended Joint Chapter 11 Plan Of Reorganization Of Princeton Alternative Income Fund, LP And Princeton Alternative Funding, LLC Pursuant To Section 1125 Of The Bankruptcy Code (the "Disclosure Statement"), at 14. *See* Bankr. D.N.J. Dtk. 1010 (attached hereto as **Exhibit B**). PAF/PAIF **never** made any direct loans to any individual consumers. *Id.* The Disclosure Statement further confirmed the creation, organizational and operational structure of PAIF. *Id.* at 12-14. The Bankruptcy Court approved the Disclosure Statement. *See* Bankr. D.N.J. Dtk 1019. The entirety of the Disclosure Statement makes certain that PAF/PAIF's relationships with its borrowers was always in an arms' length "lender-debtor" relationship. *Id.*

### b.   PAF/PAIF's Relationship With Big Valley Financial

Big Valley Financial was a consumer lending company that originated a loan (the "Loan Proceeds") with PAIF in October 2016 (the "Big Valley Loan").[6] The loan between PAIF and Big Valley Financial was active and performing during the PAF/PAIF Bankruptcy.[7] While the Trustee was in possession and control of PAF/PAIF, the Trustee attempted to settle the outstanding loan with Big Valley Financial for less than the face amount of the outstanding obligations. As should be obvious from the publicly filed materials regarding such matter available to Plaintiffs' counsel, it is antithetical to allege that the Trustee (operating for PAF/PAIF) was operating in collusion with Big Valley since they were negotiating against each other. In the November 19, 2019 Motion To Approve The Proposed Big Valley Settlement (D.N.J. Dkt. 904) ("Motion to Approve") (attached hereto as **Exhibit C**), the Trustee averred that he conducted substantial due diligence

---

[6] The Loan and Security Agreement, dated October 28, 2016 (the "Big Valley LSA"), originally by and between Big Valley Financial and Fintech Financial, LLC ("Fintech"), was subsequently assigned by Fintech to PAIF in late 2016.

[7] There is no evidence of any lending activities by, between and among Defendants and Big Valley after March 31, 2020, and those Plaintiffs in the Class Complaint would have no evidentiary basis to assert any claims after March 31, 2020.

about Big Valley's operations and further specified the negotiations undertaken surrounding the potential payoff of the Big Valley Loan. *See* Motion to Approve, at 6-7. Questioning the scope of the diligence performed by the Trustee, MicroBilt Corporation ("MBC") and the Ad Hoc Committee of Minority Shareholders of PAIF[8] (together, the "Objectors") filed an objection to that proposed settlement, arguing that Big Valley Financial should not receive any discount on its loan repayment. *See* Bankr. D.N.J. Dkt. 1039.[9] Thereafter, the Objectors took discovery on the reasonableness of the proposed settlement and the Trustee's due diligence.

The Trustee's Reply (Bankr. D.N.J. Dkt. 1052) documented the Trustee's due diligence, including attaching: (i) the deposition of the Trustee's advisor who testified to his several negotiation calls with Big Valley's representative, Bart Miller (*see* **Exhibit D** (attaching deposition transcript at 150-52, attached as Exh. B to Motion to Approve)); and (ii) full financials for Big Valley (attached as Exh. E to Motion to Approve). The result of the Trustee's due diligence investigation and efforts, as confirmed by the subsequent discovery regarding the settlement negotiations, confirmed that there was no collusive connection regarding the Big Valley Loan and MBC, Burgess or any of the other Defendants. To the contrary, Big Valley Financial and Big Valley held adverse interests to PAF/PAIF and the other Defendants. Thus, Plaintiffs' contrary accusations of RICO-based collusive illegal activity as asserted in the Class Complaint are in direct conflict with the available public record and without any basis in fact.

---

[8] All of which are entities and persons not affiliated with MBC or any of Defendants.

[9] The fact that MBC (and others) were disputing the propriety of allowing Big Valley (thereby making MBC and others adverse to Big Valley) from receiving a discount on its repayment obligations further refute the conclusion asserted in the Class Complaint of any collusion between Burgess, MicroBilt and the other Defendants and Big Valley.

    **c.** **The Draw Request Records Provided By Big Valley Financial To PAIF Confirm That None Of The Class Complaint's Plaintiffs Received Any Of The Loan Proceeds And The Entirety Of The Loan Proceeds Was Used To Originate Consumer Loans Through Big Valley Financial And None Was Used By Big Valley Financial To Fund Other Tribal Lenders.**

The Big Valley Loan was represented by a written Loan and Security Agreement (the "Big Valley LSA") by and between Big Valley Financial and Fintech that was later assigned by Fintech to PAIF in late 2016. *See* **Exhibit G** (attaching a copy of the LSA); **Exhibit C** at ¶ 4 (confirming assignment by Fintech to PAIF).

Through the Big Valley LSA, PAIF, as assignee, supplied the Loan Proceeds to Big Valley Financial. However, prior to any funding, pursuant to Section 2.7 of the Big Valley LSA, Big Valley Financial was required to provide to PAIF the names of those consumer borrowers with whom Big Valley Financial had originated consumer loans (the "Draw Request Records"). Big Valley Financial, during the term of the Big Valley Loan, provided those Draw Request Records to PAIF. Upon review of those records, and pursuant to the declaration of Jack Cook (the "Cook Declaration"), PAIF confirms that none of the consumers who Big Valley Financial originated consumer loans with were any of the named plaintiffs in the Class Complaint. *See* **Exhibit H** at ¶ 13 (attaching Declaration of Jack Cook).

Jack Cook ("Cook") assumed the role of CEO of PAF and PAIF in January 2018, after having served as the Chief Operating Officer and Chief Compliance Officer of PAF since March 1, 2016. After PAIF and PAF declared bankruptcy in March 2018, and the Trustee was appointed in November 2018, Cook remained as CEO of PAIF under the stewardship and direction of the Trustee (and his professionals). At all times, in his capacity as CEO, Cook was responsible for, among other things, overseeing PAF/PAIF's business and its investments. Indeed, the total amount of the funds that PAIF disbursed to Big Valley Financial through the Big Valley Loan pursuant to the Big Valley LSA (the "Disbursed Amount") equaled the total amount of the consumer loans

(the "Consumer Loan Amount") that Big Valley Financial loaned to consumers as supported by the Draw Request Records. *Id.* at ¶ 14. Thus, the Draw Request Records provided to PAIF, and as reviewed by Cook, confirm that Big Valley Financial utilized the Loan Proceeds in a manner consistent with Section 6.7 of the Big Valley LSA and thus none of the Loan Proceeds could have been used to fund any of Tribal Lenders where the Disbursed Amount equaled the Consumer Loan Amount.

### d. No Defendant Loaned Or Otherwise Transferred Funds To Any Of The Tribal Lenders Identified In The Class Complaint.

The Class Complaint at paragraph 13 asserts that PAF "provides capital (often tens of millions of dollars) to finance companies, including to illegal lenders **like**" the Tribal Lenders. Class Complaint at ¶ 13 (emphasis supplied). This is an outright falsity and there are no records to support such an assertion. In fact, paragraph 13 does not by itself, and nowhere else does the Class Complaint, even aver that PAF or PAIF actually loaned to the specifically identified Tribal Lenders.

Moreover, as supported by the Cook Declaration and the Draw Request Records reviewed by Cook, other than the Big Valley LSA, PAIF made no other loans to any entities affiliated with Big Valley Financial or the Big Valley Band of Pomo Indians. *See* **Exhibit H** at ¶ 16. Moreover, PAIF maintains information similar to the Draw Request Records for those other loans that PAIF has originated with other lenders (the "Line Lenders") pursuant to separate loan security agreements. *Id.* at 17. Cook reviewed a search of all draw requests for PAIF's other Line Lenders and confirmed that neither PAIF nor any of the Line Lenders, including Big Valley Financial, distributed any loan proceeds from PAIF to FreedomCashLenders, Tremont Lending, Little Lake Lending or Credit Cube which are the tribal lenders set forth in the Class Complaint. *Id.* at 18. Thus, where neither PAIF nor Big Valley Financial lent funds to the Tribal Lenders, Plaintiffs have no factual basis to assert their claims in the Class Complaint.

> **e.** **The Contractual Relationship Between PAF/PAIF And Big Valley Financial Included A "Funds Use" Covenant That Required The Loan Proceeds To Be Used Only For Preapproved Consumer Loans Between Big Valley Financial And Consumers And That Would Have Prohibited Big Valley Financial Lending Loan Proceeds To Other Tribal Lenders.**

The Big Valley LSA had a restrictive negative covenant with regard to the use of the Loan Proceeds. *See* **Exhibit F** at § 6.7. Specifically, Section 6.7 of the Big Valley LSA required that the Loan Proceeds could be used "**only for (i) the origination of Contracts and related Receivables**, and (ii) the payment of fees, charges and expenses owing to Lender and any other fees and transaction expenses relating to the Revolving Loan Facility that have been approved in writing by Lender." *Id.* (emphasis supplied). The Big Valley LSA defines "Contracts" and "Receivables" as agreements involving "Consumer Loans" and fees earned from "Consumer Loans," where a "Consumer Loan" itself is defined by the Big Valley LSA as "consumer installment loans and revolving lines of credit to individuals."

Thus, the contractual relationship between PAIF and Big Valley Financial prohibited the utilization of the Loan Proceeds for anything that was **unrelated** to the funding of a consumer loan directly made by Big Valley Financial and did not permit the use of the Loan Proceeds to fund other tribal entities themselves making separate consumer loans to individuals as is asserted in the Class Complaint.

> **f.** **The Records Reflect That The Big Valley Loan Included Only An Interest Rate Of At Most Twenty-Four (24%) And There Is No Evidence That Any Other Payments Were Made—And None Were Made—From Big Valley Financial Or Any Other Tribal Lender To PAIF As Asserted In The Class Complaint.**

The Big Valley LSA provided that PAIF was entitled to an interest rate of at most twenty-four percent (24%). There are no records that indicate that PAF/PAIF were entitled to or ever received any additional amounts pursuant to the LSA. That is because they never did. The Trustee

settled the outstanding loan amount due pursuant to the Big Valley LSA and, during the due diligence that the Trustee conducted and the discovery that others completed, there was no record of other receivables being paid to any of Defendants other than the Receivables as defined by, and paid to PAIF pursuant to, the Big Valley LSA.

### g. The Allegations That Wojciechowski Held Direct Ownership in PAIF Or That Burgess Owns Indirectly A Majority Of The "Shares" In PAF and PAIF Are Incorrect.

The Class Complaint asserts that Wojciechowski is a direct shareholder in PAIF and that Burgess "indirectly owns the majority of shares" in PAF and PAIF. Class Complaint at ¶ 15. Both of these statements are inaccurate and untrue.

PAF is a Delaware limited liability company and PAIF is a Delaware limited partnership and neither PAF nor PAIF issues "shares" of ownership. The publicly available bankruptcy documents, including the Disclosure Statement, confirm that the allegations in the Class Complaint as to the purported direct or indirect ownership of PAF and PAIF by Burgess and Wojciechowski are incorrect.

The Class Complaint further asserts that Burgess "has held an ownership interest in PAIF for 'over 25 years'" (*see* Class Complaint at ¶¶ 15, 118) which is a factual impossibility given that PAIF was only formed as an entity in November 2014 and PAF was formed in August 2014. *See* https://icis.corp.delaware.gov/ecorp/entitysearch/NameSearch.aspx (publicly available Delaware corporate records). It is apparent that Plaintiffs' counsel is relying upon prior testimony of Burgess during testimony that Burgess provided on January 3, 2017, in the Illinois Bankruptcy court regarding a bankrupt entity that PAIF had loaned money to. Plaintiffs' counsel has grossly misstated that testimony and stretched it out of context in an effort to intentional distort the ownership structure of PAF and PAIF. Similarly, there is no testimony to suggest that Wojciechowski has any direct (or indirect) ownership in PAF or PAIF. These efforts to pursue

individual claims against Burgess and Wojciechowski on woefully non-existent factual basis is unabashed harassment all in a likely effort to foist settlement positions in other on-going litigation.

### D. Conclusion

Given the egregious misrepresentations in the Class Complaint that are completely without the patina of a legal or factual foundation, Defendants respectfully request that this Court grant this Motion and award Defendants' sanctions against Plaintiffs' counsel in the amount of the attorneys' fees incurred by Defendants in preparing, investigating and filing this Motion and otherwise defending against the Class Complaint—and any amounts the Court deems necessary to deter future misconduct—where Defendants have delineated the factual falsities with respect to the allegations asserted in the Class Complaint (ECF Doc. 1) filed in this matter.[10]

Respectfully submitted,

Wyatt B. Durrette, Jr. (VSB No. 04719)
1111 East Main Street, 16th Floor
Bank of America Center
Richmond, VA 23219
804-775-6809 - Phone
804-775-6911- Fax
wdurrette@dagglaw.com

*To Be Admitted Pro Hac Vice:*

Maurice R. Mitts (Pa. Bar No. 50297)
Gerard M. McCabe (Pa. Bar No. 66564)
MITTS LAW, LLC
1822 Spruce Street
Philadelphia, PA 19103
215.866.0110 (p)
215.866.0111 (f)
mmitts@mittslaw.com
gmccabe@mittslaw.com

*Attorneys for Princeton Alternative Funding, LLC,*
*Princeton Alternative Income Fund, L.P., Philip*

---

[10] Upon the Court's direction, undersigned counsel will submit detailed invoices itemizing all fees and costs incurred in prosecuting this Rule 11 Motion and otherwise defending against the false claims asserted in the Class Complaint.

*Burgess, Walter Wojciechowski, MicroBilt Financial Services Corp., Alonzo Primus and LJP Consulting, LLC*

Dated: December __, 2020