**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| PHILLIP N. BURGESS, *et al.* | : | |
| Plaintiffs, | : | Civil Action No.: 20-7103 (FLW) |
| vs. | : | **OPINION** |
| LEONARD A. BENNET, *et al*, | : | |
| Defendants. | : | |

**WOLFSON, Chief Judge:**

Plaintiffs Philip N. Burgess, Jr. ("Mr. Burgess"), Michelle Burgess ("Mrs. Burgess"), Alexandria Burgess, and Minor 1, Minor 2, and Minor 3 (the "Burgess Children") (collectively, "Burgess Plaintiffs"); and  MicroBilt Corporation ("MicroBilt");  along with proposed plaintiffs Princeton Alternative Funding, LLC ("PAF"); Princeton Alternative Income Fund, L.P. ("PAIF"); Alonzo Primus ("Primus"); and LJP Consulting, LLC ("LJP") [1] (collectively, "Plaintiffs") allege, that defendants, Leonard A. Bennett ("Mr. Bennet"), Consumer  Litigation Associates, P.C. ("CLA"); Kristi Cahoon Kelly ("Ms. Kelly"); Kelly Guzzo, PLC ("Kelly Firm") (collectively, "CLA/Kelly Defendants"); Jacob M. Polakoff ("Mr. Polakoff"); and  Berger  Montague PC

---

[1]      PAF, PAIF, Primus and LIP were not initially named as plaintiffs in this action.  However, there are currently two motions for leave to amend pending before this Court.  *See* ECF Nos. 19, 23.  The proposed amended complaint seeks to add new plaintiffs, additional facts, and new claims, but the claims of the original plaintiffs are largely unchanged.  Because the proposed amended complaint incorporates additional factual allegations relevant to analyzing Plaintiffs' claims and for the sake of judicial economy, I treat the most recent amended complaint [ECF No. 23-1, Ex. A. Proposed Amended Complaint] as the operative complaint in adjudicating Defendants' motion to dismiss, and the motions for leave to amend.

("Berger Montague) (collectively, "Berger/Montague Defendants") (together "Defendants"), initiated frivolous lawsuits and engaged in other allegedly harassing behavior in order to coerce Mr. Burgess and MicroBilt to settle a separate, but related, lawsuit.    Accordingly, Plaintiffs assert various state law tort claims, including abuse of process, invasion of privacy, and intentional infliction of emotional distress against Defendants.  Defendants move to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Plaintiffs oppose the motion.

For the reasons set forth below, Defendant's motion is **GRANTED**. Plaintiffs' motion for leave to amend is **DENIED**.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The relevant facts are derived from Plaintiffs' second Proposed Amended Complaint ("Am. Compl.") and assumed as true for the purpose of this motion.

Mr. Burgess, a New Jersey resident, is the founder of MicroBilt, a Delaware corporation with its principal place of business in Georgia, and currently serves as a consultant to the company. Am. Compl. ¶¶ 2-3.  Plaintiffs allege that Defendants, all of whom are attorneys or law firms, have engaged in a pattern of frivolous and harassing behavior.  *Id.* at ¶¶ 9-17, 22.  Specifically, Plaintiffs identify six lawsuits which are relevant to the instant action: five are pending, or recently terminated, in the Eastern District of Virginia ("EDVA") and one in the District of New Jersey (collectively, "Litigations").[2] Plaintiffs allege that "[t]wo of the aforementioned Litigations named

---

[2]    Plaintiffs' allegations with respect to the pending lawsuits are imprecise, and the Amended Complaint does not clearly identify which lawsuits involve Mr. Burgess and MicroBilt as parties, which of the defendants represents the plaintiffs in each of the underlying lawsuits, or which two lawsuits Plaintiffs specifically believe are frivolous attempts to coerce them into cooperation. However, the Court takes judicial notice of the court's docket sheet in each of the Litigations.  *See Toscano v. Conn. Gen. Life Ins. Co.*, 288 Fed. App'x 36, 38 (3d Cir. 2008) ("[A] court may take judicial notice of the record from a previous court proceeding between the parties.")

MicroBilt as a defendant and are frivolous attempts to compel and coerce MicroBilt and Philip Burgess into cooperating with the plaintiffs and their counsel (Defendants here) in prosecuting their claims against Matt Martorello, the principal defendant in those cases and, in the process, forcing MicroBilt and its employees to spend excessive amounts of time, effort and counsel fees in motion practice and in responding to burdensome discovery demands in all of the Litigations." *Id*. at ¶ 23.

In two of the actions pending in the EDVA, *Williams v. Big Picture Loans, LLC*, No. 17-cv-461 (the "Big Picture Litigation") and *Renee Galloway, et al. v. Big Picture Loans, LLC, et als.*, No. 18-cv-00406 (the "Galloway Action"), the plaintiffs there, who are represented by the defendants[3] in this action, allege that the defendants in that action "violated the federal Racketeer Influenced and Corrupt Organizations ("RICO") statute and various State usury laws by operating so-called 'rent-a-tribe' payday lending schemes." *Id*. at ¶20. Neither MicroBilt nor Mr. Burgess are parties to either the Galloway Action or the Big Picture Litigation. However, in a related lawsuit, *Williams, et al. v. MicroBilt Corporation, et als*., Docket No. 3:19-cv-00085 (the "Virginia Williams Action"), the *Williams* plaintiffs allege that Mr. Burgess procured plaintiffs' consumer reports from MicroBilt and provided them to one of the defense attorneys in the Big Picture Litigation, in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681,." *Id*. at ¶¶25-27. Plaintiffs here further allege that Mr. Burgess was initially dismissed from that lawsuit based on lack of personal jurisdiction, however, the court subsequently granted the Williams plaintiffs'

---

[3]   Neither Ms. Kelly nor Mr. Polakoff has entered a notice of appearance in the Big Picture Litigation; although other attorneys from the Kelly Firm and Berger Montague are seemingly involved in the matter. Similarly, Mr. Polakoff is not listed as an attorney of record in the Galloway Action.

motion for reconsideration and permitted jurisdictional discovery which is still ongoing and the subject of discovery disputes between the parties. *Id*. at ¶¶28-31.

Defendants here have allegedly utilized various pressure tactics in order to force Mr. Burgess and MicroBilt into settling the Virginia Williams Action, such as scheduling overlapping depositions of MicroBilt employees and filing frivolous motions to compel. *Id*. at ¶¶31-32. Further, Plaintiffs here allege that as part of the jurisdictional discovery in the Virginia Williams action, defendant Bennett falsely "represented [to the judge] in that action Burgess was an old friend of Matt Martorello, the principal defendant in the EDVA litigation; that Philip Burgess owned MicroBilt; then that he did not own MicroBilt; and finally that Burgess had recently sold MicroBilt while that action was pending," and the judge required "MicroBilt provide a declaration setting forth the ownership history of MicroBilt and the employment relationship with Philip Burgess." *Id*. at ¶32.

### A. The New Jersey Williams Action

In May 2020, Mr. Polakoff from Berger Montague, initiated a New Jersey lawsuit, *Lulu Williams, et als. v. Philip Burgess,* No. 20-cv-5781 (FLW/DEA) (the "New Jersey Williams Action"), against Mr. Burgess, alleging, like in the Virginia Williams Action, that Mr. Burgess illicitly procured the plaintiffs' credit reports to aid in defending the lawsuits against him.[4] *Id*. at ¶¶34-35. Plaintiffs allege that on May 15, 2020, at approximately 7:54 p.m., a process server ("Process Server One") attempted to serve Mr. Burgess at the family's home. *Id*. at ¶38. At the time, only Mrs. Burgess and the Burgess children were home. *Id*. at ¶39. Mrs. Burgess answered

---

[4]     Pursuant to a consent order, the New Jersey Williams Action is stayed pending resolution of the Virginia Williams Action. *See* 20-5781, New Jersey Williams Action, ECF No. 13.

the door and informed the process server that Mr. Burgess was not home, and the process server left. *Id*. at ¶38.

The next day, a different process server ("Process Server Two"), allegedly arrived at the Burgess residence "at approximately 3:17 p.m., rang the doorbell and, without waiting for anyone to respond, began intentionally banging on the picture windows on the front of the house." *Id*. at ¶40. According to Plaintiffs' "[t]he actions of Process Server [Two] as alleged, caused, and were intended to cause [p]laintiffs Michelle Burgess, [and the Burgess Children] to fear possible home invasion, robbery and assault and caused those Plaintiffs to suffer emotional distress." *Id*. at ¶41. When two of the Burgess children opened the door and informed Process Server Two that Mr. Burgess was not home, he allegedly "threw a set of papers at them into the Burgess' residence and walked away." *Id*. at ¶42. Plaintiffs further allege that Process Server Two was not wearing a mask or gloves, came within one-foot of the Burgess children, and did not encase the papers in plastic, or otherwise follow any of the recommended practices for process servers during the COVID-19 pandemic. *Id*. at ¶43. On May 20, 2020, Process Server Two returned to the Burgess residence, without wearing gloves or a mask, "and again began intentionally banging on the picture windows in the front of the house without first ringing the doorbell or knocking on the front door." *Id*. at ¶46. When the family's housekeeper opened the door, she was served with two subpoenas – one document subpoena and one deposition subpoena -- directed to Mr. Burgess; they were captioned with the Virginia Williams litigation and signed by an attorney at defendant Consumer Litigation Associates, LLC.[5] *Id*. at ¶ 48. The next day, another process server ("Process Server Three"), drove up to the Burgess residence and spoke with Michelle Burgess. *Id*. at ¶40. Process

---

[5]      Plaintiffs do not identify who specifically signed the subpoenas or whether it was one of the individuals named as a defendant in this action.

Server Three served Ms. Burgess with a deposition subpoena directed to Mr. Burgess captioned for the Galloway Action and signed by defendant Bennet from Consumer Litigation Associates, LLC. *Id*. at ¶51.

### B. The Mann Class Action

In October 2020, after Plaintiffs had already filed the instant lawsuit, CLA/Kelly filed another class action lawsuit against MicroBilt and Burgess in the EDVA, *Steven Mann et al. v. Princeton Alternative Funding, LLC et al.*, No. 3:20-cv-00820 (the "Mann Class Action"), asserting violations of RICO. *Id*. at ¶ 53. In addition to Burgess and MicroBilt, the plaintiffs in the Mann Class Action also named PAF, PAIF, Primus, and LJP as defendants, as well as other entities and individuals which are not parties to the instant lawsuit.[6] The class action plaintiffs alleged that Burgess, MicroBilt, and the other defendants in the Mann Class Action "made, collected and/or received interest from high-interest loans" in the names of various entities formed under tribal law in order to circumvent state usury laws and "to serve allegedly as the fronts to disguise the non-tribal payday lenders' role and to ostensibly shield the scheme by exploiting the doctrine of sovereign immunity." *Id*. at ¶59. In response to the lawsuit, Burgess, MicroBilt, PAF, PAIF, Primus, and LJP served the Mann plaintiffs' counsel, with a Rule 11 safe harbor letter, asserting that the lawsuit was unfounded for a number of reasons, including that, because PAF and PAIF had filed bankruptcy earlier that year and under the confirmed plan of reorganization, the claims against PAF, PAIF, and their employees and directors, were discharged. *Id*. at ¶68; *see also* Am. Compl. Ex. B, Rule 11 Letter. They also asserted that claims against Burgess, MicroBilt and LJP

---

[6]      PAF is the general partner and managing member of PAIF and MicroBilt, in turn, owns a controlling interest in PAF. Am. Compl. ¶¶ 4-5.

were "derivative claims owned by PAF/PAIF" and thus, also discharged as part of the bankruptcy. *Id*. Accordingly, Plaintiffs in this action allege that the Mann Class Action was frivolous and filed "in bad faith purely to extort Burgess into cooperating with them or to suffer the damaging consequences of defending a civil RICO lawsuit." *Id*. at ¶54. Subsequently, the CLA/Kelly Defendants voluntarily dismissed the claims against Burgess, MicroBilt, PAIF, PAIF, and LJP without prejudice. *Id*. at ¶71; *see also* Am. Compl, Ex. C., Dismissal. In dismissing those defendants from the Mann Class Action, the CLA/Kelly Defendants explained that they "believe[d] there [was] reasonable basis to allege that [d]efendants are part of a single conspiracy," but that they were nevertheless, "dismissing [the] case until more information is obtained from the tribal officials regarding the operations of their businesses." *See* Am. Compl., Ex. C. Plaintiffs further allege that a copy of the Mann Class Action complaint was provided to the judge in the Virginia Williams Action and the Bennett/Kelly Defendants refused to withdraw the exhibit. *Id*. at ¶76. As a result of those allegedly "false" and "baseless" allegations, Burgess, MicroBilt, PAIF, PAIF, and LJP, subsequently filed a motion for Rule 11 sanctions against the CLA/Kelly Defendants.[7] Am. Compl. ¶78.

Plaintiffs initiated the instant lawsuit against Defendants in June 2020, and Defendants moved to dismiss asserting lack of subject matter jurisdiction and failure to state a claim. In November 2020, Plaintiffs filed a motion to amend their complaint, and in February 2021, Plaintiffs filed a revised motion for leave to amend, adding new claims and incorporating the

---

[7]    The sanctions motion is still pending.

additional factual allegations regarding the Mann Class Action.  Defendants oppose both motions for leave to amend.[8]

## II.    STANDARD OF REVIEW

### A.  Federal Rule of Civil Procedure 15(a)

Federal Rule of Civil Procedure 15(a)(1) allows a party to amend its pleading once as a matter of course either within 21 days after serving it, or, if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1).  In all other cases, Rule 15(a)(2) requires either the opposing party's consent or the court's leave to amend the pleadings. Fed R. Civ. P. 15(a)(2).  The standard to grant a motion for leave is liberal, as Rule 15(a)(2) reads, "the court should freely give leave when justice so requires."  *Id*.; *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("[T]his mandate is to be heeded.").  Generally, there is a presumption in allowing the moving party to amend its pleadings. *See Del Sontro v. Cendant Corp.*, 223 F. Supp. 2d 563, 576 (D.N.J. 2002).

Still, "the decision to grant or deny leave to amend under Rule 15(a) is committed to the sound discretion of the district court."  *257 Elizabeth Ave., LLC. v. Cont'l Cas. Co.*, No. 12-4091, 2016 WL 452311 (D.N.J. Feb. 5, 2016) (quoting *Arab African Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993) (internal quotations omitted)). Thus, where "it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party[,]" the Court

---

[8]     Plaintiffs' original complaint asserted malicious abuse of legal process; invasion of privacy interest; and intentional infliction of emotional distress.  The second proposed amended complaint adds PAF, PAIF, Primus and LIP as plaintiffs and alleges five new counts: business injured by another's false description; intentional interference with prospective economic advantage; civil conspiracy to commit tort; aiding the commission of tort; and malicious prosecution.

retains the discretion to deny a request to amend. *Fraser v. Nationwide Mutual Ins. Co.*, 352 F.3d 107, 116 (3rd Cir. 2003).

### B. <u>Federal Rule of Civil Procedure 12(b)(6)</u>

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks and citation omitted). While Federal Rule of Civil Procedure 8(a)6 does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the Complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To determine whether a plaintiff has met the facial plausibility standard mandated by Twombly and Iqbal, courts within this Circuit engage in a three-step progression. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "outline the elements a plaintiff must plead to state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the court "peel[s] away those allegations that are no more than conclusions and thus not

entitled to the assumption of trust. *Id*. Finally, where "there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

### III.  <u>ANALYSIS</u>

#### A.  **Subject Matter Jurisdiction**

Federal Rule of Civil Procedure 12(b)(1) requires the court to grant a motion to dismiss if the court lacks subject-matter jurisdiction to hear a claim.  Fed. R. Civ. P. 12(b)(1); *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).  A Rule 12(b)(1) motion to dismiss is treated as either a "facial or factual challenge to the court's subject matter jurisdiction." *Gould Electronics, Inc. v. United States*, 220 F. 3d 169, 176 (3d Cir. 2000). A facial attack, such as in this case, "is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court...." *Constitution Party of Pennsylvania v. Aichele*, 757 F. 3d 347, 358 (3d Cir. 2014). In that regard, the court considers only the allegations in the pleadings in the light most favorable to the plaintiff. *U.S. ex Rel. Atkinson v. PA. Shipbuilding Co.*, 473 F. 3d 506, 509 (3d Cir. 2007).

Federal courts are courts of limited jurisdiction and may not decide a matter in the absence of federal subject-matter jurisdiction. *See Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 701-02 (1982).  "The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 (2006). "Section 1331 provides for '[f]ederal-question' jurisdiction, § 1332 for '[d]iversity of citizenship' jurisdiction." *Id*. (alterations in original).  In order to invoke jurisdiction under Section 1332, a plaintiff must "presents[ ] claim between parties of diverse citizenship that exceeds the required jurisdictional amount, currently $75,000." *Id*. (internal citation omitted).  The

party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, that the jurisdictional requirements are satisfied. *Auto–Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 395 (3d Cir. 2016)

Plaintiffs' claims are premised on the existence of diversity jurisdiction pursuant to Section 1332. The parties do not dispute that there is diversity of citizenship as required under the statute; rather, Defendants argue that Plaintiffs' claims must be dismissed for lack of subject matter jurisdiction because Plaintiffs have not adequately alleged the amount in controversy. ECF No. 14, Def. Br. at 30-31. Defendants contend that "the Complaint makes no effort to plead how the Plaintiffs, individually, were actually damaged in this matter with respect to each claim or how those damages could ever meet the amount in controversy requirement." *Id*. at 31. Furthermore, Defendants argue that the Complaint impermissibly aggregates claims of several plaintiffs in order to reach that amount. *Id*. at 30; ECF No. 19, Reply Br. at 10-11.

In response, Plaintiffs assert that they are not required to plead damages "with detail and specificity," and that their pleading is consistent with Rule 8. Pl. Br. at 13. In that regard, Plaintiffs emphasize that this District's local rules, "expressly require: A pleading which sets forth a claim for relief in the nature of unliquidated money damages shall state in the ad damnum clause a demand for damages generally without specifying the amount." *Id*. at 14.

When calculating the amount in controversy, the "sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Dardovitch v. Haltzman*, 190 F.3d 125, 135 (3d Cir. 1999) (quoting S*t. Paul Mercury Indem. Co. v. Red Cab Co*., 303 U.S. 283, 288-89 (1938)). "The burden of pleading the amount in controversy 'is not especially onerous.'" *Stevens & Ricci Inc.,* 835 F.3d at 395 (quoting *Suber v. Chrysler Corp.,* 104 F.3d 578, 583 (3d Cir.

1997)).  "[T]the question whether a plaintiff's claims pass the 'legal certainty' standard is a threshold matter that should involve the court in only minimal scrutiny of the plaintiff's claims." *Stevens & Ricci Inc.,* 835 F.3d at 395.

As an initial matter, where there are multiple plaintiffs in a suit, the general rule is that "the distinct claims of separate plaintiffs cannot be aggregated when determining the amount in controversy." *Auto–Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 395 (3d Cir. 2016) (citing *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 666 (3d Cir. 2002)).  In determining the amount in controversy, the Court considers all of the claims between a single plaintiff and a single defendant.  *Werwinski*, 286 F.3d at 666 ("[C]laims, whether related or unrelated, of a single plaintiff against a single defendant may be aggregated.").

Here, Plaintiffs allege "[p]ursuant to 28 U.S.C. § 1332(a), the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and seek as damages compensatory, consequential, treble, special and punitive damages.  Am. Compl. ¶19.  While Plaintiffs have not provided a precise damages figure, they are not required to do so at this stage. When a complaint fails to demand a specific amount of damages, a court must perform its own "independent appraisal of the value of the claim."  *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) (citing *Corwin Jeep Sales & Serv., Inc. v. Am. Motor Sales Corp.*, 670 F. Supp 591, 596 (M.D.Pa.1986)).  The amount in controversy "is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated."  *Angus*, 989 F.2d at 146.  Viewing the Amended Complaint in the light most favorable to Plaintiffs, I cannot conclude to a legal certainty that dismissal is warranted, because at least one plaintiff's claims -- MicroBilt's -- against the CLA/Kelly Defendants, individually, likely satisfy the amount in

controversy requirement.[9]  As alleged, as part of Defendants' campaign of harassment, MicroBilt

has been named as a defendant in three lawsuits: the Williams Action, the Glover Action, and the

Mann Class Action and the plaintiffs in each lawsuit are all represented by the CLA/Kelly

Defendants.   Those actions involve allegations, *inter alia,* that MicroBilt's business model

allegedly violates the federal RICO statute and various state usury laws, impacting the company's

business reputation.  As damages in this matter, MicroBilt seek compensatory damages, which

would include the costs of litigating those lawsuits, as well as any damages stemming from the

harm to MicroBilt's reputation.  The costs of defending several lawsuits, coupled with the damages

for the harm to MicroBilt's reputation and loss of business revenue, likely exceeds $75,000.

Moreover, Plaintiffs allege that Defendants initiated various baseless lawsuits, for the purpose of

harassing of MicroBilt, which, if true, could support the imposition of punitive damages, further

increasing the amount in controversy.  *See Huber v. Taylor*, 532 F.3d 237, 244 (3d Cir. 2008) ("If

---

[9]    I question whether the claims of the Burgess Plaintiffs, aside from potentially Mr. Burgess, remotely approach the jurisdictional minimum.  Their claims stem solely from the process servers' attempts at serving Mr. Burgess in May 2020, and those plaintiffs have not alleged that they satisfied any concrete, identifiable harm, as a result of the actions of the process servers' conduct. Any damages to which they may be entitled are seemingly *de minimis*.  However, this infirmity does not impact the jurisdictional analysis; although these particular plaintiffs' claims may not reach the amount in controversy, so long as one plaintiff in this case satisfies the jurisdictional amount, this Court may exercise supplemental jurisdiction over the remaining plaintiffs' claims.  *See*  28 U.S.C. §1367 ("the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."); *see also  Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 559 (2005) (holding that the supplemental jurisdiction statute permits the exercise of diversity jurisdiction over additional plaintiffs who fail to satisfy the minimum amount-in-controversy requirement, as long as the other elements of diversity jurisdiction are present and at least one named plaintiff does satisfy the amount-in-controversy requirement).  Here, I find that MicroBilt's claims against the Kelly/CLA Defendants, individually, exceed $75,000, which is sufficient to establish the existence of subject matter jurisdiction.

appropriately made, ... claims for punitive damages will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of the plaintiff's claim is below the statutory minimum." (internal quotation marks omitted)); *Maudsley v. State*, 816 A.2d 189, 209 (N.J. App. Div. 2003) (explaining that a punitive damages award may be granted for "malicious" conduct or where there is "an intentional wrongdoing in the sense of an 'evil-minded act' or an act accompanied by a wanton and willful disregard of the rights of another." (internal quotation marks and citation omitted)).  Viewing the Amended Complaint in the light most favorable to Plaintiffs, I cannot conclude to a legal certainty that dismissal is warranted.  Accordingly, I find the amount in controversy requirement satisfied, and therefore, exercise diversity jurisdiction under Section. 1332.

### B.  Failure to State a Claim

#### i.  Malicious Abuse of Legal Process

The Burgess Plaintiffs assert a malicious abuse of legal process claim against all Defendants.  Am. Compl. ¶80-84.  Malicious abuse of legal process is part of "a group of closely related torts that, although ancient in origins, are treated with great caution because of their capacity to chill resort to courts by persons who believe that they have a criminal complaint or civil claim against another." *LoBiondo v. Schwartz*, 970 A.2d 1007, 1022 (N.J. 2009).  Under New Jersey law, "[t]he tort of malicious abuse of process lies not for commencing an improper action, but for misusing or misapplying process after it is issued." *Hoffman v. Asseenontv.Com, Inc.,* 962 A.2d 532, 541 (N.J. App. Div. 2009) (citing *Baglini v. Lauletta,* 768 A.2d 825, 831 (N.J. App. Div. 2001).  "To be found liable for malicious abuse of process, a party must have performed additional acts after issuance of process which represent the perversion or abuse of the legitimate purposes of that process." *Id*.  Thus, a plaintiff claiming malicious abuse of process must allege

"(1) that defendants made an improper, illegal and perverted use of the process, *i.e.*, a use neither warranted nor authorized by the process, and (2) that in use of such a process there existed an ulterior motive."  *Mandelbaum v. Arseneaul*t, No. A-1042-15T4, 2017 WL 4287837, at *5 (N.J. App. Div. Sept. 28, 2017) (quoting *Ash v. Cohn*, 194 A.2d 174, 176 ( N.J. 1937)).

Defendants argue that the Burgess Plaintiffs' malicious abuse of legal process claim is barred by the litigation privilege.  Def Br. at 15-18.  They argue that because "the complained of actions are directly related to the pending Virginia and New Jersey litigations," they are protected under the privilege.  *Id*. at 15.  Further, Defendants argue that "Michelle Burgess, Alexandria Burgess, Minor 1, Minor 2, and Minor 3 cannot plead these claims as there is no litigation brought against them."  *Id*. at 18.

Plaintiffs contend that the litigation privilege does not protect Defendants, here, because Plaintiffs have "sufficiently pleaded allegations in support of their claim for abuse of process arising out of Defendants' improper attempt to coerce plaintiffs Burgess and MicroBilt to settle separate Virginia federal litigations by filing frivolous and unfounded civil litigation against them in this District, and by employing process servers to make repeated and harassing attempts to serve Mr. Burgess with process in the frivolous litigation at his home during the Covid-19 shut-down." Pl. Opp. at 4.  Plaintiffs further assert that in the cases relied upon by Defendants, the courts did not decide the application of the litigation privilege at the motion to dismiss stage, but rather, on a post-trial motion to set aside the judgment.  *Id*. at 10.

The litigation privilege applies to "any communications (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Hawkins v. Harris*, 661 A.2d 284, 289 (N.J. 1995).  Contrary to the Burgess Plaintiffs' position,

the application of the litigation privilege is a question of law which may be determined at the motion to dismiss phase. *See e.g., Rickenbach v. Wells Fargo Bank, N.A.,* 635 F. Supp. 2d 389, 402 (D.N.J. 2009) (applying litigation privilege to various tort claims on a motion to dismiss)*; Component Hardware Grp., Inc. v. Trine Rolled Moulding Corp.*, No. 05-891, 2007 WL 2177667, at *5 (D.N.J. July 27, 2007) (granting defendant's motion to dismiss malicious abuse of process claim as barred by the litigation privilege).  Further, the privilege may be applied to malicious abuse of process claims;  indeed, the New Jersey Supreme Court has made clear that "[t]he one tort excepted from the reach of the litigation privilege is malicious prosecution, or malicious use of process," and not malicious abuse of process [10]  *Baglini*, 768 A.2d 825, 834 (citing *Rainier's Dairies v. Raritan Val. Farms*, 117 A.2d 889, 895 (N.J. 1955)); *see also Loigman v. Twp. Comm. of Twp. of Middletown*, 889 A.2d 426, 436 n.4 (N.J. 2006) (explaining "the litigation privilege is not available in a malicious prosecution action").

Although the litigation privilege may be applicable to some abuse of process claims, I do not find it applicable, here, because the Burgess Plaintiffs' claims are seemingly based on the manner in which the process servers attempted service of the Summons and Complaint in the New Jersey Williams Action and the subpoena in the Galloway Action.  It is not apparent that service

---

[10]     Malicious use of process and malicious prosecution are, in essence the same tort and distinct from malicious abuse of process.  *See e.g., LoBiondo*, 970 A.2d at 1022 ("Malicious prosecution provides a remedy for harm caused by the institution or continuation of a criminal action that is baseless. Malicious use of process ... is essentially the analog used when the offending action in question is civil rather than criminal."); *Ross v. Annunziata*, No. A-2806-10T1, 2012 WL 653840, at *10 n.3 (N.J. App. Div. Feb. 29, 2012) ("Malicious use of process is the civil counterpart" to malicious prosecution.).

of a summons, complaint, and subpoenas by a process server, constitutes a "communication" protected by the litigation privilege.  *Hawkins*, 661 A.2d at 289; s*ee also Ruberton v. Gabage*, 654 A.2d 1002, 1006 (N.J. App. Div. 1995) ("A *statement* made in the course of judicial, administrative or legislative proceedings is absolutely privileged and wholly immune from liability") (emphasis added).

Because Defendants cannot rely on the litigation privilege, I now assess whether the Burgess Plaintiffs have adequately alleged a claim for malicious abuse of process.

### 1.  Mrs. Burgess and the Burgess Children

Mrs. Burgess and the Burgess children cannot conceivably allege that Defendants engaged in a coercive or illegitimate use of the legal process against them, because they are not a party to any of the underlying legal proceedings.  *See SBK Catalogue P'ship v. Orion Pictures Corp*., 723 F. Supp. 1053, 1067–68 (D.N.J. 1989) ("an action for abuse of process will not lie against a party unless that party has demonstrably used process after its issuance solely to coerce or injure his *adversary*.") (emphasis added).  Taking the Amended Complaint's allegations as true, the service of the subpoenas in the Glover and Virginia Williams Actions and the service of the summons and complaint in the New Jersey Williams Action could not have been intended to coerce Mrs. Burgess or the Burgess children.  They are not named as defendants in either action, or any other lawsuit initiated by Defendants.  Accordingly, Mrs. Burgess and her children have failed to adequately allege abuse of process claims against Defendants.

### 2.  Mr. Burgess

Mr. Burgess' malicious abuse of process claim is also unavailing because he has not alleged that Defendants "performed additional acts after issuance of process which represent the perversion or abuse of the legitimate purposes of that process." *Hoffman*, 962 A.3d at 532.  As the

New Jersey Appellate Division has explained, a claim for abuse of legal process exists only where a party to a litigation "use[s] process in some fashion, and that use must be 'coercive' or 'illegitimate.'" *Id*. at 831.  "When reviewing a malicious abuse of process claim, a court's 'focus must not be on what prompted the suit but what action plaintiff engaged in after commencement of the action.'" *Melillo v. Elizabeth Bd. of Educ.*, No. 11-4887, 2012 WL 6725837, at *7 (D.N.J. Dec. 27, 2012) (quoting *Hoffman*, 962 A.3d at 532.).  Further acts which may constitute malicious abuse of process may include "attachment, execution, garnishment, sequestration proceedings, arrest of the person and criminal prosecution and even such infrequent cases as the use of a subpoena for the collection of a debt." *Baglini*, 768 A.2d at 832; *see Melillo,* No. 11-4887, 2012 WL 6725837, at *7 (finding that plaintiff had adequately alleged further acts supporting abuse of process claim where plaintiff alleged that defendants, inter alia, used "false, pretextual, and spurious reasons in order to prolong and heighten the personal cost to Plaintiff," "[a]ttempt[ed] to undo Plaintiff's expungement after he was found not guilty in the criminal matter," and other actions which were intended to "make the underlying litigation more costly to the Defendant and also prevent the Defendant from continuing his employment.").

Here, Mr. Burgess alleges that Defendants initiated some or all of the underlying lawsuits, in order to harass him into settling one of the related lawsuits and testifying against one of the defendants in the Big Picture Litigation.  Critically, however, he has not alleged a "further act" after the issuance of process.  Indeed, the only purportedly coercive acts identified by Mr. Burgess are Defendants' attempts at serving the summons and complaint in the New Jersey Williams Action, and the subpoenas in the Glover and Virginia Williams Actions.  Plaintiff alleges that on three occasions -- May 15th, May 16th and May 20th --- Defendants sent process servers to his home, who did not wear a mask or gloves or take the necessary precautions in light of the COVID-

19 pandemic.  Further, Process Server Number Two, who served the subpoenas for the Virginia Williams Action, allegedly knocked aggressively on the residence's windows.

As an initial matter, while the allegations with respect to the process servers' failure to comply with the recommended safety practices in light of the COVID-19 pandemic are concerning, the Amended Complaint does not allege facts suggesting that the process servers engaged in such behavior at Defendants' behest.  Mr. Burgess' allegation that the process servers' conduct was directed by Defendants, or intended to coerce Mr. Burgess is conclusory. Further, with respect to the actions of Process Server One, who served the papers with respect to the New Jersey Williams Action,  the alleged conduct does not constitute a "further act," because it was part and parcel of initiating the lawsuit against Mr. Burgess; initiating a lawsuit, even for an allegedly improper purpose, does not constitute abuse of process.  *See Meng v. Du,* No. 19-18118, 2020 WL 4593273, at *6 (D.N.J. Aug. 11, 2020) (dismissing abuse of process counterclaim where defendant alleged that "[p]laintiff's service of process was the result of an ulterior motive" because "[he] has not alleged that [p]laintiff took any further act representing a perversion of the legitimate use of process. In fact, [d]efendant has not alleged that [p]laintiff took any steps after filing the [c]omplaint to harass him into rescinding the purchase contract[.]"); *see also Zebrowski v. Wells Fargo Bank, N.A.*, 657 F. Supp. 2d 511, 516–19 (D.N.J. 2009) (dismissing abuse of process claim where defendant failed to allege any further acts aside from the commencement of a foreclosure action).

Mr. Burgess' claims with respect to the actions of Process Server Numbers Two and Three with respect to the service of the subpoenas is similarly unavailing. Although the issuance of the subpoenas may constitute a further act, Mr. Burgess has not alleged that the subpoenas, themselves, were improper, overly broad, or sought impermissible information.  Absent such

information, he has not adequately alleged an abuse of process claim.  Indeed, "the typical abuse of process claim involves leveraging some attachment process or complaint in order to achieve some other end." *Avaya, Inc. v. Cisco Sys., Inc.,* No. 10-5881, 2012 WL 2065536, at *3 (D.N.J. June 7, 2012); *see also  Mosley v. Delaware River Port Auth*., No. 99-4147, 2000 WL 1534743, at *10 (D.N.J. Aug. 7, 2000) ("abuse of process claims are generally reserved for cases in which a person uses the process to coerce the plaintiff into doing something or to extort something from the plaintiff; in short, for a collateral purpose that is not properly obtainable and is totally extraneous to the legitimate use of the process.").  Mr. Burgess conclusorily alleges that Defendants issued the subpoenas in order to harass him, however, has not alleged facts demonstrating that the subpoenas were "totally extraneous" such that hey could not be intended to achieve a legitimate aim.  As alleged, there is no indication that Defendants, regardless of their alleged nefarious intentions, were doing any more than utilizing the discovery mechanisms for their proper purpose. *See Avaya*, No. 10-5881, 2012 WL 2065536, at *4. ("[W]here a party carries out process to its authorized conclusion, albeit with bad intentions, there is no valid claim for abuse of process.").

Accordingly, Mr. Burgess has failed to state a claim for malicious abuse of process.

### ii.  Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress, a party must plead "intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." *Taylor v. Metzger*, 706 A.2d 685, 694 (N.J.1988) (citation omitted).  In order to establish "extreme and outrageous" conduct, a plaintiff must sufficiently plead factual allegations to show the defendant's conduct was " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community.'"   *Witherspoon v. Rent-A-Ctr.*, Inc., 173 F. Supp. 2d 239, 242 (D.N.J. 2001) (quoting *Buckley v. Trenton Saving Fund Soc.*, 544 A.2d 857, 864 (N.J. 1988 )). "Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not give rise to liability for IIED." *Taylor*, 706 A.2d at 694.   As a threshold matter, the Court must determine whether a defendant's conduct meets this standard.  *See Ali v. Jersey City Parking Authority*, No. 13–2678, 2014 WL 1494578, at *5 (D.N.J. Apr. 16, 2014) (citing *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988)).  Further, in order to establish severe emotional distres**s**, a plaintiff must show emotional distress "so severe that no reasonable [person] could be expected to endure it." *Glenside West Corp. v. Exxon Co.*, 761 F. Supp. 1100, 1113 (D.N.J. 1991) (quoting *Buckley*, 544 A.2d at 864).

Defendants' alleged conduct – sending unmasked, process servers to the Burgess home to knock furiously – does not rise to the high bar required to give rise to a claim for intentional inflection of emotional distress.  While the Burgess family may have been frightened by the loud knocking, or the lack of proper COVID-10 safety precautions; the alleged misconduct does not exceed "all possible bounds of decency." *Witherspoon*, 173 F. Supp. 2d at 242.  More importantly, even if Defendants' conduct, when considered as part of a campaign of harassment, could be characterized as "extreme" or "outrageous," Plaintiffs have failed to allege the requisite emotional harm.  Aside from the conclusory allegation that **"**Defendants' misconduct, through their agents, proximately caused Plaintiffs' emotional distress so severe that no reasonable person could be expected to endure it," the Amended Complaint is devoid of any facts indicating that the Burgess Plaintiffs suffered any emotional harm as a result of the process servers' conduct.  Am. Compl. ¶93.  The Amended Complaint' merely parrots the standard for emotional distress, and does not include any  factual allegations demonstrating the emotional impact of the process servers' conduct

on the Burgess Plaintiffs, such as, for example, whether any of family member were unable to sleep following the incident, suffered from severe anxiety or insomnia, were forced to seek counseling, or any similar indication of emotional suffering.  Indeed, the New Jersey Appellate Division has explained that, "in order to be actionable, the claimed emotional distress must be sufficiently substantial to result in physical illness or serious psychological sequelae." *Aly v. Garcia*, 754 A.2d 1232, 1237 (N.J. App. Div. 2000); *see also Love v. New Jersey Dep't of Corr.*, No. 15-4404, 2016 WL 2757738, at *12 (D.N.J. May 12, 2016) (dismissing plaintiff's claim for intentional infliction of emotional distress because the complaint did "not contain any allegations of any sufficiently severe emotional distress resulting in physical illness or serious sequelae arising out of his treatment by the officers").

Absent such factual allegations, Plaintiffs cannot state a claim for intentional infliction of emotional distress.  *See e.g., Defilippo v. Almeida*, No. 17-13026, 2019 WL 3985626, at *5 (D.N.J. Aug. 21, 2019) (dismissing plaintiff's emotional distress claim where plaintiff generally alleged "that he suffered 'emotional harm'" but did not " describe the nature or intensity of his emotional suffering, nor does he explain the effect of his distress on his life or how it has altered his daily routine."); *Mascio v. Mullica Twp. Sch. Dist.,* No. 16-206, 2016 WL 4880511, at *4 (D.N.J. Sept. 13, 2016) (holding that the plaintiff's conclusory recitation of the elements of intentional infliction of emotional distress did not make out a claim for relief).  Accordingly, the Burgess Plaintiffs' claims for intentional infliction of emotional distress are dismissed.

### iii.  Invasion of Privacy Interests

The Burgess Plaintiffs also allege that Defendants invaded their privacy interests.  Plaintiffs allege that "Defendants, acting through their duly authorized agents, intentionally intruded upon Plaintiffs' seclusion or privacy concerns. The intentional intrusion by Defendants through their

agents, was and would be highly offensive to the reasonable person." Am. Compl. ¶¶86-87. They further allege that they suffered "mental anguish, and special damages." *Id*. at  ¶89.

Under New Jersey law, to state a claim for invasion of privacy interest, a plaintiff must allege sufficient facts to demonstrate that (1) his or her solitude, seclusion, or private affairs were intentionally infringed upon and that (2) this infringement would highly offend a reasonable person. *See Bisbee v. John C. Conover Agency Inc.*, 452 A.2d 689 (N.J. App. Div. 1982); *see also G.D. v. Kenny*, 15 A.3d 300, 319–20 (N.J. 2011) ("the tort of invasion of privacy is defined as an intentional intrusion, 'physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns' that 'would be highly offensive to a reasonable person." (quoting *Bisbee v. John C. Conover Agency, Inc*., 452 A.2d 689, 691 (N.J. App. Div. 1982))). "[E]xpectations of privacy are established by general social norms and must be objectively reasonable--a plaintiff's subjective belief that something is private is irrelevant." *White v. White*, 781 A. 2d 85, 86 (N.J. Super. Ct. Ch. Div. 2001). "An intrusion is not highly offensive when the defendant intrudes into an area in which the victim has either a limited or no expectation of privacy." *Torsiello v. Strobeck,* 955 F. Supp. 2d 300, 315 (D.N.J. 2013).

Like their other claims, the Burgess Plaintiffs' invasion of privacy claims stems from the actions of the three process servers that visited their home in May 2020.  However, Plaintiffs have not alleged that the process servers trespassed onto the property, or that they entered the home without consent. *See Rumbauskas v. Cantor*, 649 A.2d 853, 856 (N.J. 1994) (explaining that intrusion upon seclusion occurs when there is an "intrusion on plaintiff's physical solitude or seclusion, as by invading his or her home, illegally searching, eavesdropping, or prying into personal affairs.").  As alleged, the process servers visited the home on three occasions and knocked on the family's windows, which does not constitute the type of highly offensive intrusion

23

contemplated by this tort.  *See* Restatement (Second) of Torts § 652B, comment d (explaining that "there is no liability [for invasion of privacy] for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three" ); *Dophin v. Bank of Am. Mortg. Co.*, 641 F. App'x 131, 134 (3d Cir. 2016) (affirming district court's dismissal of plaintiffs' invasion of privacy claim because "periodic visits from a BANA employee to [plaintiff's] home do not represent a sufficiently substantial intrusion to make out a claim").  Accordingly, Burgess Plaintiffs' intrusion of privacy claims are dismissed.

### iv.   "Business Injured by Another's False Description"

MicroBilt, Mr. Burgess, PAF, PAIF, Primus, and LJP assert that the CLA/Kelly Defendants injured their business by false description. Am. Compl. ¶¶95-98.  In that regard, they allege that "Defendants' acts of publishing disparaging assertions concerning Plaintiffs' businesses were undertaken with the intent to hinder and harm those businesses," and that "Plaintiffs have been damaged by the injurious falsehoods."  *Id*. at ¶¶96-97.

As an initial matter, the parties dispute whether a claim for "business injured by another's false description" is cognizable under New Jersey law.  Defendants argue that there is no such tort under New Jersey law, and construe Plaintiff's claim as one of trade libel or product disparagement. ECF No. 20, Def. Leave to Amend Opp Br. at 9-10.  Defendants also argue that Plaintiffs' claims for tortious interference, and business injured by another's false description are both barred by the litigation privilege.  *Id*. at 7-8.

In response, Plaintiffs contend that "[i]njurious falsehood is the publication of matter derogatory to plaintiffs business in general of a kind calculated to prevent others from dealing with plaintiff or otherwise to disadvantageously interfere with plaintiffs relations with others," and that

the Amended Complaint alleges the requisite elements.  Pl. Mot. to Amend Reply Br. at 4 (citing *Binkewitz v. Allstate Ins. Co*., 537 A.2d 723, 730 n.8 (N.J. App. Div. 1988)).

The parties' dispute is one of form rather than substance. I will consider Plaintiffs' claim as one for trade libel.  As the New Jersey Appellate Division has explained, trade libel is a "tort addressing aspersions cast upon one's business operation. The tort is also known as injurious falsehood**,** disparagement of property, or commercial disparagement." *Patel v. Soriano*, 848 A.2d 803 (N.J. App. Div. 2004); *accord Binkewitz,* 537 A.2d at 730.  Under New Jersey law, the elements of trade libel are ("1) publication; (2) with malice; (3) of false allegations concerning another's property, product, or business; and (4) special—i.e., pecuniary—damages." *Albion Eng'g Co v. Hartford Fire Ins. Co,* 779 F. App'x 85, 88 (3d Cir. 2019).  The derogatory material must be "of a kind calculated to prevent others from dealing with him, or otherwise to interfere adversely with his relations with others." *Patel,* 848 A.2d at 835.  In order to prevail on such a claim, the claimant must ultimately prove "pecuniary loss that has been realized or liquidated, such as lost sales or loss of prospective contracts with customers." *Pactiv Corp. v. Perk-Up, Inc.*, No. 08-05072, 2009 WL 2568105, at *11 (D.N.J. Aug. 18, 2009); *Nahas v. Shore Med. Ctr*., No. 13–6537, 2015 WL 3448021, at *13 (D.N.J. May 29, 2015) (pecuniary harm can be alleged by either ""loss of particular customers by name, or a general diminution of business, and extrinsic facts showing that such special damages were the natural and direct result of the false publication").  "In general, privileges applicable to actions for defamation may be raised in actions for injurious falsehood." *Binkewitz*, 537 A.2d at 730 (citing Restatement, Torts 2d § 635).

Plaintiffs have not identified, specifically, which false statements form the basis of their claims; presumably, Plaintiffs are relying on the allegedly false statements made by Defendants in the Mann Class Action complaint, *i.e.*, that Plaintiffs violated RICO, and the allegedly false

statements in the Virginia William's Action that Mr. Burgess sold MicroBilt in the midst of the litigation in order to evade jurisdiction, and the statements regarding the relationship between Mr. Burgess, MicroBilt, and Mr. Martorello.   However, "[c]ertain statements, such as those made in judicial, legislative, or administrative proceedings, are absolutely privileged because the need for unfettered expression is crucial to the public weal." *Dairy Stores, Inc. v. Sentinel Pub. Co.*, 16 A.2d 220, 226 (N.J. 1986); *see also Binkewitz*, 537 A.2d at 726  ("Words uttered by judges, witnesses, attorneys, parties or jurors in the course of judicial or quasi-judicial proceedings, which have some relation thereto, are absolutely privileged, even if made with bad motive or knowledge of their falsity"). As explained, *supra*, the litigation privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Hawkins*, 661 A.2d at 289   As alleged, Plaintiffs' claims stem solely from the allegedly false statements made in the now-dismissed Mann Class Action complaint, which were the subject of Plaintiffs' Rule 11 Sanctions letter, and the subsequent letter by Defendants withdrawing the claims against MicroBilt, Burgess, PAIF, and PAF.  Thus, the litigation privilege plainly applies.  *See Agacoili v. Gonzo*, No. 09-2147, 2010 WL 606697, at *3 (D.N.J. Feb. 18, 2010) (holding that plaintiff's tort claims were barred by the litigation privilege where they were based on statements made in summary judgment motion and attendant documents).

Moreover, even if such statements were not shielded by the litigation privilege, Plaintiffs' claims would nonetheless fail because they have not alleged special damages.  Plaintiffs have not sufficiently pled special damages, either through lost sales from established or prospective customers, or the inability to solicit new business partners.  *See Canfield Sci., Inc. v. Melanoscan*, LLC, No. 16-4636, 2017 WL 2304644, at *8 (D.N.J. May 25, 2017) (dismissing plaintiff's trade

26

libel claim because "[p] has not sufficiently pled special damages, either through lost sales from established or prospective customers or through a general diminution of business."). Accordingly, Plaintiffs' trade libel claims are dismissed.

### v. Intentional Interference with Prospective Economic Advantage

Like their trade libel claim, Plaintiffs' interference with prospective economic advantage claims are barred by the litigation privilege. *See Binkewitz*, 516, 537 A.2d at 730 ("It is thus settled that words which are absolutely privileged against an action for defamation are also absolutely privileged against an action for tortious interference with contract or economic advantage."). As the New Jersey Supreme Court has noted, "[t]he litigation privilege protects attorneys not only from defamation actions, but also from a host of other tort-related claims," including "negligence, breach of confidentiality, abuse of process, intentional infliction of emotional distress, negligent infliction of emotional distress, invasion of privacy, civil conspiracy, interference with contractual or advantageous business relations, and fraud." *Loigman v. Twp. Comm. of Twp. of Middletown,* 889 A.2d 426, 436 (N.J. 2006); *Middlesex Concrete Prod. & Excavating Corp. v. Carteret Indus. Ass'n,* 172 A.2d 22, 25 (N.J. App. Div. 1961) (explaining that same public policy concerns supporting application of litigation privilege in defamation action arise in action for tortious interference).

An action for tortious interference with a prospective business relation protects the right 'to pursue one's business, calling or occupation free from undue influence or molestation." *Printing Mart–Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31 (N.J. 1989). "To prevail on a claim for tortious interference, a plaintiff must plead "'[1] that it had a reasonable expectation of an economic advantage, [2] which was lost as a direct result of [defendants'] malicious interference, and [3] that it suffered losses thereby.'" *Avaya Inc., RP v. Telecom Labs, Inc*., 838 F.3d 354, 382

(3d Cir. 2016) (quoting *Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.,* A.2d 904, 932 (N.J. App. Div. 1995)).   "New Jersey recognizes that the tortious interference with prospective economic benefit or advantage cause of action is separate and distinct from tortious interference with an existing contract." *Galicki v. New Jerse*y, No. 14–169, 2016 WL 4950995, at *31 (D.N.J. Sept. 15, 2016). "The primary difference between these two related torts is the existence of a contract, rather than merely a reasonable expectation of an agreement." *Id*. Thus, to plead a claim for interference with prospective contractual relations, a claimant must demonstrate a "reasonable probability" of a prospective, rather than actual, contractual relation. *Read v. Profeta*, No. 15–2637, 2017 WL 123438, at *7 (D.N.J. Jan. 11, 2017).

Aside from the fact that Defendants are entitled to the litigation privilege, Plaintiffs have failed to state a claim.   Indeed, Plaintiffs have not alleged which business opportunities, or customers were lost as a result of Defendants' alleged interference. Rather, the Amended Complaint asserts in a conclusory fashion that "Defendants' conduct has interfered and continues to interfere with Plaintiffs' pursuit of prospective economics business relationships where there is a reasonable expectation of economic advantage." Am. Compl. ¶101.  This is insufficient to allege a claim for prospective economic advantage. *See Am. Millennium Ins. Co. v. First Keystone Risk Retention Grp., Inc.*, 332 F. App'x. 787, 790 (3d Cir. 2009) (affirming district court's dismissal of plaintiff's tortious interference claim where  the "complaint fail[ed] to identify a single, specific customer that [plaintiff] either lost or could have acquired but for [defendants'] conduct"); *Bambi Baby.com Corp. v. Madonna Ventures, Inc.,* No. 18-12669 2019 WL 2337447, at *10 (D.N.J. June 3, 2019) (dismissing plaintiff's tortious interference claims because "Plaintiff does not identify any 'specific' customers that Defendants poached"); *Canfield Sci., Inc.,* No. 16-4636, 2017 WL 2304644, at *5 (D.N.J. May 25, 2017) (dismissing plaintiff's tortious interference claim where

complaint pled that prospective customer, MSK, had placed a purchase order but did not "plead that MSK did not go through with this order, or that MSK (or any other customer) have since refused to do business with [plaintiff]."). Plaintiffs must allege, for example, that as a result of Defendants' alleged tortious acts, *i.e.*, the filing of the various allegedly frivolous lawsuits, prospective or current customers have refused to do business with Defendants. Notably, with respect to PAF and PAIF, Plaintiffs have not even alleged what business those entities conduct, if any. Accordingly, Plaintiffs' tortious interference with prospective economic advantage claims are dismissed.

### vi.   Malicious Prosecution[11]

MicroBilt, Mr. Burgess, PAF, PAIF, Primus, and LJP assert claims for malicious prosecution against the CLA/Kelly Defendants. *See* Am. Compl., ¶¶116-120. They allege that Defendants "maliciously filed the EDVA Class Complaint against Plaintiffs without probable cause, i.e., without a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinarily prudent person in believing Plaintiffs are liable" and that the "voluntary withdrawal of the EDVA Class Complaint was a favorable termination or was dispositive of Plaintiffs' non-liability." *Id*. at ¶¶117-118.

Malicious prosecution or malicious use of process, unlike malicious abuse of legal process, "is based on commencing an action without justification." *Emolo v. McDaniel,* No. A-0974-08T1, 2009 WL 2243792, at *4 (N.J. App. Div. July 29, 2009). To succeed in an action for malicious use of process, the plaintiff must establish that the original suit (1) was instituted without reasonable or probable cause; (2) was motivated by malice; (3) terminated favorably to the plaintiff in the

---

[11]    Presumably, Plaintiffs intend to allege a claim for malicious use of process, rather than malicious prosecution.

malicious prosecution action; and (4) resulted in a "special grievance" to the plaintiff.  *Giri v. Rutgers Cas. Ins. Co.,* 273 641 A.2d 1112, 1115 (N.J. App. Div. 1994).

Here, Plaintiffs' malicious use of process claims must be dismissed because they have not alleged that the Mann Class Action resulted in a "special grievance." Plaintiffs allege that as a result of Defendants' frivolous filing, they suffered "special damages in the form of incurring expenses to protect their interests, loss of profits, loss of time, and loss of wages that cannot be reclaimed." Am. Compl. ¶119.  However, a  "special grievance consists of interference with one's liberty or property."  *Penwag Prop. Co. v. Landau,* 388 A.2d 1265, 1266 (N.J. 1978) (citing *Mayflower Indus. v. Thor Corp.*, 83 A.2d 246, 252 (Ch. Div. 1951)) "Counsel fees and costs of defense of the malicious action are an element of damages in a successful malicious prosecution action. However, they are the routine inconveniences of litigation and 'do not in themselves constitute a special grievance necessary to make out the cause of action.'" *Giri,*  641 A.2d at 1116 (quoting *Penwag,* 388 A.2d at 1266). Moreover, "mental anguish, emotional distress, or loss of reputation from the filing of a complaint are not the special injuries required to sustain a malicious prosecution action." *Turner v. Wong*, 363 832 A.2d 340, 351 (N.J.  App. Div. 2003).  Thus, in order to state a claim for malicious prosecution, Plaintiffs' must allege more than litigation expenses, wasted time, or other damages incidental to the filing of the lawsuit; they have not done so.  Without more, Plaintiffs' conclusory allegation that their businesses lost revenue does not rise to the level of a special grievance.  *C.f.*, *Giri*, 641 A.2d at 1116–17 ("[w]here the malicious lawsuit actually puts the targeted defendant out of business for a period of time, this constitutes a 'special grievance'"); *Gradient Analytics, Inc. v. Biovail Corp.,* No. 10-0335, 2010 WL 2991573, at *7 (D. Ariz. July 26, 2010) (applying New Jersey law and finding that plaintiff had adequately alleged a special grievance where plaintiff alleged that frivolous lawsuits "permanently damaged Gradient's

reputation, reduced the value of the business, caused Gradient to permanently close its Carlsbad, California office, cost Gradient existing and potential customers, and forced plaintiffs . . . to sell their company Equity Methods for much less than the originally agreed upon price."). Accordingly, Plaintiffs' malicious prosecution/malicious use of process claims are dismissed.

### vii.  Civil Conspiracy and Aiding the Commission of a Tort

MicroBilt, Mr. Burgess, PAF, PAIF, Primus, and LJP also assert claims of civil conspiracy and aiding the commission of a tort against the CLA/Kelly Defendants.  Under New Jersey law, a civil conspiracy is not independently actionable. *Farris v. County of Camden,* 61 F. Supp 2d 307, 349 (D.N.J.1999).  Because I have found that Plaintiffs failed to adequately allege any of the underlying torts, I dismiss Plaintiffs' civil conspiracy and aiding the commission of a tort claims, as well.  *See Davis v. Fein Such Kahn & Shepard PC,* No. 18-8560, 2019 WL 1789471, at *10 (D.N.J. Apr. 24, 2019) ("[p]laintiff has failed to plausibly plead any of her other claims [and thus,] [p]laintiff's civil conspiracy claim also fails.").

### IV.  <u>CONCLUSION</u>

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED** and Plaintiffs' motion for leave to amend is **DENIED**.  To the extent Plaintiffs believe they may be able to remedy the deficiencies outlined in this Opinion on any of their claims, they may file a motion for leave to amend before the magistrate judge within thirty (30) days.

Date: March 19, 2021

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge