# EXHIBIT A

**KROVATIN NAU LLC**
Gerald Krovatin, Esq. (Attorney No. 024351977)
60 Park Place, Suite 1100
Newark, New Jersey 07102
(973) 424-9777
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PHILIP N. BURGESS, JR.; and MICROBILT CORPORATION, <br><br> Plaintiffs, <br><br> vs. <br><br> LEONARD A. BENNETT; CONSUMER LITIGATION ASSOCIATES, P.C.; KRISTI CAHOON KELLY; KELLY GUZZO, PLC, <br><br> Defendants. | Civil Action No.: 3:20-cv-07103 <br><br><br> **AMENDED COMPLAINT AND** <br> **JURY DEMAND** |

PLAINTIFFS, Philip N. Burgess, Jr. ("Burgess"), residing in the Borough of Princeton, County of Mercer, State of New Jersey; and MicroBilt Corporation, ("MicroBilt"), with its corporate office in Princeton, New Jersey, for their Amended Complaint against Defendants Leonard A. Bennett, Consumer Litigation Associates, P.C., Kristi Cahoon Kelly, and Kelly Guzzo, PLC (collectively "Defendants"), allege and say:

**NATURE OF ACTION**

1. This is an action for damages against Defendants for malicious abuse of process and malicious use of process arising out of Defendants' improper efforts to coerce and harass Burgess and MicroBilt by filing frivolous and unfounded litigations against them in Virginia and

this District and by employing process servers to make repeated and harassing attempts to serve Burgess with process in frivolous litigations at his Princeton home, to extort Plaintiffs into cooperating with them or to suffer the damaging consequences of a false civil RICO lawsuit, all because Burgess, MicroBilt's founder and consultant, and other MicroBilt principals have refused to cooperate with these Defendants in their various litigations against Matt Martorello.

## PARTIES

2.   Burgess is a citizen of the State of New Jersey.

3.   MicroBilt is incorporated in the State of Delaware and has its principal place of business in Kennesaw, Georgia, with corporate offices in Princeton, New Jersey.

4.   Burgess is the founder of MicroBilt and serves as a consultant to MicroBilt.

5.   Upon information and belief, Defendant Leonard A. Bennett ("Bennett") is a citizen of the Commonwealth of Virginia.

6.   Upon information and belief, Bennett is an attorney at law of the Commonwealth of Virginia and is employed as such by Defendant Consumer Litigation Associates, P.C.

7.   Upon information and belief, Defendant Consumer Litigation Associates, P.C., is a professional corporation incorporated in the Commonwealth of Virginia with its principal place of business in Virginia.

8.   Upon information and belief, Defendant Kristi Cahoon Kelly ("Kelly") is a citizen of the Commonwealth of Virginia.

9.   Upon information and belief, Kelly is an attorney at law in the Commonwealth of Virginia and is employed as such by Defendant Kelly Guzzo, PLC.

10.     Upon information and belief, Defendant Kelly Guzzo, PLC is a professional corporation incorporated in the Commonwealth of Virginia with its principal place of business in Virginia.

## JURISDICTION AND VENUE

11.     By reason of the foregoing, this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 (a)(1).

12.     Pursuant to 28 U.S.C. § 1332(a), the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

13.     Venue is proper in this District under 28 U.S.C. § 1391(a), because the unlawful conduct of Defendants and their agents caused harm within this District and the matter in controversy occurred primarily in this District.

## GENERAL ALLEGATIONS

### Background – Virginia Litigations

14.     There are pending in the U.S. District Court for the Eastern District of Virginia ("EDVA"), four (4) inter-related matters (the "Litigations") that are relevant to this action and are as follows:

(a) *Williams v. Big Picture Loans, LLC*, Docket No. 3:17-cv-461 (the "**Big Picture Litigation**");

(b) *Renee Galloway, et al. v. Big Picture Loans, LLC, et al.*, Docket No. 18-cv-00406-REP (the "**Galloway Action**");

(c) *Williams, et als. v. MicroBilt Corporation, et al.*, Docket No. 3:19-cv-00085- REP, (the "**Virginia Williams Action**"); and

(d) *Lenora Glover, et al. v. MicroBilt Corporation*, Docket No. 1:19-cv-01337-RDA-JFA (the "**Glover Action**").

3

15. One or more of Defendants represent the plaintiffs in all four (4) of the Litigations.

16. Two of the aforementioned Litigations -- the **Virginia Williams Action** and the **Glover Action**, named MicroBilt as a defendant and are frivolous attempts to compel and coerce MicroBilt and Burgess into cooperating with the plaintiffs and their counsel (Defendants here) in prosecuting their claims against Matt Martorello, the principal defendant in those Litigations and, in the process, forcing MicroBilt and its employees to spend excessive amounts of time, effort and counsel fees in motion practice and in responding to burdensome discovery demands in all of the Litigations.

17. Both the **Galloway Action** and **Big Picture Litigation** purport to be class actions alleging that the defendants violated the federal RICO statute and various State usury laws by operating so-called "rent-a-tribe" payday lending schemes.

18. In the **Virginia Williams Action**, the plaintiffs allege that the defendants violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, by unlawfully requesting and obtaining their purported consumer credit reports and providing them to defense counsel in the **Big Picture Litigation** in order to gain a litigation advantage in that action.

19. Burgess and MicroBilt were named as defendants in the **Virginia Williams Action.**

20. Specifically, in the **Virginia Williams Action**, Burgess was alleged to have procured the plaintiffs' purported consumer reports from MicroBilt and provided them to one of the defense attorneys in the **Big Picture Litigation.**

4

21.     However, Burgess, a New Jersey citizen with no minimum contacts in Virginia, was dismissed without prejudice from the **Virginia Williams Action** for lack of personal jurisdiction by Order entered February 19, 2020.

22.     The Court denied MicroBilt's similar motion to dismiss the **Virginia Williams Action**.

23.     On August 3, 2020, the Court granted the plaintiffs' motion for reconsideration and permitted jurisdictional discovery in the **Virginia Williams Action.** Defendants have objected to the plaintiffs' jurisdictional discovery, and a motion is pending in that action to determine the scope of the jurisdictional discovery.

24.     As discovery deadlines and compliance dates in the **Galloway Action** and **Virginia Williams Action** began to draw near, Defendants began to pressure Burgess and MicroBilt to settle the **Galloway Action** and the **Virginia Williams Action**.

25.     Defendants' pressure tactics against Burgess and MicroBilt included:

(a)     Serving a Motion to Compel in the **Glover Action**;

(b)     Serving numerous overlapping and conflicting unilateral notices of depositions for employees of MicroBilt across multiple states in the **Virginia Williams Action** and the **Glover Action**, to wit:

In the **Glover Action**: Notices of Deposition for:

- Walter Wojciechowski who works in NJ and lives in PA in the GA office for June 3, 2020;

- Melissa Dennis in the GA office for June 4, 2020;

- Carol Nowell in the GA office for June 4, 2020; and

- Franklin Levin, Esq., who works in NJ and lives in PA in the GA office for June 5, 2020.

In the **Virginia Williams Action**: Notices of Deposition for:

- Melissa Dennis in the GA office for June 9, 2020;

- Ramesh Venkataramani in his home in MA for June 10, 2020; and

- Walt Wojciechowski in his home in PA for June 11, 2020.

(c)     MicroBilt's GA and NJ offices were closed in light of the COVID-19 pandemic, and all employees were working from their homes to the extent possible.

(d)     On or about June 8, 2020, Bennett, acting as counsel for the plaintiffs in the **Virginia Williams Action,** represented to Judge Payne in that action that (i) Burgess was an old friend of Matt Martorello, the principal defendant in the EDVA litigation; (ii) that Burgess owned MicroBilt; (iii) then that he did not own MicroBilt; and finally (iv) that Burgess had recently sold MicroBilt while that action was pending. Each of those statements were inaccurate and pure fabrication, and in fact resulted in Judge Payne requiring that MicroBilt provide a declaration setting forth the ownership history of MicroBilt and the employment relationship with Burgess. Bennett made the false statements in order to create a false impression to Judge Payne that Burgess has some business or personal connection with Matt Martorello.  In truth and in fact, Burgess has never had an ownership interest in any business owned by Mr. Martorello, and the only "relationship" that ever existed is that Martorello owned companies that were customers of MicroBilt and its affiliates.

6

26.     When Defendants' pressure tactics against Burgess and MicroBilt failed to coerce them into settling the **Glover Action** and **Virginia Williams Action**, Defendants resorted to the additional tortious conduct alleged in this action.

**Defendants' Tortious Conduct in New Jersey**

27.     On May 11, 2020, Defendants filed a complaint in this Court against Burgess entitled *Lulu Williams, et al. v. Philip Burgess,* Docket No. 3:20-cv-5781 (FLW/DEA) (the "**New Jersey Williams Action**").

28.     The Complaint in the **New Jersey Williams Action** makes the same allegations against Burgess as those in the **Virginia Williams Action**, to wit, that Burgess "procured" plaintiffs' purported credit reports from MicroBilt and forwarded them to one of the defense attorneys in the **Big Picture Litigation** in violation of the Fair Credit Reporting Act.

29.     On August 26, 2020, the Court stayed the **New Jersey Williams Action** by Consent Order.

30.     However, Defendants knew or should have known that there is no legal basis for the Complaint in the **New Jersey Williams Action** because, among other things, Burgess is not, as alleged, a "user" of consumer data within the meaning of the Fair Credit Reporting Act and because the information that Burgess allegedly "procured" was not "governed data" within the meaning of the Fair Credit Reporting Act.  The information concerned transactions between the lender defendants in the Galloway. Big Picture actions and the plaintiffs.

31.     On Friday, May 15, 2020, a female process server ("Process Server No. 1") approached the front door of the Burgess residence in Princeton at approximately 7:54 p.m. and rang the doorbell a few times.  Burgess's wife answered the door said that Burgess was not there

and Process Server No. 1 left. The incident was video recorded by the Burgess family's security system.

32. The next day, Saturday, May 16, 2020, a heavy-set male process server ("Process Server No. 2") approached the front door of the Burgess residence in Princeton, at approximately 3:17 p.m., rang the doorbell and, without waiting for anyone to respond, began intentionally banging on the picture windows on the front of the house. The incident was video recorded by the Burgess family security system.

33. When Burgess's minor children answered the door, Process Server No. 2 asked if Burgess was home. When the minors said he was not, Process Server No. 2 threw a set of papers at them into the Burgess' residence and walked away.

34. Process Server No. 2 was not wearing a mask or gloves, did not maintain a minimum of six-feet of social distancing between himself and those Burgess children (and in fact, came within approximately a foot of them), did not encase the papers he threw at them in plastic or other impermeable covering and generally did not practice any recommended practices for process servers during the current Covid-19 pandemic shutdown. See generally https://www.serve-now.com/articles/2886/a-guide-to-safely-resuming-service-of-process.

35. The papers in question, which Process Server No. 2 threw at the minors, were copies of a letter from Defendants Bennett and Consumer Litigation Associates, LLC and the Summons and Complaint in the **New Jersey Williams Action**.

36. On Monday, May 18, 2020, Burgess received a copy of a Proof of Service purporting to state that the Summons and Complaint in the **New Jersey Williams Action** was properly served on May 16, 2020.

37.     On Wednesday, May 20, 2020, Process Server No. 2 returned and again approached the front door of the Burgess' Princeton residence and again began intentionally banging on the picture windows in the front of the house without first ringing the doorbell or knocking on the front door. The incident was video recorded by the Burgess family security system.

38.     When a Burgess family housekeeper answered the door, Process Server No. 2 handed her: (a) a document subpoena addressed to Burgess, returnable June 1, 2020; and (b) a deposition subpoena addressed to Burgess, returnable June 3, 2020, both of which were captioned in the **Virginia Williams Action** and signed by an attorney at Defendant Consumer Litigation Associates, LLC.

39.     Again, Process Server No. 2 did not wear a mask or gloves, did not maintain a minimum of six-feet of social distancing between himself and the Burgess family housekeeper, did not encase the papers he served in plastic or other impermeable covering and generally did not practice any recommended practices for process servers during the current Covid-19 pandemic shutdown.  See generally https://www.serve-now.com/articles/2886/a-guide-to-safely-resuming-service-of-process.

40.     On Thursday, May 21, 2020, a female process server ("Process Server No. 3") drove up to the Burgess' Princeton residence and spoke with Burgess's wife outside the front of her home.  The incident was recorded by the Burgess residence security system.

41.     Process Server No. 3 handed Burgess's wife a copy of a deposition subpoena addressed to Burgess, returnable June 5, 2020, captioned in the **Galloway Action**, and signed by Bennett of Defendant Consumer Litigation Associates, LLC.

42.     At all times relevant to this Complaint, Process Servers Nos. 1, 2 and 3: (i) were employed by Defendants acting in concert and for their mutual benefit; (ii) were acting as the duly authorized agents of Defendants; and, upon information and belief, (iii) were acting on the instructions of one or more of Defendants.

43.     In 2019, MicroBilt spent $40,872 in legal fees and disbursements in defending the **Glover-Williams** actions in the EDVA.

44.     In the five (5) quarters from January 2020 through March 31, 2021, MicroBilt spent $735,359 in legal fees and disbursements defending the Bennett-related EDVA Litigations, not counting the legal fees and disbursements MicroBilt has spent in this Action.

45.     Thereafter, Defendants continued their campaign of harassment and intimidation against MicroBilt and Burgess, and now have intentionally harmed its business by filing another false and frivolous class action civil RICO complaint against them in the EDVA. *See Steven Mann et al. v. Princeton Alternative Funding, LLC et al.*, Case No. 3:20-cv-00820-REP (the "EDVA Class Complaint").   A copy of the EDVA Class Complaint is attached hereto as Exhibit A.

46.     For reasons that will be discussed in detail below, the EDVA Class Complaint has no legal or evidentiary support whatsoever. Rather, Defendants filed the EDVA Class Complaint in bad faith purely to extort Burgess and MicroBilt into cooperating with them or to suffer the damaging consequences of defending a civil RICO lawsuit, to continue to tortiously interfere with the business of MicroBilt, and to cause MicroBilt and its associates damages and legal fees, all of this because MicroBilt and Burgess, MicroBilt's founder and consultant, and other MicroBilt principals have refused to cooperate with these Defendants in their various aforementioned litigations against Matt Martorello.

47.     Defendants maliciously attempted to use and conspired to use a civil judicial prosecution under a federal statute (i.e., civil RICO) against Plaintiffs in order to leverage Defendants' positions in the Litigations.

48.     Defendants also filed the EDVA Class Complaint as an exhibit (on the very same day that the EDVA Class Complaint itself was filed) in a highly transparent attempt to manufacture purported personal jurisdiction over Burgess in the **Virginia Williams Action** where the Court had ordered the claims against Burgess be dismissed for lack of personal jurisdiction and Defendants were then attempting to convince the Court that there was personal jurisdiction because, in part, of the allegations falsely asserted against Burgess in the EDVA Class Complaint.

49.     The purported class plaintiffs in the EDVA Class Complaint alleged that the case arose from the making and collection of unlawful loans from online lending entities purportedly owned and operated by the Big Valley Band of Pomo Indians of the Big Valley Rancheria, a federally-recognized Native American tribe ("Big Valley"). EDVA Class Complaint ¶ 1. The purported class plaintiffs allege that the loans imposed triple-digit interest rates, exponentially higher than the interest rate caps permitted by state laws, such as those in Virginia, Pennsylvania and Georgia. *Id.* Seeking to ostensibly avoid state usury laws, the purported class plaintiffs allege that the class defendants established a tribal lending business model. *Id.* ¶ 2.

50.     Under this model, the purported class plaintiffs allege that non-tribal payday lenders originate their loan products through a company "owned" by a Native American tribe and organized under its laws. *Id.* The tribal company then allegedly serves as a conduit for the loans, facilitating a claim that the loans are subject to tribal law, not the protections afforded by state usury and licensing laws. *Id.* In exchange for the use of its name on the loan, the purported class

plaintiffs allege that the tribal company often receives a portion of the revenue but does not meaningfully participate in the day-to-day operations of the business. *Id.*

51.     The purported class plaintiffs further allege that the class defendants in the EDVA Class Complaint made, collected and/or received interest from high-interest loans originated in the names of FreedomCashLenders, Tremont Lending, Layma d/b/a Little Lake Lending, and Credit Cube (collectively, "Tribal Lenders"), four entities formed under tribal law to serve allegedly as the fronts to disguise the non-tribal payday lenders' role and to ostensibly shield the scheme by exploiting the doctrine of sovereign immunity. *Id.* ¶ 3.

52.     The purported class plaintiffs allege that the non-tribal defendants (defined as PAF, Burgess, Primus, MicroBilt and LJP) provided the capital used to make the loans and, in return, received the vast majority of the profits of the illegal lending enterprise. *Id.* ¶ 3.  The purported class plaintiffs further allege that, by virtue of their investment and critical role in the illegal lending enterprise, these non-tribal defendants have been permitted to participate, and have participated, in key decisions, strategies and objectives of the lending businesses, ensuring protection and maximize return on their investments. *Id.* ¶ 3.

53.     The purported class plaintiffs allege that the Tribal Lenders were not licensed in Virginia, Georgia, or Pennsylvania (or any other state) and, thus, they and all participants in the enterprise are prohibited from making and collecting on any loans to citizens in excess of their respective state's interest-rate cap. *Id.* ¶ 45.

54.     The purported class plaintiffs further allege that the class defendants are an association in fact enterprise who are associated together for the common purpose of making, collecting and profiting off the illegal loans. *Id.* ¶ 104.

55.    The purported class plaintiffs next allege that MicroBilt, and others knowingly arranged and provided the lending capital used to make the usurious loans to consumers. *Id.* ¶ 113. The purported class plaintiffs allege that, although Big Valley held itself out as the actual lender of these internet loans, a substantial amount of the money came from an entity PAIF, which is a pooled investment fund created to raise and provide the capital to fund the illegal loans and, in return, the vehicle upon which profits are returned to another entity PAF and its investors, including Burgess and companies owned directly or indirectly by him. *Id.* ¶ 114.

56.    In addition, the EDVA Class Complaint alleges, upon information and belief, that the entity PAIF and Big Valley have entered into a loan and security agreement in order to protect PAIF's capital by: (1) granting it a security interest in the loans; and (2) imposing certain business PAIF's capital by: (1) granting it a security interest in the loans; and (2) imposing certain business restrictions on Big Valley and its entities. *Id.* ¶ 115.

57.    The purported class plaintiffs allege that Burgess is one of the primary individuals who participates in raising the capital to be provided to the lenders and who negotiates the terms of the loan and security agreements with the lenders. *Id.* ¶ 119.

58.    The purported class plaintiffs allege that Burgess, MicroBilt, and others, through their alleged ownership in PAIF, by acquiring and maintaining interests in, and control of, the enterprise, as well as their conduct in aiding, abetting, facilitating, funding and unlawful collection of, the illegal loans, have violated RICO and state usury laws. *Id.* ¶¶ 122.

59.    Defendants in the EDVA Class Complaint have served the Plaintiffs' counsel in that action (Defendants in this action) with a Rule 11 "safe harbor" letter, a copy of which is attached hereto as Exhibit B. Defendants also served Plaintiffs' counsel with a draft motion for Rule 11 sanctions.

60.     Defendants, without factual or legal basis, caused the purported class plaintiffs to file the impermissible and unfounded EDVA Class Complaint despite Defendants' knowledge that:

- The claims asserted against PAF and PAIF and their officers, directors, employees (among others) are impermissible as such claims were discharged upon confirmation of PAF/PAIF's confirmed Bankruptcy Reorganization Plan;

- Specifically, PAF and PAIF (together, the "Debtors") each filed bankruptcy cases on March 9, 2018, in the United States Bankruptcy Court for the District of New Jersey, Chief Judge Kaplan, presiding. See Bankr. D.N.J. 18-14603 & 18-14600 (the "PAF/PAIF Bankruptcy"). Because of the underlying disputes between Debtors and one of their investors, and over the objection of the Debtors, the Bankruptcy Court removed the Debtors from possession and appointed a Chapter 11 Trustee (the "Chapter 11 Trustee") by Order dated November 1, 2018. See Bankr. D.N.J. Dkt. 389. Thereafter, the Chapter 11 Trustee exclusively operated PAF/PAIF from November 13, 2018 (see Bankr. D.N.J. Dkt. 408), through until March 13, 2020. See Bankr. D.N.J. Dkt. 1131 ¶ 23 & 1141. On March 13, 2020, the Bankruptcy Court resolved the PAF/PAIF Bankruptcy through a confirmed plan of reorganization for the Bankruptcy (the "Plan.")  On March 13, 2020, the Bankruptcy Court entered an Order discharging PAF and PAIF, and permanently enjoining all persons from bringing discharged claims against PAF and PAIF such as those asserted in the EDVA Class Complaint. Dkt. 1134

- Defendants had actual knowledge of the PAF/PAIF Bankruptcy, which reasonable diligence would reveal the discharge of PAF and PAIF and the permanent injunction against the filing of discharged claims against them, as evidenced by their reference to the Chapter 11 Trustee in that matter in Paragraph 16 of the EDVA Class Complaint;

- Directly contrary to the allegations in the EDVA Class Complaint, the Chapter 11 Trustee had sole and exclusive operational authority over PAF/PAIF during the time period from November 19, 2018, through until March 13, 2020. The fact that the Chapter 11 Trustee had operational authority over PAF/PAIF, and was exclusively responsible for the collections of amounts due from Big Valley Financial (the actual borrower) during that time period, conclusively refutes all allegations of RICO-based collusion between PAF/PAIF and any lenders purportedly associated with Big Valley or Big Valley Financial made by plaintiffs' counsel in the EDVA Class Complaint;

- The claims asserted against Burgess, MicroBilt and others for their alleged improper use of PAF/PAIF funds are derivative claims owned by PAF/PAIF

14

and PAF/PAIF's confirmed Bankruptcy Reorganization Plan has both released and exculpated these class defendants for such derivative claims;

- As part of the settlement of PAF/PAIF bankruptcy, the Chapter 11 Trustee entered into a settlement agreement with MicroBilt on behalf of the Bankruptcy Estate as a result of which, all claims that were or could have been asserted against MicroBilt, including the claims asserted in the EDVA Class Complaint, were released;

- By filing the EDVA Class Complaint in the wake of PAF/PAIF's discharge by the Bankruptcy court, Defendants were in violation of the permanent injunction, 11 U.S.C. § 524(a)(3), and could be held in civil contempt of the Bankruptcy Court's discharge Order, pursuant to § 105 of the Bankruptcy Code;

- The contractual relationship between PAF/PAIF and Big Valley Financial, an affiliate of Big Valley, included a "Funds Use" covenant that required the loan proceeds to be used only for consumer loans between Big Valley Financial and consumers and that prohibited Big Valley Financial from lending any such loan proceeds to other tribal lenders;

- The draw request records, as required by the loan agreement, provided by Big Valley Financial to PAIF confirm that none of the Class Complaint's Plaintiffs received any of the loan proceeds and the entirety of such loan proceeds was used to originate consumer loans through Big Valley Financial and none was used by Big Valley Financial to fund other tribal lenders;

- No class defendant loaned or otherwise transferred funds to or through any of the tribal lenders identified in the EDVA Class Complaint;

- PAF/PAIF **never** made any direct loans to any individual consumers, including the class plaintiffs.

- The records reflect that the PAIF loan to Big Valley Financial included only an interest rate of at most twenty-four (24%) and there is no evidence that any other payments were made—and none were made—from Big Valley Financial or any other tribal lender to PAIF as asserted in the EDVA Class Complaint because Big Valley Financial never loaned or otherwise made funds available to any tribal lender identified in the Class Complaint; and

- The allegations that Burgess owns indirectly a majority of the "shares in PAF and PAIF are incorrect.

61.     Defendants signed, filed, and served the EDVA Class Complaint alleging false accusations of quasi-criminal activity against the MicroBilt, Burgess and others knowing that the filing would be available to the public.

62.     Defendants intentionally sought to harm Plaintiffs by making false accusation of quasi-criminal activity against Plaintiffs under RICO.

63.     Defendants have since voluntarily dismissed of the EDVA Class Complaint without prejudice.

64.     A copy of the voluntary dismissal is attached hereto as Exhibit C ("Dismissal Filing").

65.     Yet, even as Defendants were withdrawing the EDVA Class Complaint, Bennett made additional baseless allegations against Burgess, MicroBilt and others and made new additional false statements about them:

> **Although Plaintiffs (Defendants here) believe there is a reasonable basis to allege that Defendants (Plaintiffs here) are part of a single conspiracy,** Plaintiffs are dismissing this case until more information is obtained from the tribal officials regarding the operations of their businesses.

*Id.*

66.     Defendant Bennett added a footnote to the Dismissal Filing as follows:

> Defendant Burgess has sued on a personal basis the attorneys representing the consumers in this matter and others, [referring to this Action] including a recent attempt to amend a complaint in a pending action with respect to counsel's representation in this case.  **While it is possible that the present action could have preceded [*sic*] against him as is, that distraction can await a later day**.

*Id.*

67.     Despite the foregoing equivocations, the case has proceeded and there has been no mention of Burgess or the other MicroBilt defendants.

16

68.     Thus, while Defendants voluntarily dismissed the false RICO claims, they repeated the false underlying allegations against Burgess, MicroBilt and others, and threatened to refiled them, in the Dismissal Filing itself.

69.     At the same time that they "sort of" dismissed the RICO claims in the EDVA Class Complaint, Defendants refused to withdraw a copy of the RICO class complaint submitted to the EDVA and publicly filed as evidence in their opposition brief in the **Virginia Williams Action**, in which Defendants are continuing to attempt to obtain personal jurisdiction over Burgess in that action.

70.     In fact, the continued assertion in the Dismissal Filing before Judge Payne in the EDVA Class Complaint of the false contention that there was evidence of a Virginia-based RICO conspiracy involving Plaintiffs with Burgess as a central directing leader and that the class complaint could nevertheless proceed against Burgess "as is," was a transparent attempt using false allegations to influence Judge Payne's pending jurisdictional decision in the **Virginia Williams Action**.

71.     Faced with these continued bad faith and malicious litigation tactics, MicroBilt went forward with its Rule 11 motion for sanctions against Defendants in the EDVA Class Complaint for their false and frivolous allegations in that matter and failure to withdraw the false contentions and otherwise comply with the requests made in the safe harbor letter. A copy of the MicroBilt's Rule 11 motion is attached hereto as Exhibit D.

72.     As a result of Defendants' conduct, Plaintiffs suffered damages, including special damages that includes, without limitation, loss of profits, loss of time and loss of wages that cannot be reclaimed, and further includes incurring significant fees and expenses to protect their interests.

73.     As a result of Defendants' conduct, Plaintiffs suffered a special grievance in the form of loss of property.  To wit, MicroBilt, in which Burgess has indirect ownership, has lost significant revenue and profit as clients, customers and accounts have been lost and new incoming revenue has diminished, all of which is attributable to the Litigations and notably the EDVA Class Complaint that asserted quasi-criminal RICO allegations that had no basis in fact.

74.     Defendants' actions in filing and prosecuting the Litigations and EDVA Class Complaint has caused significant brand damages to MicroBilt.

## Count One

### (Malicious Abuse of Legal Process)

75.     Plaintiffs repeat and re-allege the allegations contained in preceding paragraphs as if fully set forth herein.

76.     Defendants' further acts after issuing legal process against Plaintiffs demonstrate a purpose ulterior to the one for which such process was designed.

77.     The additional acts after the issuance of process represent the perversion or abuse of the legitimate purpose of that process.  The subpoena served by Process Server No. 2 was improper, overly broad, and sought impermissible information. The subpoena served by Process Server No. 2 was totally extraneous such that it could not be intended to achieve a legitimate aim. Specifically, in the **Virginia Williams Action**, Defendants alleged that Burgess gave a purported consumer credit report to an attorney, when in fact, as Defendants well know, the consumer credit *data*, which Burgess did provide, does not constitute a "consumer credit report" as a matter of law. To the extent that the subpoena in that case sought information to the contrary, it "sought impermissible information" by definition that was totally extraneous to any legitimate litigation purpose.

78. Defendants' purpose as aforesaid was to coerce or oppress either through intentional malicious abuse of process or the issuance of process without reason or probable cause.

79. As a result of Defendants' conduct, Plaintiffs have been injured and damaged.

80. As a result of Defendants' conduct, Defendants are liable to Plaintiffs for their injuries and damages.

## Count Two

### (Malicious Use of Process)

81. Plaintiffs repeat and re-allege the allegations contained in preceding paragraphs as if fully set forth herein.

82. Defendants maliciously filed the EDVA Class Complaint against Plaintiffs without probable cause, i.e., without a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinarily prudent person in believing Plaintiffs are liable.

83. Defendants voluntary withdrawal of the EDVA Class Complaint was a favorable termination or was dispositive of Plaintiffs' non-liability.

84. As a result of Defendants' conduct, Plaintiffs suffered special damages in the form of incurring expenses to protect their interests, loss of profits, loss of time, and loss of wages that cannot be reclaimed.

85. As a result of Defendants' conduct, Plaintiffs suffered a special grievance in the form of loss of property. To wit, MicroBilt has lost existing customers and potential new business. For example, MicroBilt estimates that it has lost approximately 300-400 customers as a result of Defendants' conduct as alleged herein.

86. Since the filing of the Bennett-related EDVA Litigations, including the false RICO allegations in the EDVA Class Complaint referenced herein, MicroBilt's quarterly revenue

19

run rate has averaged a loss of approximately $1.1 million per quarter. This figure has been adjusted to account for, and is exclusive of COVID-19 pandemic related, estimated revenue losses in the second and third quarters of 2020.

87.    In addition, MicroBilt has suffered a special grievance in the form of permanent damage to its reputation as a result Defendants' conduct as alleged herein. Among other things, MicroBilt intends to fund a corrective marketing campaign, including search engine optimization, to attempt to repair the damage caused to its reputation by Defendants' false civil RICO allegations that it engaged in criminal and quasi-criminal conduct.

88.    Defendants are also liable to Plaintiffs for damages, including attorney's fees and costs in defending the action maliciously brought.

**WHEREFORE** Plaintiffs demand judgment against Defendants jointly and severally on the grounds and with the specificity as to Plaintiffs and Defendants in each Count:

(a)    For compensatory, consequential, treble, special and punitive damages;

(b)    For all legal fees and costs incurred in this action; and

(c)    For such other and further relief as the Court may deem just.

**KROVATIN NAU LLC**
60 Park Place, Suite 1100
Newark, New Jersey 07102
(973) 424-9777
*Attorneys for Plaintiffs*

s/ Gerald Krovatin
gkrovatin@krovatin.com

Dated:  December 3, 2021

## JURY DEMAND

Plaintiffs demand a trial by jury as to all issues so triable.

**KROVATIN NAU LLC**
60 Park Place, Suite 1100
Newark, New Jersey 07102
(973) 424-9777
*Attorneys for Plaintiffs*

  s/ Gerald Krovatin  
gkrovatin@krovatin.com

Dated:  December 3, 2021

## L.Civ.R.11.2 CERTIFICATION

I hereby certify that the matter involved here, as far as I know, is not the subject of any other action pending in any court, nor is it the subject of a pending arbitration or administrative proceeding except for the three related actions:

(1)     *Lula Williams, et al. v. Philip Burgess,* Docket No. 3:20-cv-5781-FLW-DEA;

(2)     *Philip Burgess v. Renee Galloway, et al.*, Docket No. 3:20-cv-06744-FLW-DEA; and

(3)     *Steven Mann, et al. v. Princeton Alternative Funding, LLC, et al.*, Case No. 3:20-cv-00820-REP (EDVA).

**KROVATIN NAU LLC**
60 Park Place, Suite 1100
Newark, New Jersey 07102
(973) 424-9777

*Attorneys for Plaintiffs*
  s/ Gerald Krovatin  
gkrovatin@krovatin.com

Dated:  December 3, 2021

# EXHIBIT A

# EXHIBIT B

**DURRETTE, ARKEMA, GERSON & GILL** PC
*ATTORNEYS AT LAW*

Wyatt B. Durrette, Jr.
wdurrette@dagglaw.com
Direct: 804-775-6809
Mobile: 804-690-4430

November 11, 2020

**VIA FEDERAL EXPRESS AND EMAIL ONLY**

Kristi C. Kelly, Esquire
Andrew J. Guzzo, Esquire
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, Virginia 22030
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com

Leonard A. Bennett, Esquire
Craig C. Marchiando, Esquire
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
Email: lenbennett@clalegal.com
Email: craig@clalegal.com

Re:  *Mann, et al., v. Princeton Alternative Funding, LLC, et al.*
Civil Action No. 3:20-cv-820-REP
USDC-Eastern District of Virginia-Richmond Division

Dear Counsel:

We represent the following defendants in the above-entitled litigation (the "Litigation"): (i) **Princeton Alternative Funding, LLC** ("PAF"), (ii) **Princeton Alternative Income Fund, L.P.** ("PAIF"), (iii) **Philip N. Burgess, Jr.** ("Burgess"), (iv) **Walter Wojciechowski** ("WW"), (v) **MicroBilt Financial Services Corporation** ("MicroBilt"), (vi) **Alonzo Primus** ("Primus") and (vii) **LJP Consulting, LLC** ("LJP") (collectively, "Clients").

Enclosed, please find a Motion for Sanctions pursuant to Federal Rule of Civil Procedure 11 concerning the propriety of the class action complaint (the "Class Complaint") that you have filed in the Litigation. For the reasons set forth in greater detail in the Motion for Sanctions, we ask that you voluntarily dismiss the Class Complaint within the next 21 days and cease all efforts to further prosecute the Litigation. If you fail to do so and continue with the Class Complaint, our Clients have authorized us to seek sanctions in the amount of all legal fees associated with these Rule 11 efforts as well as any other fees or costs for having to defend this frivolous matter. Accordingly, in order to avoid such consequences, we urge you to withdraw the Class Complaint within the 21-day safe harbor provided by Rule 11(c)(2).

DURRETTE, ARKEMA, GERSON & GILL PC

Kristi C. Kelly, Esquire
Andrew J. Guzzo, Esquire
Leonard A. Bennett, Esquire
Craig C. Marchiando, Esquire
Re: Mann, et al., v. Princeton, etc, et al.
November 11, 2020
Page 2


      In addition, because you have used the Class Complaint in an offensive manner in *Williams, et al., v. Microbilt Corp.*, Case No. 3:19-cv-00085-REP (USDC Eastern Virginia-Richmond Division) at ECF Dkt. 170 (Exh. 2), we are further requesting that, in addition to withdrawing the Class Complaint, you further notify Judge Payne that the purpose for which you utilized the Class Complaint is no longer valid and that the Court should not consider the Class Complaint for the jurisdictional purposes for which it was attached as an exhibit.

      Be guided accordingly.

                Very truly yours,

                Wyatt B. Durrette, Jr.

WBDJr/rww
Enclosure.

cc:    Maurice R. Mitts, Esquire
       Gerard M. McCabe, Esquire

# EXHIBIT C

Case 3:20-cv-07103-ZNQ-DEA   Document 28-2   Filed 02/09/21   Page 44 of 76 PageID: 589
Case 3:20-cv-07103-ZNQ-DEA   Document 36-3   Filed 04/05/21   Page 28 of 60 PageID: 808
Case 3:20-cv-00820-REP   Document 13   Filed 12/01/20   Page 1 of 3 PageID# 95

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| STEVEN MANN, *et al.*, | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. 3:20-cv-820 (REP) |
| | : | |
| PRINCETON ALTERNATIVE FUNDING, LLC, | : | |
| *et al.*, | : | |
| Defendants. | : | |

**NOTICE OF VOLUNTARY DISMISSAL WITHOUT PREJUDICE AS TO
DEFENDANTS PRINCETON ALTERNATIVE FUNDING, LLC, PRINCETON
ALTERNATIVE INCOME FUND, L.P., PHILIP BURGESS, ALONZO PRIMUS,
WALTER WOJCIECHOWSKI, MICROBILT FINANCIAL SERVICES
CORPORATION, AND LJP CONSULTING, LLC**

Pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, Plaintiffs hereby

dismiss the above-styled action without prejudice against the Defendants Princeton Alternative

Funding, LLC, Princeton Alternative Income Fund, L.P., Philip Burgess, Alonzo Primus, Walter

Wojciechowski, Microbilt Financial Services Corporation, and LJP Consulting, LLC.

Plaintiffs filed this complaint, in part, based on the deposition testimony of Walter

Wojciechowski, who indicated that Defendants provided capital to a tribal lending entity owned

by the Big Valley Band of Pomo Indians. Based on representations from their counsel and

documents provided, Defendants have represented that this previous testimony was either incorrect

or misunderstood. Defendants claim that they instead invested in a tribal lending entity known as

"Big Valley Financial, LLC," *i.e.*, a different tribal lending entity owned by the Big Valley Band

of Pomo Indians, but not the one who issued the loans to these specific named Plaintiffs. Although

Plaintiffs believe there is a reasonable basis to allege that Defendants are part of a single

Case 3:20-cv-07103-ZNQ-DEA   Document 28-1   Filed 02/09/21   Page 45 of 76 PageID: 385
Case 3:20-cv-07103-ZNQ-DEA   Document 36-1   Filed 04/03/21   Page 45 of 66 PageID: 852
Case 3:20-cv-00820-REP   Document 13   Filed 12/01/20   Page 2 of 3 PageID# 96

conspiracy, Plaintiffs are dismissing this case until more information is obtained from the tribal officials regarding the operations of their businesses.[1]

This dismissal is not intended to include the claims against Philip Gomez, Michael Gomez, Chris McCloud, Vivian McCloud, and the John Does 1-15. Plaintiffs intend to file an Amended Complaint pursuant to Rule 15(a)(1) to remove the allegations against Defendants Princeton Alternative Funding, LLC, Princeton Alternative Income Fund, L.P., Philip Burgess, Alonzo Primus, Walter Wojciechowski, Microbilt Financial Services Corporation, and LJP Consulting, LLC.

Respectfully submitted,
**PLAINTIFFS**

*/s/ Leonard A. Bennett*
Leonard A. Bennett, Esq., VSB #37523
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Ste. 1-A
Newport News, VA  23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email:  lenbennett@clalegal.com
*Counsel for Plaintiffs*

---

[1] Defendant Burgess has sued on a personal basis the attorneys representing the consumers in this matter and others, including a recent attempt to amend a complaint in a pending action with respect to counsel's representation in this case. While it is possible that the present action could have preceded against him as is, that distraction can await a later day.

2

Case 3:20-cv-07103-ZNQ-DEA   Document 28-3   Filed 02/09/21   Page 40 of 70 PageID: 588
Case 3:20-cv-07103-ZNQ-DEA   Document 34-3   Filed 02/09/21   Page 40 of 70 PageID: 588
Case 3:20-cv-00820-REP   Document 13   Filed 12/01/20   Page 3 of 3 PageID# 97

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of December, 2020, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

_/s/_____

Leonard A. Bennett, Esq., VSB #37523
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Ste. 1-A
Newport News, VA  23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email:  lenbennett@clalegal.com
*Counsel for Plaintiffs*

3

# EXHIBIT D

Case 3:20-cv-07103-ZNQ-DEA   Document 29-2   Filed 02/08/21   Page 48 of 76 PageID: 586
Case 3:20-cv-07103-ZNQ-DEA   Document 35-1   Filed 04/08/21   Page 48 of 60 PageID: 862
Case 3:20-cv-00820-REP   Document 15   Filed 12/08/20   Page 1 of 5 PageID# 131

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

STEVEN MANN *et al.,*

    Plaintiffs,

                                   Case No. 3:20-cv-00820-REP

v.

PRINCETON ALTERNATIVE FUNDING,
LLC *et al.,*

    Defendants.

### DEFENDANTS' MOTION FOR
### SANCTIONS AGAINST PLAINTIFFS' COUNSEL
### PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11(b)(1-3)

Defendants Princeton Alternative Funding, LLC ("PAF"), Princeton Alternative Income Fund, L.P. ("PAIF"), Philip Burgess ("Burgess"), Walter Wojciechowski ("Wojciechowski"), MicroBilt Financial Services Corp. ("MicroBilt"), Alonzo Primus ("Primus") and LJP Consulting, LLC ("LJP") (collectively, "Defendants"), respectfully submit this Motion For Sanctions Against Plaintiffs' Counsel Pursuant To Federal Rule Of Civil Procedure 11 (this "Motion").

Pursuant to Rule 11, this Motion and the accompanying Memorandum and exhibits were initially served on Plaintiffs' counsel on November 11, 2020, more than 21 days ago (the "Safe Harbor Documents"). *See* **Exhibit A** (attached to the accompanying Memorandum). As a result of the Safe Harbor Documents, Plaintiffs' counsel filed a Rule 41(a) dismissal (the "Dismissal Filing") of the Class Complaint against Defendants.[1]

---

[1] The portions of this Motion and accompanying Memorandum that relate and regard the Dismissal Filing were, of course, not included in the Safe Harbor Documents because the Dismissal Filing had not yet occurred. Because they are repetitious of the offensive false statements in the Class Complaint, the false statements of the Dismissal Filing are included herein (i) to highlight Plaintiffs' counsel intentionality of asserting these false baseless statements and (ii) to seek additional sanctions for such repetitious behavior.

1

A reasonable, responsible pre-filing inquiry would have revealed to Plaintiffs' counsel that there was no evidentiary support for the claims asserted by Plaintiffs against Defendants in the class action RICO complaint (ECF Dkt. 1) (the "<u>Class Complaint</u>") for the following reasons:

- The Draw Request Records provided by Big Valley Financial to PAIF confirm that none of the Class Complaint's Plaintiffs received any of the loan proceeds and the entirety of such loan proceeds was used to originate consumer loans through Big Valley Financial and none was used by Big Valley Financial to fund other tribal lenders. Therefore, Plaintiffs' counsel could not possibly have had evidence to support the allegations of the Class Complaint because none existed;

- No Defendant loaned or otherwise transferred funds to or through any of the tribal lenders identified in the Class Complaint;

- The contractual relationship between PAF/PAIF and Big Valley Financial, an affiliate of Big Valley Band of Pomo Indians of the Big Valley Rancheria, included a "Funds Use" covenant that required the loan proceeds to be used only for consumer loans between Big Valley Financial and consumers and that would have prohibited Big Valley Financial lending any such loan proceeds to other tribal lenders;

- The records reflect that the loan to Big Valley Financial included only an interest rate of at most twenty-four percent (24%) and there is no evidence that any other payments were made—and none were made—from Big Valley Financial or any other tribal lender to PAIF as asserted in the Class Complaint because Big Valley Financial never loaned or otherwise made funds available to any tribal lender identified in the Class Complaint; and,

- The allegations that Wojciechowski held direct ownership in PAIF or that Burgess owns indirectly a majority of the "shares" in PAF and PAIF are incorrect.

The facts and legal arguments on which this Motion are based in support of the preceding reasons, and the lack of good cause and proper due diligence and investigation as required by Rule 11, are more fully discussed and delineated in the Memorandum of Law filed herewith. In short, while the factual positions presented by Defendants in this Motion and supported by the exhibits referenced in the Memorandum were in part records maintained and controlled by Defendants,

these factual records confirm that, under no circumstances, could Plaintiffs' counsel have discovered **any** facts that would have constituted a basis upon which to make the baseless RICO conspiracy accusations that have been asserted in both the Class Complaint and the more recent Dismissal Filing that repeats the false RICO conspiracy allegations against Defendants.[2]

As a result of the filing of the Class Complaint and now the Dismissal Filing, Defendants have incurred substantial legal expenses in preparing this Motion and otherwise defending against this frivolous matter, especially where Plaintiffs' counsel has sought to use the allegations in the Class Complaint to foist impermissible personal jurisdiction over Defendant Burgess in the *Williams* litigation that is also presently venued before this Court.

Thus, for the reasons more fully set forth in the Memorandum being filed herewith, and the exhibits attached thereto, Defendants respectfully request that this Court grant this Motion and award Defendants sanctions against Plaintiffs' counsel, pursuant to Rule 11(b)(1), (b)(2) and (b)(3), in the amount of the attorneys' fees incurred by Defendants in preparing, investigating, serving and filing the Safe Harbor Documents, this Motion, and otherwise defending against this action, including the Dismissal Filing, and such other amount deemed by the Court necessary to deter such conduct in the future, where Defendants have delineated the factual falsities with respect to the allegations asserted in the Class Complaint (ECF Dkt. 1) and where Plaintiffs' counsel has now admitted in the Dismissal Filing that they did not have an evidentiary basis to file such Class Action.[3]

---

[2] Typically, though not required, a document such as the Dismissal Filing would be shared in advance with opposing counsel. In this case, Mr. Bennett did not share the Dismissal Filing prior to its filing presumably, in part, because of the offensive statements that were included therein.

[3] Upon the Court's direction, undersigned counsel will submit detailed invoices itemizing all fees and costs incurred in investigating, preparing, drafting, serving and filing the Safe Harbor Documents and this Rule 11 Motion and otherwise defending against the false claims asserted in the Class Complaint and now more recently in the Dismissal Filing.

Case 3:20-cv-07103-ZNQ-DEA   Document 28-3   Filed 02/09/21   Page 51 of 70 PageID: 587
Case 3:20-cv-07103-ZNQ-DEA   Document 35-3   Filed 02/09/21   Page 35 of 60 PageID: 800
Case 3:20-cv-00820-REP   Document 15   Filed 12/08/20   Page 4 of 5 PageID# 134

Dated:  December 8, 2020

Respectfully submitted,


By  /s/  Wyatt B. Durrette, Jr.
Wyatt B. Durrette, Jr., Esquire (VSB No. 04719)
Durrette, Arkema, Gerson & Gill PC
1111 East Main Street, 16th Floor
Richmond, Virginia  23219
Tel:  (804) 775-6900
Fax:  (804) 775-6911
wdurrette@dagglaw.com

*To Be Admitted Pro Hac Vice*
*In This Litigation:*

Maurice R. Mitts (Pa. Bar No. 50297)
Gerard M. McCabe (Pa. Bar No. 66564)
MITTS LAW, LLC
1822 Spruce Street
Philadelphia, Pennsylvania  19103
Tel:  (215) 866-0110
Fax:  (215) 866-0111
mmitts@mittslaw.com
gmccabe@mittslaw.com

*Attorneys for Princeton Alternative Funding, LLC,*
*Princeton Alternative Income Fund, L.P., Philip*
*Burgess, Alonzo Primus, Walter Wojciechowski,*
*MicroBilt Financial Services Corporation, and LJP*
*Consulting, LLC*

4

Case 3:20-cv-07103-ZNQ-DEA   Document 38-3   Filed 02/09/21   Page 52 of 76 PageID: 383
Case 3:20-cv-07103-ZNQ-DEA   Document 38-3   Filed 02/09/21   Page 36 of 60 PageID: 386
Case 3:20-cv-00820-REP   Document 15   Filed 12/08/20   Page 5 of 5 PageID# 135

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically e-mail notification of such filing to all counsel of record.

To the best of my knowledge, there are no other attorneys or parties who require service by U.S. Mail.

/s/  Wyatt B. Durrette, Jr.
Wyatt B. Durrette, Jr., Esquire (VSB No. 04719)
Durrette, Arkema, Gerson & Gill PC
1111 East Main Street, 16th Floor
Richmond, Virginia  23219
Tel:  (804) 775-6900
Fax:  (804) 775-6911
wdurrette@dagglaw.com

Case 3:20-cv-07103-ZNQ-DEA   Document 38-3   Filed 02/09/21   Page 53 of 76 PageID: 389
Case 3:20-cv-07103-ZNQ-DEA   Document 38-3   Filed 02/03/22   Page 53 of 60 PageID: 690
Case 3:20-cv-00820-REP   Document 16   Filed 12/08/20   Page 1 of 24 PageID# 136

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

STEVEN MANN *et al.*,

    Plaintiffs,

                            Case No. 3:20-cv-00820-REP

v.

PRINCETON ALTERNATIVE FUNDING,
LLC *et al.*,

    Defendants.

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION FOR SANCTIONS AGAINST PLAINTIFFS'
## COUNSEL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11(b)(1-3)

Defendants Princeton Alternative Funding, LLC ("PAF"), Princeton Alternative Income

Fund, L.P. ("PAIF"), Philip Burgess ("Burgess"), Walter Wojciechowski ("Wojciechowski"),

MicroBilt Financial Services Corp. ("MicroBilt"), Alonzo Primus ("Primus") and LJP Consulting,

LLC ("LJP") (collectively, "Defendants"),[1] respectfully submit the following Memorandum (this

"Memorandum") in support of Defendants' Motion For Sanctions Against Plaintiffs' Counsel

Pursuant To Federal Rule Of Civil Procedure 11(b)(1-3) (the "Motion"). For the reasons set forth

herein, Defendants respectfully request that the Court grant the Motion and award Defendants

sanctions againt Plaintiffs' counsel in the amount of the attorneys' fees incurred by Defendants in

investigating, preparing, drafting, serving and filing the Safe Harbor Documents (defined herein)

and this Motion and otherwise defending against this action where (i) Defendants have delineated

the factual falsities with respect to the allegations asserted by Plantiffs Steven Mann, Lashell

Epperson, Judith Harrison, and Kevin Williams (collectively, "Plaintiffs") in the class action

complaint (ECF Dkt. 1) ("Class Complaint" or "CAC") and (ii) Plaintiffs' counsel has now

admitted they did not have the evidentiary basis to file such Class Complaint and have voluntarily

---

[1] All of the defendants named in the Class Complaint will be referenced herein as "Class Defendants."

Case 3:20-cv-07103-BMC-DEA Document 28-3 Filed 02/09/21 Page 54 of 76 PageID: 580
Case 3:20-cv-07103-BMC-DEA Document 36-3 Filed 01/03/22 Page 39 of 60 PageID: 698
Case 3:20-cv-00820-REP Document 16 Filed 12/08/20 Page 2 of 24 PageID# 137

dismissed the Class Complaint against Defendants pursuant to Federal Rule of Civil Procedure 41(a) (the "Dismissal Filing").

A. **Allegations Asserted In The Class Complaint.**

Plaintiffs, on behalf of themselves and all individuals similarly situated, alleged violations against Defendants of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, in the Class Complaint and further asserted a class claim for violations of state usury laws and unjust enrichment. CAC ¶ 6.

With regard to Defendants, the Class Complaint described them as follows:

    i.    PAF is a fund management company and general partner of PAIF and is a self-described "debt fund that provides credit facilities" to "consumer-facing finance companies in the alternative lending marketplace." *Id.* Plaintiffs further alleged that PAF "provides capital (often tens of millions of dollars) to finance companies, including to illegal lenders like FreedomCashLenders, Tremont Lending, Little Lake Lending, and Credit Cube." *Id.* ¶ 13.

    ii.    PAIF is an investment fund created by PAF and, upon information and belief, is a pooled investment fund created to raise and provide the capital to fund the illegal loans and, in return, the vehicle upon which profits are returned to PAIF and its investors. *Id.* ¶ 14.

    iii.    Burgess is a natural person and indirectly owns the majority of the shares in PAF and PAIF, and, as allegedly supported by sworn testimony, has held an ownership interest in PAIF for "over 25 years" and he has "been in the business-to-business lending industry for about 35 years." *Id.* ¶¶ 15, 118. Plaintiffs further alleged that (a) Burgess is one of the primary individuals who participates in raising the capital to be provided to the lenders and who negotiates the terms of the loan and security agreements with the lenders (*id.* ¶ 15), and (b) through software and data available to Burgess as a result of his ownership of a consumer reporting agency, Burgess also monitors the loans to the consumers and ensures the timely servicing and collection of the loans. *Id.*

    iv.    Wojciechowski is a natural person who owns some of the shares in PAIF, and, in addition, is the chief financial officer of PAIF and, thus, he is the executive responsible for managing the financial actions of PAIF, including its decision when to deploy more capital to the illegal lenders. *Id.* ¶ 17.

Case 3:20-cv-07103-ZNQ-DEA   Document 38-3   Filed 02/09/21   Page 55 of 76 PageID: 585
Case 3:20-cv-07103-ZNQ-DEA   Document 38-3   Filed 02/03/22   Page 39 of 60 PageID: 592
Case 3:20-cv-00820-REP   Document 16   Filed 12/08/20   Page 3 of 24 PageID# 138

v.  Microbilt is a company owned by Burgess and his family—either
directly or indirectly. Microbilt is a holding company, which owns about
53% of PAIF. *Id.* ¶ 18.

vi.  Primus, as a majority shareholder in LJP, is a natural person and
indirectly owns or has owned shares of PAIF. Plaintiffs, citing the United
States Trustee for the United States Bankruptcy Court for New Jersey,
alleged that Primus assisted Burgess with the creation of PAIF and was
its Chief Credit Officer. *Id.* ¶ 16.

vii.  LJP is a company partially owned by Primus (either directly or
indirectly), is alleged to be one of two managing members of PAIF. *Id.*
¶ 19.

Specifically, with regard to the underlying allegations, Plaintiffs alleged that the case arises

from the making and collection of unlawful loans to class members from online lending entities

purportedly owned and operated by the Big Valley Band of Pomo Indians of the Big Valley

Rancheria, a federally-recognized Native American tribe ("Big Valley"). CAC ¶ 1.[2] Plaintiffs

alleged that the loans imposed triple-digit interest rates, exponentially higher than the interest rate

caps permitted by state laws, such as those in Virginia, Pennsylvania and Georgia. *Id.* ¶ 1. Seeking

to ostensibly avoid state usury laws, Plaintiffs alleged that the class defendants established a tribal

lending business model. *Id.* ¶ 2.

Under this model, Plaintiffs alleged that non-tribal payday lenders originate their loan

products through a company "owned" by a Native American tribe and organized under its laws. *Id.*

¶ 2. The tribal company then serves as a conduit for the loans, facilitating a claim that the loans are

subject to tribal law, not the protections afforded by state usury and licensing laws. *Id.* In exchange

for the use of its name on the loan, the tribal company often receives a portion of the revenue but

does not meaningfully participate in the day-to-day operations of the business. *Id.*

---

[2] PAIF had a loan agreement with Big Valley Financial ("Big Valley Financial") which was an affiliate of Big Valley.
The Class Complaint makes no reference to Big Valley Financial. This fact was public knowledge in the New Jersey
bankruptcy filings for the PAIF bankruptcy about which Plaintiffs' counsel were intimately aware.

Case 3:20-cv-07103-ZNQ-DEA   Document 38-3   Filed 02/09/21   Page 56 of 76 PageID: 388
Case 3:20-cv-07103-ZNQ-DEA   Document 38-3   Filed 02/09/21   Page 40 of 60 PageID: 390
Case 3:20-cv-00820-REP   Document 16   Filed 12/08/20   Page 4 of 24 PageID# 139

Plaintiffs alleged that the Class Defendants made, collected and/or received interest from high-interest loans originated in the names of FreedomCashLenders, Tremont Lending, Layma d/b/a Little Lake Lending, and Credit Cube (collectively, "Tribal Lenders"), four entities formed under tribal law to serve allegedly as the fronts to disguise the non-tribal payday lenders' role and to ostensibly shield the scheme by exploiting the doctrine of sovereign immunity. *Id.* ¶ 3.

Plaintiffs alleged that the non-tribal defendants (defined as PAF, Burgess, Primus, MicroBilt, Wojciechowski and LJP)[3] provided the capital used to make the loans and, in return, received the vast majority of the profits of the illegal lending enterprise. *Id.* Plaintiffs further alleged that, by virtue of their investment and critical role in the illegal lending enterprise, these non-tribal defendants have been permitted to participate, and have participated, in key decisions, strategies and objectives of the lending businesses, ensuring protection and maximum return on their investments. *Id.*

Plaintiffs alleged that the Tribal Lenders were not licensed in Virginia, Georgia, or Pennsylvania (or any other state) and, thus, they and all participants in the enterprise are prohibited from making and collecting on any loans to citizens in excess of their respective state's interest-rate cap. *Id.* ¶ 45. Plaintiffs further alleged that the class defendants are an association in fact enterprise who are associated together for the common purpose of making, collecting and profiting off the illegal loans. *Id.* ¶ 104.

Plaintiffs next alleged that PAF, PAIF, Burgess, Primus, Wojciechowski, MicroBilt, and LJP knowingly arranged and provided the lending capital used to make the usurious loans to consumers. *Id.* ¶ 113. Plaintiffs alleged that, although Big Valley held itself out as the actual lender of these internet loans, a substantial amount of the money came from PAIF, which is a pooled investment fund created to raise and provide the capital to fund the illegal loans and, in return, the vehicle upon which profits are returned to PAF and its investors, including Burgess, Primus, and

---

[3] The Class Complaint curiously failed to include PAIF in this list of non-tribal defendants.

Case 3:20-cv-07103-ZNQ-DEA   Document 38-2   Filed 02/09/21   Page 57 of 70 PageID: 882
Case 3:20-cv-07103-ZNQ-DEA   Document 36-3   Filed 02/09/21   Page 41 of 60 PageID: 804
Case 3:20-cv-00820-REP   Document 16   Filed 12/08/20   Page 5 of 24 PageID# 140

companies owned directly or indirectly by them. *Id.* ¶ 114. In addition, Plaintiffs alleged that, upon

information and belief, PAIF and the Tribe have entered into a loan and security agreement in

order to protect PAIF's capital by: (1) granting it a security interest in the loans; and (2) imposing

certain business restrictions on the Tribe and its entities. *Id.* ¶ 115.

Plaintiffs alleged that Burgess is one of the primary individuals who participates in raising

the capital to be provided to the lenders and who negotiates the terms of the loan and security

agreements with the lenders. *Id.* ¶ 119. Plaintiffs further alleged that Wojciechowski owns some

of the shares in PAIF and is its chief financial officer and, thus, is the executive responsible for

managing the financial actions of PAIF, including its decisions regarding when to deploy more

capital to the illegal lenders. *Id.* ¶ 120.

Plaintiffs alleged that PAF, PAIF, Burgess, Primus, Wojciechowski, MicroBilt, and LJP,

through their ownership in PAIF, by acquiring and maintaining interests in, and control of, the

enterprise, as well as their conduct in aiding, abetting, facilitating, funding and unlawful collection

of the illegal loans, have violated RICO and state usury laws. *Id.* ¶¶ 122, 133.

## B. **Legal Standard Supporting Grant of Rule 11 Sanctions.**

Federal Rule of Civil Procedure 11 provides, in part, that in presenting any document to

the court, a party certifies that, to the best of his or her knowledge, information, and belief, (i) the

document is not being filed for an improper purpose; (ii) the claims are warranted by existing law;

and (iii) the factual contentions have evidentiary support. FED. R. CIV. P. 11(b). If, after notice and

a reasonable opportunity to respond, the Court determines that Rule 11(b) has been violated, the

Court has discretion to impose sanctions on the attorneys, law firms and/or parties responsible for

the violation. FED. R. CIV. P. 11(c)(1).

Under Rule 11(b), a party who presents a pleading, written motion, or other paper with the

court certifies that to the best of his or her knowledge, formed after an inquiry reasonable under

Case 3:20-cv-07103-ZNQ-DEA   Document 28-3   Filed 02/09/21   Page 58 of 76 PageID: 583
Case 3:20-cv-07103-ZNQ-DEA   Document 36-3   Filed 02/09/21   Page 58 of 60 PageID: 583
Case 3:20-cv-00820-REP   Document 16   Filed 12/08/20   Page 6 of 24 PageID# 141

the circumstances, the allegations and other factual contentions contained in such pleading have evidentiary support. A party who files a pleading for an improper purpose, such as harassing or punishing the opposing party, violates Rule 11(b)(1), and may therefore be sanctioned. In determining whether a filing has been made for an improper purpose under Rule 11, a court must judge the attorney's conduct under an objective standard of reasonableness. *See Stevens v. Lawyers Mut. Liab. Ins. Co. of N. Carolina,* 789 F.2d 1056, 1060 (4th Cir.1986) (applying objective standard); *Fahrenz v. Meadow Farm P'ship,* 850 F.2d 207, 210 (4th Cir.1988) (same). Courts may infer from "solid evidence of a pleading's frivolousness" that a pleading was filed for an improper purpose. *See Kunstler,* 914 F.2d 505, 519 (4th Cir. 1990) (where "counsel willfully files a baseless complaint, a court may properly infer that it was filed ... for some purpose other than to vindicate rights through the judicial process"). *See also Townsend v. Holman Consulting Corp.,* 929 F.2d 1358, 1365-66 (9th Cir. 1990) (*en banc*) (district court inferred that plaintiff vindictively named defendant from fact that allegations of complaint were frivolous and fact that defendant had been law firm that opposed plaintiff in earlier state court action).

When pursuing sanctions pursuant to Rule 11(b)(2) and 11(b)(3), this Court in *Turton v. Virginia Depart. Of Education et al.,* 2015 WL 236699 (E.D. Va. January 2015) (Judge Payne), provided the necessary analysis:

> When sanctions are sought pursuant to Rule 11(b)(2) and (b)(3), the standard is one of "objective reasonableness" and the court must focus on "whether a reasonable attorney in like circumstances could believe his actions to be factually and legally justified." *Cabell v. Petty,* 810 F.2d 463, 466 (4th Cir.1987). When engaging in this analysis, the court is tasked with assessing "what was reasonable to believe at the time the pleading ... was filed." *Id.* at 467 (citing Fed. R. Civ. P. 11 advisory committee's notes). As the rule itself indicates, the relevant circumstances must be considered, and factors such as time pressures and attorney experience may influence the court's reasonableness determination. *See* Fed. R. Civ. Pro. advisory committee's notes; *see also, Kunstler, 914 F.2d at 505.* If, pursuant to this analysis, the court determines that the signer "failed to conduct a reasonable inquiry into the applicable law" and/or facts prior to filing the pleading or motion at issue, Rule 11 sanctions are mandated. *See Brubaker v. City of Richmond,* 943 F.2d 1363,

Case 3:20-cv-07103-ZNQ-DEA   Document 28-3   Filed 02/09/21   Page 59 of 76 PageID: 369
Case 3:20-cv-07103-ZNQ-DEA   Document 38-3   Filed 04/03/21   Page 43 of 60 PageID: 596
Case 3:20-cv-00820-REP   Document 16   Filed 12/08/20   Page 7 of 24 PageID# 142

1373 (4th Cir.1991).

*Turton*, 2015 WL 236699 at *3.

Rule 11 sanctions are to be limited to what suffices to deter the offender from repeat conduct and those similarly situated from engaging in comparable conduct. Fed. R. Civ. P. 11(c)(4). In determining whether to impose sanctions, the court may consider the following factors, among others: (i) whether the improper conduct was willful, or negligent; (ii) whether it was part of a pattern of activity, or an isolated event; (iii) whether it infected the entire pleading, or only one particular count or defense; (iv) whether the person has engaged in similar conduct in other litigation; (v) whether it was intended to injure; and (vi) what effect it had on the litigation process in time or expense. Fed. R. Civ. P. 11, advisory committee notes of 1993. *See also In re Kunstler*, 914 F.2d at 523 (Fourth Circuit identifying four factors courts should consider when imposing Rule 11 sanctions: "(1) the reasonableness of the opposing party's attorney's fees; (2) the minimum to deter; (3) the ability to pay; and (4) factors relating to the severity of the Rule 11 violation.") *Cf. Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 694–95 (11th Cir. 1995) (awarding sanctions where complaint was not well-grounded in fact at the time it was filed); *Med. Emergency Serv. Assocs. v. Foulke*, 844 F.2d 391 (7th Cir. 1988) (Rule 11 sanctions appropriate where a brief review of the relevant employment contracts would have revealed the correct employment status of certain defendants).

Even though Plaintiffs' counsel has now withdrawn the Class Complaint against Defendants, this Court is permitted to grant sanctions in favor of Defendants for Plaintiffs' counsel's sanctionable conduct because such sanctions are mandatory. *Turton*, 2015 WL 236699 at *2-3. As the Fourth Circuit affirmed in *In re Kunstler*, 914 F.2d 505, 515 (4th Cir. 1990):

> As the 'violation of Rule 11 is complete when the paper is filed,' a voluntary dismissal does not expunge the Rule 11 violation." *Id.* 110 S. Ct. at 2455 (quoting *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1077 (7th Cir.1987), *cert. dismissed*, 485 U.S. 901, 108 S. Ct. 1101, 99 L.Ed.2d 229 (1988)).

Case 3:20-cv-07103-ENG-BEA   Document 28-3   Filed 02/09/21   Page 60 of 76 PageID: 376
Case 3:20-cv-07103-ENG-BEA   Document 36-1   Filed 01/03/21   Page 60 of 60 PageID: 394
Case 3:20-cv-00820-REP   Document 16   Filed 12/08/20   Page 8 of 24 PageID# 143

\*\*\*

As the Supreme Court has recently confirmed, there is no jurisdictional bar to the imposition of sanctions after a voluntary dismissal.

> In order to comply with Rule 11's requirement that a court "shall" impose sanctions "[i]f a pleading, motion, or other paper is signed in violation of this rule," a court must have the authority to consider whether there has been a violation of the signing requirement regardless of the dismissal of the underlying action.

*Id.* (quoting *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 110 S. Ct. 2447, 2455, 110 L.Ed.2d 359 (1990)).

## C.  Various Allegations Asserted In The Class Complaint Are Demonstrably False And A Reasonable Pre-Filing Inquiry Would Have Revealed As Much To Plaintiffs' Counsel.

### 1.  Safe Harbor Letter To Plaintiffs' Counsel.

On November 11, 2020, undersigned counsel, on behalf of Defendants, sent a safe harbor letter pursuant to Rule 11(c)(2) (the "Safe Harbor Letter") to Plaintiffs' counsel attaching a draft of this Motion for Sanctions and this Memorandum that detailed the verifiable factual falsities contained within the Class Complaint that necessitate Plaintiffs' voluntary dismissal of such Class Complaint. *See* **Exhibit A** (attaching the Safe Harbor Letter and draft Rule 11 Motion).[4]

### 2.  The Class Complaint Contains Factual Falsities That Required Plaintiffs' Voluntary Dismissal Of The Class Complaint.

The Class Complaint contained factual falsities for which Plaintiffs' counsel has admitted in the Dismissal Filing to be without evidentiary support. Given that the allegations asserted in the Class Complaint are so flagrantly without legal or factual foundation, an improper purpose must

---

[4] The portions of the Motion and this Memorandum that relate and regard the Dismissal Filing were of course not included in the Safe Harbor Documents because the Dismissal Filing had not yet occurred. Because they are repetitious of the offensive false statements in the Class Complaint, the false statements in the Dismissal Filing are included herein (i) to highlight Plaintiffs' counsel's intentionality in filing false baseless accusations and (ii) to seek additional sanctions against Plaintiffs' counsel. Although Ms. Kelly and her law firm were not named on the Dismissal Filing, they were named on the Class Complaint and were a recipient of the Safe Harbor Letter.

Case 3:20-cv-07103-ZNQ-DEA   Document 38-3   Filed 02/09/21   Page 61 of 76 PageID: 337
Case 3:20-cv-07103-ZNQ-DEA   Document 38-3   Filed 02/09/21   Page 45 of 60 PageID: 806
Case 3:20-cv-00820-REP   Document 16   Filed 12/08/20   Page 9 of 24 PageID# 144

be inferred from Plaintiffs' counsel's filing of the Class Complaint, and the repeated false accusations in the Dismissal Filing that Defendants were part of a RICO conspiracy. In fact, as an example of such improper purpose, Plaintiffs' counsel has utilized the Class Complaint to unduly influence the Court's pending jurisdictional decision in *Williams et al. v. Microbilt Corp.*, Case No. 3:19-cv-00085-REP (U.S.D.C. Virginia) (Richmond Division) at ECF Dkt. 170 (Exh. 2) (the "*Williams* litigation"). Incredibly, in the Response in *Williams* that attached the Class Complaint as an exhibit, Plaintiffs' counsel asserted that Burgess was "a directing participant and **lead conspirator** in this scheme, likely involving thousands of illegal loans to Virginia consumers" and that "Burgess, of course, wants to hide these types of business dealings from this Court." *Id.* at 4-5. (emphasis supplied). That none of this was true was clearly demonstrated by the Dismissal Filing. Given that these allegations assert violations of a criminal statute, the duty to have at least a modicum of factual support is crucial. It is shocking that Plaintiffs' counsel would make these allegations without any factual support whatsoever. How is it that Plaintiffs' counsel can assert that Burgess was a "lead conspirator" when they don't have the supporting facts that a conspiracy even existed.

As set forth in greater detail below, and as supported by the various publicly available documents cited to herein and attached hereto as exhibits, the legal bars to the Class Complaint's claims and the underlying verifiable factual falsities demonstrate Plaintiffs' counsel's lack of any investigative diligence as specifically required by Rule 11. *See, e.g., Turton v. Virginia Depart. Of Education et al.*, 2015 WL 236699 (E.D. Va. January 2015) ("In sum, there was not an adequate investigation into the factual basis for allegations to the contrary.")

If Plaintiffs' counsel had conducted even a basic investigation of those bankruptcy documents publicly available in a proceeding well known to Plaintiffs' counsel, Plaintiffs' counsel would have learned of the facts regarding the arms-length relationship between PAIF and Big

Valley Financial that refute any possible collusion between such entities as wrongly asserted in the Class Complaint. For example, the loan agreement between PAIF and Big Valley Financial confirms that the funds loaned were indeed loans and not the "capitalization" of an illicit or RICO-predicated enterprise, and the stated interest rate for such loan to Big Valley Financial refutes the "revenue sharing" allegations in the Class Complaint. As if those facts were not enough, the "funds use" limitation and documentation provided by Big Valley Financial expressly prohibited the alleged illicit loan activities asserted in the Class Complaint. To establish the type of RICO-predicated collusion painted in the Class Complaint, Plaintiffs' counsel would need to have had within their knowledge and control facts that demonstrated that PAIF actually ignored its own loan documents with Big Valley Financial and/or otherwise loaned directly to the Tribal Lenders. And there are no such facts of any materiality, made especially apparent given that, during a large portion of the class time period and during the term of PAIF's loan to Big Valley Financial, PAIF and PAF were in bankruptcy being managed by a court-appointed Trustee.

### a. **PAF/PAIF's New Jersey Bankruptcy.**

In the Class Complaint, Plaintiffs falsely alleged that Burgess and other individuals and corporate defendants, including PAIF, used Big Valley in a "rent-a-tribe" arrangement to originate payday loans. Plaintiffs' counsel could not possibly have had evidence to support these nonexistent "facts." PAF and PAIF are entities that previously filed for bankruptcy and the facts of record from PAF/PAIF's bankruptcy case categorically contradict Plaintiffs' allegations in that regard and this was an easily provable fact.[5]

Specifically, PAF and PAIF (together, the "Debtors") each filed bankruptcy cases on March 9, 2018, in the United States Bankruptcy Court for the District of New Jersey, Chief Judge Kaplan, presiding. *See* Bankr. D.N.J. 18-14603 & 18-14600 (the "PAF/PAIF Bankruptcy").

---

[5] Paragraph 16 of the Class Complaint confirms that Plaintiffs' counsel was well aware of PAF/PAIF's bankruptcy.

Case 3:20-cv-07103-ZNQ-DEA   Document 38-3   Filed 02/09/21   Page 63 of 76 PageID: 579
Case 3:20-cv-07103-ZNQ-DEA   Document 38-3   Filed 02/09/21   Page 63 of 60 PageID: 300
Case 3:20-cv-00820-REP   Document 16   Filed 12/08/20   Page 11 of 24 PageID# 146

Because of the underlying disputes between Debtors and one of their investors, and over the objection of the Debtors, the Bankruptcy Court removed the Debtors from possession and appointed a Chapter 11 Trustee (the "Trustee") by Order dated November 1, 2018. *See* Bankr. D.N.J. Dkt. 389. Thereafter, the Trustee exclusively operated PAF/PAIF from November 13, 2018 (*see* Bankr. D.N.J. Dkt. 408), through until March 13, 2020. *See* Bankr. D.N.J. Dkt. 1131 ¶ 23 & 1141. On March 13, 2020, the Bankruptcy Court resolved the PAF/PAIF Bankruptcy through a confirmed plan of reorganization for the Bankruptcy (the "Plan"). *See* **Exhibit E** (attaching a copy of the Plan) and **Exhibit F** (attaching a copy of Bankruptcy Court order confirming the Plan).

Directly contrary to the allegations in the Class Complaint, the Chapter 11 Trustee had sole and exclusive operational authority over PAF/PAIF during the time period from November 19, 2018, through until March 31, 2020. The fact that the Trustee had operational authority over PAF/PAIF, and was exclusively responsible for the collections of amounts due from Big Valley Financial during that time period, conclusively refutes all allegations of RICO-based collusion between PAF/PAIF and any lenders purportedly associated with Big Valley made by Plaintiffs' counsel in the Class Complaint.

For example, the Class Complaint asserted that Plaintiff Williams made his online loan on May 22, 2019 (*see* Class Complaint at ¶ 86) and Plaintiff Mann allegedly originated his loan on April 10, 2019. *Id.* at ¶ 93. With regard to both of these consumer loans, they originated at a time when the Trustee was in control of PAF/PAIF, a fact known to Plaintiffs' counsel as the Class Complaint references the PAF/PAIF Bankruptcy, and a fact that precluded any claims against Defendants.

During the PAF/PAIF Bankruptcy, the Trustee confirmed that PAIF was organized in 2015 to make loans to consumer lending companies. *See* Fourth Amended Disclosure Statement For Trustee's Fourth Amended Joint Chapter 11 Plan Of Reorganization Of Princeton Alternative

Income Fund, LP And Princeton Alternative Funding, LLC Pursuant To Section 1125 Of The Bankruptcy Code (the "Disclosure Statement"), at 14. *See* Bankr. D.N.J. Dtk. 1010 (attached hereto as **Exhibit B**). PAF/PAIF **never** made any direct loans to any individual consumers. *Id.* The Disclosure Statement further confirmed the creation, organizational and operational structure of PAIF. *Id.* at 12-14. The Bankruptcy Court approved the Disclosure Statement. *See* Bankr. D.N.J. Dtk 1019. The entirety of the Disclosure Statement makes certain that PAF/PAIF's relationships with its borrowers were always in an arms' length "lender-debtor" relationship. *Id.*

### b. **PAF/PAIF's Relationship With Big Valley Financial.**

Big Valley Financial was a consumer lending company that originated a loan (the "Loan Proceeds") with PAIF in October 2016 (the "Big Valley Loan").[6] The loan between PAIF and Big Valley Financial was active and performing during the PAF/PAIF Bankruptcy.[7] While the Trustee was in possession and control of PAF/PAIF, the Trustee attempted to settle the outstanding loan with Big Valley Financial for less than the face amount of the outstanding obligations. As should be obvious from the publicly filed materials regarding such matter available to Plaintiffs' counsel, it is antithetical to allege that the Trustee (operating for PAF/PAIF) was operating in collusion with Big Valley since they were negotiating against each other. In the November 19, 2019 Motion To Approve The Proposed Big Valley Settlement (D.N.J. Dkt. 904) ("Motion to Approve") (attached hereto as **Exhibit C**), the Trustee averred that he conducted substantial due diligence about Big Valley's operations and further specified the negotiations undertaken surrounding the potential payoff of the Big Valley Loan. *See* Motion to Approve, at 6-7. Questioning the scope of the diligence performed by the Trustee, MicroBilt Corporation ("MBC") and the Ad Hoc

---

[6] The Loan and Security Agreement, dated October 28, 2016 (the "Big Valley LSA"), originally by and between Big Valley Financial and Fintech Financial, LLC ("Fintech"), was subsequently assigned by Fintech to PAIF in late 2016.

[7] There is no evidence of any lending activities by, between and among Defendants and Big Valley after March 31, 2020, and those Plaintiffs in the Class Complaint would have no evidentiary basis to assert any claims after March 31, 2020.

Case 3:20-cv-07103-ZNQ-DEA Document 38-3 Filed 02/09/21 Page 65 of 76 PageID: 375
Case 3:20-cv-07103-ZNQ-DEA Document 38-3 Filed 02/09/21 Page 65 of 76 PageID: 362
Case 3:20-cv-00820-REP Document 16 Filed 12/08/20 Page 13 of 24 PageID# 148

Committee of Minority Shareholders of PAIF[8] (together, the "Objectors") filed an objection to that proposed settlement, arguing that Big Valley Financial should not receive any discount on its loan repayment. *See* Bankr. D.N.J. Dkt. 1039.[9] Thereafter, the Objectors took discovery on the reasonableness of the proposed settlement and the Trustee's due diligence.

The Trustee's Reply (Bankr. D.N.J. Dkt. 1052) documented the Trustee's due diligence, including attaching: (i) the deposition of the Trustee's advisor who testified to his several negotiation calls with Big Valley's representative, Bart Miller (*see* **Exhibit D** (attaching deposition transcript at 150-52, attached as Exh. B to Motion to Approve)); and (ii) full financials for Big Valley (attached as Exh. E to Motion to Approve). The result of the Trustee's due diligence investigation and efforts, as confirmed by the subsequent discovery regarding the settlement negotiations, confirmed that there was no collusive connection regarding the Big Valley Loan and MBC, Burgess or any of the other Defendants. To the contrary, Big Valley Financial and Big Valley held adverse interests to PAF/PAIF and the other Defendants. Thus, Plaintiffs' contrary accusations of RICO-based collusive illegal activity as asserted in the Class Complaint are in direct conflict with the available public record and without any basis in fact.

c. **The Draw Request Records Provided By Big Valley Financial To PAIF Confirm That None Of The Class Complaint's Plaintiffs Received Any Of The Loan Proceeds And The Entirety Of The Loan Proceeds Was Used To Originate Consumer Loans Through Big Valley Financial And None Was Used By Big Valley Financial To Fund Other Tribal Lenders.**

The Big Valley Loan was represented by a written Loan and Security Agreement (the "Big Valley LSA") by and between Big Valley Financial and Fintech that was later assigned by Fintech

---

[8] All of which are entities and persons not affiliated with MBC or any of Defendants.

[9] The fact that MBC (and others) were disputing the propriety of allowing Big Valley (thereby making MBC and others adverse to Big Valley) from receiving a discount on its repayment obligations further refute the conclusion asserted in the Class Complaint of any collusion between Burgess, MicroBilt and the other Defendants and Big Valley.

to PAIF in late 2016. *See* **Exhibit G** (attaching a copy of the LSA); **Exhibit C** at ¶ 4 (confirming assignment by Fintech to PAIF).

Through the Big Valley LSA, PAIF, as assignee, supplied the Loan Proceeds to Big Valley Financial. However, prior to any funding, pursuant to Section 2.7 of the Big Valley LSA, Big Valley Financial was required to provide to PAIF the names of those consumer borrowers with whom Big Valley Financial had originated consumer loans (the "Draw Request Records"). Big Valley Financial, during the term of the Big Valley Loan, provided those Draw Request Records to PAIF. Upon review of those records, and pursuant to the declaration of Jack Cook (the "Cook Declaration"), PAIF confirms that none of the consumers who Big Valley Financial originated consumer loans with were any of the named plaintiffs in the Class Complaint. *See* **Exhibit H** at ¶ 13 (attaching Declaration of Jack Cook).

Jack Cook ("Cook") assumed the role of CEO of PAF and PAIF in January 2018, after having served as the Chief Operating Officer and Chief Compliance Officer of PAF since March 1, 2016. After PAIF and PAF declared bankruptcy in March 2018, and the Trustee was appointed in November 2018, Cook remained as CEO of PAIF under the stewardship and direction of the Trustee (and his professionals). At all times, in his capacity as CEO, Cook was responsible for, among other things, overseeing PAF/PAIF's business and their investments. Indeed, the total amount of the funds that PAIF disbursed to Big Valley Financial through the Big Valley Loan pursuant to the Big Valley LSA (the "Disbursed Amount") equaled the total amount of the consumer loans (the "Consumer Loan Amount") that Big Valley Financial loaned to consumers as supported by the Draw Request Records. *Id.* at ¶ 14. Thus, the Draw Request Records provided to PAIF, and as reviewed by Cook, confirm that Big Valley Financial utilized the Loan Proceeds in a manner consistent with Section 6.7 of the Big Valley LSA and thus none of the Loan Proceeds

Case 3:20-cv-07103-EMC-DEA   Document 33-2   Filed 02/09/21   Page 67 of 76 PageID: 973
Case 3:20-cv-07103-EMC-DEA   Document 33-3   Filed 02/03/22   Page 67 of 60 PageID: 784
Case 3:20-cv-00820-REP   Document 16   Filed 12/08/20   Page 15 of 24 PageID# 150

could have been used to fund any of the Tribal Lenders where the Disbursed Amount equaled the Consumer Loan Amount.

### d.  No Defendant Loaned Or Otherwise Transferred Funds To Any Of The Tribal Lenders Identified In The Class Complaint.

The Class Complaint at paragraph 13 asserted that PAF "provides capital (often tens of millions of dollars) to finance companies, including to illegal lenders **like**" the Tribal Lenders. Class Complaint at ¶ 13 (emphasis supplied). This is an outright falsity and there are no records to support such an assertion. In fact, paragraph 13 does not by itself, and nowhere else does the Class Complaint, even aver that PAF or PAIF actually loaned to the specifically identified Tribal Lenders.[10]

Moreover, as supported by the Cook Declaration and the Draw Request Records reviewed by Cook, other than the Big Valley LSA, PAIF made no other loans to any entities affiliated with Big Valley Financial or the Big Valley Band of Pomo Indians. *See* **Exhibit H** at ¶ 16. Moreover, PAIF maintains information similar to the Draw Request Records for those other loans that PAIF has originated with other lenders (the "Line Lenders") pursuant to separate loan security agreements. *Id.* at 17. Cook reviewed a search of all draw requests for PAIF's other Line Lenders and confirmed that neither PAIF nor any of the Line Lenders, including Big Valley Financial, distributed any loan proceeds from PAIF to FreedomCashLenders, Tremont Lending, Little Lake Lending or Credit Cube which are the tribal lenders set forth in the Class Complaint. *Id.* at 18. Thus, where neither PAIF nor Big Valley Financial lent funds to the Tribal Lenders, Plaintiffs have no factual basis to assert their claims in the Class Complaint.

---

[10] Even with the egregious allegations made in the Class Complaint without any factual support, Plaintiffs' counsel was not willing to go that far.

Case 3:20-cv-07103-ZNQ-DEA   Document 28-3   Filed 02/09/21   Page 68 of 76 PageID: 372
Case 3:20-cv-07103-ZNQ-DEA   Document 38-1   Filed 02/09/21   Page 68 of 60 PageID: 302
Case 3:20-cv-00820-REP   Document 16   Filed 12/08/20   Page 16 of 24 PageID# 151

**e. The Contractual Relationship Between PAF/PAIF And Big Valley Financial Included A "Funds Use" Covenant That Required The Loan Proceeds To Be Used Only For Preapproved Consumer Loans Between Big Valley Financial And Consumers And That Would Have Prohibited Big Valley Financial Lending Loan Proceeds To Other Tribal Lenders.**

The Big Valley LSA had a restrictive negative covenant with regard to the use of the Loan Proceeds. *See* **Exhibit F** at § 6.7. Specifically, Section 6.7 of the Big Valley LSA required that the Loan Proceeds could be used "**only for (i) the origination of Contracts and related Receivables,** and (ii) the payment of fees, charges and expenses owing to Lender and any other fees and transaction expenses relating to the Revolving Loan Facility that have been approved in writing by Lender." *Id.* (emphasis supplied). The Big Valley LSA defines "Contracts" and "Receivables" as agreements involving "Consumer Loans" and fees earned from "Consumer Loans," where a "Consumer Loan" itself is defined by the Big Valley LSA as "consumer installment loans and revolving lines of credit to individuals."

Thus, the contractual relationship between PAIF and Big Valley Financial prohibited the utilization of the Loan Proceeds for anything that was **unrelated** to the funding of a consumer loan directly made by Big Valley Financial and did not permit the use of the Loan Proceeds to fund other tribal entities themselves making separate consumer loans to individuals as is asserted in the Class Complaint.

**f. The Records Reflect That The Big Valley Loan Included Only An Interest Rate Of At Most Twenty-Four Percent (24%) And There Is No Evidence That Any Other Payments Were Made—And None Were Made—From Big Valley Financial Or Any Other Tribal Lender To PAIF As Asserted In The Class Complaint.**

The Big Valley LSA provided that PAIF was entitled to an interest rate of at most twenty-four percent (24%). There are no records that indicate that PAF/PAIF were entitled to or ever received any additional amounts pursuant to the LSA. That is because they never did. The Trustee

16

settled the outstanding loan amount due pursuant to the Big Valley LSA and, during the due diligence that the Trustee conducted and the discovery that others completed, there was no record of other receivables being paid to any of Defendants other than the Receivables as defined by, and paid to PAIF pursuant to, the Big Valley LSA.

   **g.   The Allegations That Wojciechowski Held Direct Ownership in PAIF Or That Burgess Owns Indirectly A Majority Of The "Shares" In PAF and PAIF Are Incorrect.**

The Class Complaint asserted that Wojciechowski is a direct shareholder in PAIF and that Burgess "indirectly owns the majority of shares" in PAF and PAIF. Class Complaint at ¶ 15. Both of these statements are inaccurate and untrue.

PAF is a Delaware limited liability company and PAIF is a Delaware limited partnership and neither PAF nor PAIF issues "shares" of ownership. The publicly available bankruptcy documents, including the Disclosure Statement, confirm that the allegations in the Class Complaint as to the purported direct or indirect ownership of PAF and PAIF by Burgess and Wojciechowski are incorrect.

The Class Complaint further asserted that Burgess "has held an ownership interest in PAIF for 'over 25 years'" (*see* Class Complaint at ¶¶ 15, 118) which is a factual impossibility given that PAIF was only formed as an entity in November 2014 and PAF was formed in August 2014. *See* https://icis.corp.delaware.gov/ecorp/entitysearch/NameSearch.aspx (publicly available Delaware corporate records). It is apparent that Plaintiffs' counsel is relying upon prior testimony of Burgess during testimony that Burgess provided on January 3, 2017, in the Illinois Bankruptcy court regarding a bankrupt entity that PAIF had loaned money to. Plaintiffs' counsel has grossly misstated that testimony and stretched it out of context in an effort to intentional distort the ownership structure of PAF and PAIF. Similarly, there is no testimony to suggest that Wojciechowski has any direct (or indirect) ownership in PAF or PAIF. These efforts to pursue

Case 3:20-cv-07103-ZNQ-DEA    Document 28-3    Filed 02/09/21    Page 70 of 76 PageID: 586
Case 3:20-cv-07103-ZNQ-DEA    Document 38-3    Filed 02/09/21    Page 70 of 76 PageID: 584
Case 3:20-cv-00820-REP    Document 16    Filed 12/08/20    Page 18 of 24 PageID# 153

individual claims against Burgess and Wojciechowski on a woefully non-existent factual basis is unabashed harassment all in a likely effort to foist settlement positions in other on-going litigation.

### h. Plaintiffs' Counsel Voluntarily Withdrew The Class Complaint But Committed Additional Rule 11 Violations By Repeating In The Dismissal Filing The Very Same Baseless Allegations Made In The Class Complaint That Plaintiffs' Counsel Has Now Admitted Were Without Factual Foundation.

As noted above, on November 11, 2020, undersigned defense counsel served Plaintiffs' counsel by email with the Safe Harbor Letter and a draft Rule 11 Motion (together, the "Safe Harbor Documents"). In response, within twenty-two (22) minutes of undersigned's email, Mr. Bennett challenged the position taken in the Safe Harbor Documents in an initial responsive email to undersigned counsel wherein Mr. Bennett curiously juxtaposed his ethical responsibilities pursuant to Rule 11 and asserted that Defendants were required to disprove the factual basis of the Class Complaint. *See* **Exhibit I** (Emails, dated November 11 and 13, 2020, from Mr. Bennett). In response, undersigned counsel advised Mr. Bennett: "You don't get to file frivolous suits and obtain discovery before you are entitled to it under the Rules." *Id.* In reply, Mr. Bennett reiterated that Defendants were required to disprove the allegations and then wrongly suggested that the Class Complaint was predicated on public documents: "We then asked you for your proof as to the first of these - given that our allegations were based on publicly available information rather than your secret information." *Id.* There can be no publicly available information to support these spurious allegations because the allegations are false.

Certainly, Mr. Bennett's concept that a plaintiff can file a lawsuit with the intent of establishing the factual basis of that lawsuit in subsequent discovery has been thoroughly rejected by settled applicable decisions in the Fourth Circuit:

> [A]ppellants now argue that unspecified evidence, obtainable through discovery, "could show" that a no prosecution agreement was made. While a lawyer may rely on discovery to reveal *additional* facts to support claims which are well grounded in fact, Rule 11 sanctions are appropriate when a lawyer

Case 3:20-cv-07103-ZNQ-DEA  Document 38-3  Filed 02/09/21  Page 71 of 76 PageID: 987
Case 3:20-cv-07103-ZNQ-DEA  Document 38-3  Filed 02/09/21  Page 55 of 60 PageID: 806
Case 3:20-cv-00820-REP  Document 16  Filed 12/08/20  Page 19 of 24 PageID# 154

> attempts to use discovery to support outrageous and frivolous claims for which there is *no* factual support. Unsubstantiated claims such as these constitute an abuse of the judicial process for which Rule 11 sanctions were designed. ... . Appellants appear to have relied entirely upon discovery in the hope of finding some factual support for many of their claims.

*In re Kunstler*, 914 F.2d 505, 515 (4th Cir. 1990). The sanctioned attorneys in *Kunstler* argued that they needed discovery to prove their asserted claims, but the 4th Circuit rejected that concept:

> In the present case, appellants are experienced attorneys with both the time and the means to conduct a responsible factual investigation. The complaint contains myriad inaccuracies rather than a single error. **Many of the factual inaccuracies could have been discovered by the most cursory investigation. The irrelevances are inexcusable considering the attorneys' experience.** Indeed, it is remarkable that so many errors could have been undetected by appellants. The number of claims without factual foundation warrants sanctions, whether the errors stem from incompetency or wilful misconduct.

*Id.* at 516 (emphasis supplied).

Despite Mr. Bennett's initial resistance and legally suspect bluster, and in response to the Safe Harbor Documents, Plaintiffs' counsel (as previously noted Ms. Kelly did not appear on this filing) filed a Rule 41(a) dismissal of the Class Complaint against Defendants. *See* ECF Dkt. 13 (the "Dismissal Filing"). Unfortunately, Plaintiffs' counsel, in an effort to take a parting shot at Defendants, doubled down on their baseless accusations and made additional false statements about Defendants being involved in an alleged RICO conspiracy that has no basis in fact. *Id.* Specifically, the Dismissal Filing included the following false assertion:

> **Although Plaintiffs believe there is a reasonable basis to allege that Defendants are part of a single conspiracy**, Plaintiffs are dismissing this case until more information is obtained from the tribal officials regarding the operations of their businesses.

*Id.* (emphasis supplied). Relatedly, and to further buttress their continued assertion of a baseless RICO conspiracy, Plaintiffs' counsel, in the sole footnote of the Dismissal Filing, reaffirmed that it is their belief that it was "possible that the present action could have preceded [sic] against [Burgess]." *Id.* at 2 n.1.

Case 3:20-cv-07103-EMC-DEA Document 29-2 Filed 02/08/21 Page 72 of 76 PageID# 888
Case 3:20-cv-07103-EMC-DEA Document 38-1 Filed 02/03/21 Page 33 of 60 PageID# 883
Case 3:20-cv-00820-REP Document 16 Filed 12/08/20 Page 20 of 24 PageID# 155

These gratuitous statements are bald transparent false accusations that were wholly unnecessary in a Rule 41(a) dismissal filing and are unfounded without any evidentiary basis. *See, e.g., Turton v. Virginia Depart. Of Education et al.*, 2015 WL 236699 (E.D. Va. January 2015) ("In sum, there was not an adequate investigation into the factual basis for allegations to the contrary."). Indeed, if Plaintiffs' counsel had a basis to make such factual assertions, they would not have dismissed the Class Complaint. There is no discernible distinction, and Mr. Bennett (who signed the Dismissal Filing) obviously intended no differential, between those baseless allegations made in the Class Complaint and the renewed RICO conspiracy allegations in his Dismissal Filing.[11] This Dismissal Filing statements, like those in the Class Complaint, are sanctionable under Rule 11. Moreover, these repetitious false statements demonstrate a continuing pattern by Mr. Bennett to make such false allegations and constitute compelling grounds to believe he is motivated by something other than a good faith belief in the legitimacy of his accusations.

For the reasons that follow, the Dismissal Filing is further problematic because Plaintiffs' counsel asserts that they nevertheless had a pre-filing basis to file the Class Complaint predicated upon the alleged deposition testimony of "Walter Wojciechowski, who [allegedly] indicated that Defendants provided capital to a tribal lending entity owned by the Big Valley Band of Pomo Indians." *Id.* Plaintiffs' counsel's alleged reliance on Mr. Wojciechowski's deposition testimony is an effort by Plaintiffs' counsel to obfuscate their purported pre-complaint investigation (of which there was none). Plaintiffs' counsel purposefully mischaracterized Mr. Wojciechowski's deposition testimony to suit their illicit purposes of attempting to embroil Defendants in another

---

[11] Although it was considered whether Plaintiffs' counsel was owed a second Rule 11 safe harbor letter for the offensive statements made in the Dismissal Filing, such requirement would be superfluous and form over function where the allegations in the Class Complaint for which Plaintiffs' counsel was forewarned in the original Safe Harbor package as being without factual basis, also predicated the same false RICO conspiracy allegations in the Dismissal Filing. Repeated warnings for the same offensive behavior is counterintuitive to the both the spirit and guidance of Rule 11.

Case 3:20-cv-07103-ZNQ-DEA    Document 28-1    Filed 02/09/21    Page 73 of 76 PageID: 382
Case 3:20-cv-07103-ZNQ-DEA    Document 36-1    Filed 04/09/21    Page 63 of 66 PageID: 827
Case 3:20-cv-00820-REP    Document 16    Filed 12/08/20    Page 21 of 24 PageID# 156

protracted litigation in a transparent effort to secure personal jurisdiction over Burgess and extract a settlement in lieu of the exorbitant discovery costs in the *Williams* litigation.

**First**, in the Dismissal Filing, Plaintiffs' counsel suggested that Wojciechowski's testimony was oblique in referencing the specific Big Valley tribal lending entity that PAIF loaned money to and that, curiously, because of this "misunderstood" reference, Plaintiffs were entitled to allege the false RICO conspiracy against PAIF and the other Defendants. However, it was no secret and indeed public knowledge in the PAIF bankruptcy, a bankruptcy action specifically cited in the Class Complaint, that PAIF loaned money specifically to Big Valley Financial. Therefore, Plaintiffs' counsel knew, prior to the filing of the Class Complaint, that Big Valley Financial was the Big Valley entity and further knew that Big Valley Financial was not a lender implicated by Plaintiffs' loans. Plaintiffs' counsel is two-stepping through these facts in an effort to suggest that they had sufficient information to make the Class Complaint's allegations when any proper investigation would have revealed otherwise.

**Second**, Plaintiffs' counsel's implicit assertion in the Dismissal Filing that Wojciechowski's testimony could have implicated not just PAIF, but incredibly each of individual Defendants in a far-reaching RICO conspiracy is preposterous and belies the underlying intentionality of the false accusations made in the Class Complaint against all Defendants and particularly against Burgess who is being sued by Plaintiffs' counsel in the *Williams* litigation also presently before this Court. As asserted in his filings in the *Williams* litigation, Plaintiffs' counsel filed the Class Complaint for the singular purpose of seeking to secure a favorable jurisdictional ruling against Burgess in the *Williams* litigation and then to foist a settlement in the face of significant anticipated discovery costs. *See* **Exhibit J** (Leonard Bennett's email suggesting exorbitant discovery costs if no settlement).

Plaintiffs' counsel's pointed attack against Burgess individually cannot be minimized. In the *Williams* filing where Plaintiffs' counsel attached the Class Complaint as an exhibit to support alleged personal jurisdiction over Burgess, Plaintiffs' counsel were unequivocal in their false characterization of the alleged damning central role of Burgess in the purported RICO Conspiracy scheme alleged in the Class Complaint:

> By way of another example, Plaintiffs attach hereto a complaint filed against Burgess for his role in a payday lending scheme doing business in Virginia. Ex. 2. Contrary to his declaration—claiming no business relationships with Virginia whatsoever—**Burgess is a directing participant and lead conspirator in this scheme, likely involving thousands of illegal loans to Virginia consumers. Burgess, of course, wants to hide these types of business dealings from this Court** as they will show the second prong of Va. Code § 8.01-328.1(A)(4) is easily satisfied.

ECF Dkt. 170 (emphasis supplied). However, **none** of these allegations have any factual basis and Plaintiffs' counsel has now withdrawn the Class Complaint and admitted they were without an evidentiary basis (despite their continuing assertions in the Dismissal Filing that they could prove a RICO conspiracy if necessary). This continuous flouting of the Rules and Plaintiffs' counsel's professional obligations is highlighted by their failure to withdraw the Class Complaint as an exhibit in the *Williams* case, even though Defendants' counsel specifically requested that they do so in the Safe Harbor Letter.

Plaintiffs' counsel's hyperbolic statements of purported liability, when viewed in light of the actual knowledge by Plaintiffs' counsel that none of it was true, militates a decision in favor of sanctions. The real purpose of this litigation and the concocted jurisdictional legal maneuvering in *Williams*, has been to extract a settlement in light of the costs of protracted discovery. Plaintiffs' counsel's antics cannot be diminished and are sanctionable.

**D. Conclusion.**

Given the egregious misrepresentations in the Class Complaint, the *Williams* Response and now the Dismissal Filing that are completely without the patina of a legal or factual foundation,

Case 3:20-cv-07103-ZNQ-DEA   Document 38-3   Filed 02/09/21   Page 75 of 76 PageID: 505
Case 3:20-cv-07103-ZNQ-DEA   Document 38-3   Filed 02/09/21   Page 59 of 60 PageID: 512
Case 3:20-cv-00820-REP   Document 16   Filed 12/08/20   Page 23 of 24 PageID# 158

Defendants respectfully request that this Court grant this Motion and award Defendants' sanctions against Plaintiffs' counsel in the amount of the attorneys' fees incurred by Defendants in investigating, preparing, drafting, serving and filing the Safe Harbor Documents and this Motion and otherwise defending against the Class Complaint and the Dismissal Filing—and any amounts the Court deems necessary to deter future misconduct—where Defendants have delineated the factual falsities with respect to the false allegations asserted in the Class Complaint (ECF Dkt. 1) and the Dismissal Filing (ECF Dkt. 13) filed in this matter.

Dated:  December 8, 2020        Respectfully submitted,

By  /s/  Wyatt B. Durrette, Jr.
Wyatt B. Durrette, Jr., Esquire (VSB No. 04719)
Durrette, Arkema, Gerson & Gill PC
1111 East Main Street, 16th Floor
Richmond, Virginia  23219
Tel:  (804) 775-6900
Fax:  (804) 775-6911
wdurrette@dagglaw.com

*To Be Admitted Pro Hac Vice:*

Maurice R. Mitts (Pa. Bar No. 50297)
Gerard M. McCabe (Pa. Bar No. 66564)
MITTS LAW, LLC
1822 Spruce Street
Philadelphia, Pennsylvania  19103
Tel:  (215) 866-0110
Fax:  (215) 86600111
mmitts@mittslaw.com
gmccabe@mittslaw.com

*Attorneys for Princeton Alternative Funding, LLC, Princeton Alternative Income Fund, L.P., Philip Burgess, Alonzo Primus, Walter Wojciechowski, MicroBilt Financial Services Corp., and LJP Consulting, LLC*

Case 3:20-cv-07103-ZNQ-DEA   Document 28-3   Filed 02/09/21   Page 76 of 76 PageID: 538
Case 3:20-cv-07103-ZNQ-DEA   Document 36-3   Filed 04/03/21   Page 60 of 60 PageID: 828
Case 3:20-cv-00820-REP   Document 16   Filed 12/08/20   Page 24 of 24 PageID# 159

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically e-mail notification of such filing to all counsel of record.

To the best of my knowledge, there are no other attorneys or parties who require service by U.S. Mail.

*/s/  Wyatt B. Durrette, Jr.*
Wyatt B. Durrette, Jr., Esquire (VSB No. 04719)
Durrette, Arkema, Gerson & Gill PC
1111 East Main Street, 16th Floor
Richmond, Virginia  23219
Tel:  (804) 775-6900
Fax:  (804) 775-6911
wdurrette@dagglaw.com
